

# DEPARTMENT OF THE AIR FORCE
## AIR FORCE LEGAL SERVICES AGENCY (AFLSA)



18 AUG 1998

AFLSA/JAC
1501 Wilson Blvd., Suite 810
Arlington, VA 22209-2403

Mr. Justin T. Green
Kreindler & Kreindler
100 Park Avenue
New York, NY 10017-5590

Re: Appeal of Claim of Darrell and Karen Darling, Individually, and as Co-Personal Representative of the Estate of Adam N. Darling
Air Force Claim No. JACT 98-53

Dear Mr. Green

    Under the provisions of the Military Claims Act (MCA), 10 U.S.C. §2733, I have carefully considered the appeal of the denial of the above referenced claim arising out of the crash of the CT-43A aircraft near Dubrovnik, Croatia on April 3, 1996. After a careful review of the facts and applicable law, I must uphold the denial of the claim.

    Under the MCA the Air Force is authorized to pay for damages that result from its noncombat activities. However, MCA claims must be adjudicated in accordance with regulations prescribed by the Secretary concerned; in the instant case, the Secretary of the Air Force. *See* 10 U.S.C. 2733(a) and (g). The applicable Air Force regulations, like those promulgated by the Army, Navy, and Department of Transportation (for the Coast Guard), preclude payment of MCA claims for the death of Government employees for whom benefits are provided by the Federal Employees Compensation Act (FECA). 32 C.F.R. §842.50(r) and AFI (Air Force Instruction) 51-501, ¶3.6.9. Given that Darrell and Karen Darling obviously have a cognizable FECA claim, the regulations implementing the MCA expressly mandate the claim's nonpayable status.

    In light of your appeal of this result, I have exhaustively reviewed pertinent provisions of the MCA, FECA, and Air Force claims regulations from 1949 to the present date. It is clear from my review that the Air Force regulatory preclusions are based upon FECA's exclusivity provision, 5 U.S.C. §8116(c), and upon a recognition of the MCA as a payment authority of last resort.

    Although FECA was enacted in 1916, its exclusive liability provision was not adopted until 1949. Upon FECA's enactment, it was understood that the general theory behind workmen's compensation statutes like it was that they served as an exclusive substitute for an

*Golden Legacy, Boundless Future... Your Nation's Air Force*        EXHIBIT B

employee's remedies at law against his employer. In 1916, however, employees generally had no recourse in tort against the United States. This, however, changed with the subsequent passage of the Federal Tort Claims Act and other statutes authorizing damage actions against the United States. Believing their compensation under FECA to be inadequate, federal employees began suing the Government under these other statutes for injuries received while on the job. In response, Congress enacted FECA's exclusive liability provision in 1949 to "make clear" that the right to FECA compensation is "the exclusive remedy of a person protected by this act against the United States." H.R. REP. NO. 729, 81ST Cong., 1st Sess. 14, 15 (1949). S. REP. NO. 836, 81st Cong., 1st Sess. 23 (1949).

As finally enacted, and as pertinent to the instant case, the plain-language of FECA's exclusive liability provision provides that where FECA will cover the injury at issue, no other recovery may be had by a Government employee, his representative or his next of kin, by way of an administrative proceeding under a Federal tort liability statute. By virtue of this language, a claimant under the MCA who seeks redress from an injury already covered by FECA, will be limited to FECA as the only means of recovery from the Government. This is because claims settlement under the MCA is an administrative proceeding, and the MCA itself is a Federal Tort liability statute. As a tort liability statute, the MCA allocates losses arising out of human activities. It is considered "socially unreasonable" to require individuals to bear the burden of injury arising out of the noncombat activities of the armed forces. See Prosser and Keeton on the Law of Torts 6, (5th ed. 1984). In the instant case, the burden of injury is covered by FECA, and FECA's exclusivity provision mandates non-payment of claims under the MCA where such claims are otherwise covered by FECA.

Almost since the inception of the Air Force fifty years ago, the Air Force has consistently utilized the MCA as a payment authority of last resort, to cover those situations where no other provision of law provides for payment by the Government. Such utilization has been incident to the MCA's status as an "authorization" statute, authorizing the payment of certain claims but not requiring payment of any claim. See Schneider v. United States, 27 F.3d 1327, 1333 (8th Cir. 1994), cert. denied 513 U.S. 1077 (1995); Newman v. Soballe, 871 F.2d 969, 973 (11th Cir. 1989); Collins v. United States, 67 F.3d 284, 286 (Fed. Cir. 1995); Niedbala v. United States, 37 Fed. Cl. 43, 46 (Ct. Cl. 1996). The non-usage of the MCA for claims covered by FECA has helped to ensure a uniformity of benefits among all Government civilian employees. No matter the circumstances under which they may be injured or killed, all civil service employees receive the same benefits for their injury or death: FECA. To allow payment under the MCA in the instant case would not only violate FECA's exclusivity provision, but also permit a double recovery from the Government not otherwise generally provided to other civil service employees and their families facing similar losses.

I have considered on appeal the applicability of the "dual capacity" doctrine pursuant to which a double recovery might be allowed in spite of FECA's exclusive liability provision. Wright v. United States, 717 F.2d 254 (6th Cir. 1983). Double recoveries may be permitted under this doctrine on the theory that as a tortfeasor, the Government's relationship to the injured employee at the time of injury was as something other than that of employer. With the exception of its adoption in the Wright case, supra, the dual capacity doctrine has otherwise been the object of judicial rejection and criticism. Balancio v. United States, 267 F.2d 135 (2d Cir. 1959), cert.

3

*denied*, 361 U.S. 875 (1959); *Schmid v. United States*, 826 F.2d 227, 229-230 (3rd. Cir. 1989); *Bush v. Eagle-Picher Industries, Inc.* 927 F.2d 445, 450 (9th Cir. 1991); *Wilder v. United States*, 873 F.2d. 285-288-89 (Fed. Cir. 1989).

Notably, the dual capacity doctrine does not take into account the Air Force regulations' recognition of the MCA as a payment authority of last resort, applicable only in the absence of other statutory payment options. As a mechanism for allowing a second, dual recovery in addition to that permitted under FECA, the dual capacity doctrine is directly at odds with utilization of the MCA only in those situations where payment is otherwise not provided for. I find that the dual capacity doctrine is not applicable in this case because it is contrary to regulatory recognition of the MCA as a payment authority of last resort, and there is no indication that the Government was acting as other than employer at the time of the injuries.

Finally, Air Force regulatory provisions aside, the MCA prohibits any claims payment absent an acceptance of such payment in "full satisfaction." 10 U.S.C. §2733(e). As waivers of FECA coverage are legally invalid, 20 C.F.R. §10.21, persons covered by FECA cannot execute any legally binding acceptance of an MCA payment in "full satisfaction"; such purported acceptance would be illusory and of no effect. The inability of those covered by FECA to legally accept an MCA payment in "full satisfaction" operates to preclude payment of any MCA claim brought by them, regardless of whether they have actually received any FECA benefits or not.

Given the MCA's "full satisfaction" requirement, the fact that the MCA does not require payment of any claim, and the Congressionally mandated exclusivity of recovery under FECA, I find that the Air Force regulatory preclusions (i.e. 32 C.F.R. 842.50(r) and AFI 51-501 ¶ 3.6.9) are not "manifestly contrary" to the MCA (10 U.S.C. §2733); additionally, I find that they are not arbitrary and capricious in giving effect to FECA's exclusive liability provision. On the contrary, the regulations help in giving effect to a worldwide uniformity of benefits for those serving their country in the civil service.

Since the regulations are valid, the MCA requires that Darrell and Karen Darling's claim be settled in accordance with them. As preliminarily noted at the opening of this letter, these regulations mandate the nonpayable status of Darrell and Karen Darling's claim.

I regret Darrell and Karen Darling's loss and wish to express my sincere condolences. However, I must deny their appeal from the denial of their claim by AFLSA/JACT on April 13, 1998. This is the final action on this claim under the Military Claims Act.

If you have any questions regarding this matter, you may contact me at (703) 696-9040.

Sincerely

CHARLES H. WILCOX II, Colonel, USAF
Director, Civil Law & Litigation