UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEVIN MURPHY, Administrator of the<br>Estate of LAWRENCE MARTIN PAYNE,<br>BARBARA GOREN and MICHAEL PAYNE, | : <br> : <br> : <br> : | |
| DARRELL W. DARLING and KAREN A.<br>DARLING, Individually and as Co-Personal<br>Representatives of the Estate of ADAM NOEL<br>DARLING, deceased, | : <br> : <br> : <br> : <br> : | Civil No. 3:03CV500 (MRK) |
| KEVIN MURPHY, Administrator of the Estate<br>of GAIL E. DOBERT, | : <br> : <br> : | |
| Plaintiffs, | : <br> : | |
| v. | : <br> : | |
| UNITED STATES OF AMERICA,<br>DEPARTMENT OF THE AIR FORCE and<br>COLONEL CHARLES H. WILCOX II, | : <br> : <br> : <br> : | |
| Defendants. | : | April 23, 2004 |

<u>SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS</u>

Pursuant to the Order of this Court dated March 24, 2004, the Defendants, United States of

America, Department of the Air Force and Colonel Charles H. Wilcox ("Defendants"), hereby

respectfully submit this supplemental brief in further support of their motion to dismiss the

complaint in the above-captioned case. This brief is submitted following the February 5, 2004 oral

argument in this case, and is in response to issues raised by the Court during the course of that

argument.

I.    <u>Construction of the Military Claims Act and its Regulations</u>

During the course of the oral argument, the Court raised some issues concerning the

construction of the Military Claims Act and its regulations. The Court inquired as to whether the

Military Claims Act is a legislative or interpretive regulation (Transcript at p.16); whether the

Military Claims Act is a statute of last resort (Transcript at p.17), and whether the relief authorized

by the Military Claims Act is a gratuity (Transcript at p.20).  Those issues are addressed below.

      A.    <u>The Military Claims Act is a Legislative Regulation Entitled to Deference</u>

      The regulations promulgated by the Air Force pursuant to the Military Claims Act are

legislative regulations entitled to substantial deference by this Court.  As the Second Circuit has

noted:

> The distinction between legislative and interpretive rules derives from the Administrative
> Procedure Act ("APA"), codified in 5 U.S.C. § 551 et seq. The APA requires that when an
> agency engages in rulemaking it provide public notice of the proposed rule, followed by an
> opportunity for public comment. <u>See</u> 5 U.S.C. § 553(b) & (c). However, the statute permits
> an exception to the usual notice-and-comment rulemaking procedures when a rule is merely
> "interpretative," <u>see</u> 5 U.S.C. § 553(b)(A), often referred to as "interpretive rules." While the
> APA does not define interpretative (nor interpretive) rules, courts have developed several
> general formulations in order to distinguish interpretive rules from those that are
> "substantive" or "legislative," . . . which must comply with the notice and comment
> provisions of the APA.

<u>Sweet v. Sheahan</u>, 235 F.3d 80, 90 (2d Cir. 2000).  In the Second Circuit, "legislative rules are those

that 'create new law, rights, or duties, in what amounts to a legislative act.' <u>Sweet v. Sheahan</u>, 235

F.3d at 90 (quoting <u>White v. Shalala</u>, 7 F.3d 296, 303 (2d Cir.1993)). Conversely, "[i]nterpretive

rules . . . do not create rights, but merely 'clarify an existing statute or regulation.' " <u>Sweet v.</u>

<u>Sheahan</u>, 235 F.3d at 90 (quoting <u>United States v. Yuzary</u>, 55 F.3d 47, 51 (2d Cir.1995) and citing

<u>White</u>, 7 F.3d at 303 and <u>New York City Employees' Retirement Sys. v. SEC</u>, 45 F.3d 7, 12 (2d

Cir.1995)).

      It is clear, then, that <u>Chevron</u>[1] deference is owed to regulations which have been adopted

following formal rule-making, including notice and comment.  <u>Schneider v. Feinberg</u>, 345 F.3d 135,

142-43 (2d Cir. 2003).  However, the issue of whether <u>Chevron</u> deference is due is not dependent on

---

     [1]<u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837
(1984).

whether the regulations were subject to notice and comment rulemaking.  As the Supreme Court has

stated: "[A]s significant as notice-and-comment is in pointing to Chevron authority, the want of that

procedure here does not decide the case, for we have sometimes found reasons for Chevron

deference even when no such administrative formality was required and none was afforded."

United States v. Mead Corp., 533 U.S. 218, 230 (2001) (citing NationsBank of N.C., N.A. v.

Variable Annuity Life Ins. Co., 513 U.S. 251, 256-257 (1995)).  The Court in Mead concluded hat

"[t]he fact that the tariff classification here was not a product of such formal process does not alone,

therefore, bar the application of Chevron."  Id.

One factor to consider when determining whether Chevron deference is whether the enabling

statute authorized the agency to engage in the process of producing regulations.  As the Supreme

Court stated:

> We have recognized a very good indicator of delegation meriting Chevron treatment in
> express congressional authorizations to engage in the process of rulemaking or adjudication
> that produces regulations or rulings for which deference is claimed. See, e.g., EEOC v.
> Arabian American Oil Co., 499 U.S. 244, 257. . . (1991) (no Chevron deference to agency
> guideline where congressional delegation did not include the power to " 'promulgate rules or
> regulations' " (quoting General Elec. Co. v. Gilbert, 429 U.S. 125, 141 . . . 1976))); see also
> Christensen v. Harris County, 529 U.S. 576, 596-597 . . . (2000) . . .  (where it is in doubt
> that Congress actually intended to delegate particular interpretive authority to an agency,
> Chevron is "inapplicable"). It is fair to assume generally that Congress contemplates
> administrative action with the effect of law when it provides for a relatively formal
> administrative procedure tending to foster the fairness and deliberation that should underlie a
> pronouncement of such force.

United States v. Mead Corp., 533 U.S. at 229-30.

Another factor to consider in determining is Chevron deference is owed is whether the

regulations are consistent with the clear meaning of the governing statute.  Crowley v. Federal

Bureau of Prisons, --- F.Supp.2d ----, 2004 WL 516210, at *7  (S.D.N.Y. Mar 17, 2004) (citing

Schneider, 345 F.3d at 143).    As the Schneider court reasoned:

- 3 -

Not all agency interpretations of the agency's organic statute are entitled to <u>Chevron</u> deference. <u>Chevron</u> deference is clearly owed to regulations adopted by formal rule-making after notice and comment. <u>See</u> <u>Christensen v. Harris County</u>, 529 U.S. 576, 586-87, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). But "[i]nterpretations such as those in opinion letters--like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law--do not warrant <u>Chevron</u>-style deference." <u>Id.</u> at 587, 120 S.Ct. 1655. The touchstone is whether the agency interpretation is intended to carry "the force of law" (not whether it has been subjected to formal notice-and-comment procedures under the APA). <u>United States v. Mead Corp.</u>, 533 U.S. 218, 231-32, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001); <u>see also</u> <u>Nationsbank of North Carolina v. Variable Annuity Life Ins. Co.</u>, 513 U.S. 251, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995) (<u>Chevron</u> deference given to interpretive letter issued by Comptroller of the currency). Thus <u>Chevron</u> deference applies where the interpretation is "the type of legislative ruling that would naturally bind more than the parties to the ruling." <u>Mead</u>, 533 U.S. at 232, 121 S.Ct. 2164.

<u>Schneider</u>, 345 F.3d at 142-43.

It does not appear that the regulations promulgated by the Air Force were subject to notice and comment rule-making. Amendments to the regulations have not been published for public comment, but rather, have been published as a final rule for information purposes. <u>See</u> <u>e.g.</u>, Rules and Regulations, Department of Defense, Department of the Air Force, 32 C.F.R. Part 842 (Administrative Claims; Personal Injury and Property Damage), 1983 WL 116306 (F.R.) (August 19, 1983);  Rules and Regulations, Department of Defense, Department of the Air Force, 32 C.F.R. Part 842 (Administrative Claims; Personal Injury and Property Damage), 1990 WL 343907 (January 29, 1990). Those rules provide that "[b]ecause this subpart implements a higher directive, it was not published as proposed for public comment. It is published as a final rule for information purposes."[2]

---

[2]The rule further provides that "[t]he Department of the Air Force has determined that this regulation is not a major rule as defined by Executive Order 12291; is not subject to the relevant provisions of the Regulatory Flexibility Act of 1980 (Pub. L. 96-354); and does not contain reporting or recordkeeping requirements under the criteria of the Paperwork Reduction Act of 1980 (Pub. L. 96-511)." A "Major rule" is defined by Executive Order 12291 as meaning "any regulation that is likely to result in: (1) An annual effect on the economy of $100 million or more; (2) A major increase in costs or prices for consumers, individual industries, Federal, State, or local government agencies, or geographic regions; or (3) Significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based enterprises

However, the Air Force regulations are may be considered legislative in nature because they are consistent with the import of the Military Claims Act, and because Congress authorized the Air Force to promulgate regulations which carry the force of law over the claims submitted under the Act. Schneider v. Feinberg, 345 F.3d 143. The regulations are not akin to "interpretations contained in policy statements, agency manuals, and enforcement guidelines." Mead, 533 U.S. at 234 (citing Christensen v. Harris County, 529 U.S. 576, 587 (2000)). Therefore, Chevron deference should be accorded to these regulations.

Even if the Military Claims Act is an interpretive rule, that does not mean that it is not entitled to any deference.

> For example, "Interpretive guidelines that lack the force of law but nevertheless 'bring the benefit of [an agency's] specialized experience to bear' on the meaning of a statute, are still entitled to "some deference." Mead, 533 U.S. at 234-35 see Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) ("We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."). As the Supreme Court noted in Mead, "The extent of (so-called) Skidmore deference is chiefly the "power to persuade." See Mead, 533 U.S. at 235, 121 S.Ct. 2164 ("[A non-binding agency interpretation] may therefore at least seek a respect proportional to its power to persuade ... [and] may surely claim the merit of its writer's thoroughness, logic, and expertise, its fit with prior interpretations, and any other sources of weight."); Christensen, 529 U.S. at 589, 120 S.Ct. 1655 ("[I]nterpretations contained in formats such as opinion letters are entitled to respect ..., but only to the extent that those interpretations have the power to persuade." . . .

Schneider, 345 F.3d at 142-43 (citations and internal quotation marks omitted).

The regulations promulgated by the Air Force arose from "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Schneider v. Feinberg, 345 F.3d 135, 143. The regulations are consistent with its enabling statute. In short, "[t]here is room at least to raise a Skidmore claim here, where the regulatory scheme is highly

---

to compete with foreign-based enterprises in domestic or export markets. See Executive Order 12291, 46 FR 13193, 13193 (February 17, 1981).

detailed, and [the agency] can bring the benefit of specialized experience to bear on the subtle

questions in this case. . . "  <u>Mead</u>, 533 U.S. at 235.

Based on the foregoing, the Defendants submit that substantial deference is owed to the Air

Force regulations at issue in this case.

B.    <u>The Military Claims Act is a Statute of Last Resort</u>

The Court inquired as to whether the Military Claims Act is a remedy of "last resort".  It has

been so described by federal courts.  As one court noted:

> Those courts that have addressed the issue universally have held that the Military Claims Act
> is not an exclusive remedy--all reasoning that because the Military Claims Act is considered
> a remedy of "last resort" and because it does not contain language of exclusivity, a service
> member plaintiff may bring a claim for loss of personal property in federal court, so long as
> the federal court action is not based on the Military Claims Act, but upon another applicable
> statute or basis for jurisdiction. <u>United States v. Gaidys</u>, 194 F.2d 762, 764 (10th Cir.1952);
> <u>United States v. Huff</u>, 165 F.2d 720, 725-26 (5th Cir.1948); <u>Miller v. Auto Craft Shop</u>, 13
> F.Supp.2d 1220, 1225 (M.D.Ala.1997); <u>Hass v. United States Air Force</u>, 848 F.Supp. 926,
> 933 n. 6 (D.Kan.1994); <u>Bryson v. United States</u>, 463 F.Supp. 908, 910 (E.D.Pa.1978),
> <u>Lundeen v. Dept. of Labor and Indus.</u>, 78 Wash.2d 66, 469 P.2d 886, 890 (1970). The court
> considers this reasoning persuasive.

<u>Paalan v. U.S.</u>, 51 Fed. Cl. 738, 750 (2002).

The 1968 Amendments to the Act support this interpretation.  The Senate Report

commented that "[t]he Military Claims Act is the *sole remedy available* in foreign countries to settle

the claims of U.S. nationals who are neither inhabitants of a foreign country nor proper third-party

claimants under international agreements."  <u>See</u> Exhibit C at 3629.   Further, in connection with the

1984 Amendments to the Military Claims Act, the House Report described the Military Claims Act

as a "statute authorizing the Department of Defense, the military departments, and the Coast Guard

to administratively consider claims for death, personal injury, or property damage incident to

noncombat activities of the agency concerned or *not otherwise cognizable* under either 10 U.S.C. §

2734 [Foreign Claims Act] or the Federal Tort Claims Act."  <u>See</u> Exhibit E at 4874.

That Congress intended the Military Claims Act to be, in essence, the last resort for compensation of noncombat injuries supports the reasonableness of the Air Force's regulation providing for the denial of a claim "for the personal injury or death of a government employee for whom benefits are provided by the FECA." 32 C.F.R. § 842.50.

    C.    <u>Payment under the Military Claims Act Are Gratuitous in Nature</u>

The fact that the Military Claims Act makes the payments discretionary supports the Court's thinking that payments under the Military Claims Act are gratuitous statute. Under the Military Claims Act, Plaintiffs are only entitled to such procedures as the Secretary concerned *may* prescribe. 10 U.S.C. § 2733(a) and (g). In turn, under such procedures, the Secretary *may* settle claims brought under the Act. <u>Id.</u> The 1945 Senate Report reflects that the permissive nature of the payments was contemplated at the Military Claims Act's inception. "The bill was introduced at the suggestion of the Secretary of War, Mr. Stimson. Its purport is to *permit* the War Department to settle claims for up to $1,000 during the period of war." <u>See</u> Exhibit A at 6749. The Senate Report goes on:

> Mr. NORRELL:    I am wondering about the burden of proof and the degree of evidence required before the War Department will be permitted to approve a claim. Does the bill tend to make the Government responsible?
>
> Mr. McGEHEE:    It places no restrictions whatsoever. It is left entirely in the judgment of representatives of the War Department. In the event the War Department should turn down a claim, even though it is within the amount called for in this bill, then the aggrieved party or the injured party has a right to have [a private bill] introduced in Congress.

<u>See</u> <u>also</u> <u>Towry v. United States</u>, 459 F.Supp. 101, 105 (E.D. La. 1978), <u>aff'd</u>, 620 F.2d 568 (5th Cir. 1980). ("we find no merit in plaintiff's contention that either the Military Claims Act or the Foreign Claims Act may be considered, by analogy to the Federal Tort Claims Act, as having

created a "right of action" in the plaintiff to judicially pursue a personal injury tort claim against the United States or the federal officers named herein.")

A gratuity is defined as "something given voluntarily or beyond obligation usually for some service." Webster's Collegiate Dictionary (1979). Congress contemplated that the remedy provided for by the Military Claims Act and its attendant regulations would be gratuitous. For this reason, Plaintiffs cannot claim entitlement to any payments under the MCA.

II.    FECA Exclusivity

The Court also requested additional briefing on the construction of the FECA and its regulations. In particular, the Court inquired as to the whether the FECA was intended to prohibit the election of remedies (Transcript at pp.51-53, 58) and which Plaintiffs got FECA benefits and which did not (Transcript at p.57)[3].

The exclusivity of the FECA has been well established. Under the FECA, the United States pays compensation for federal employee deaths or disabilities arising out of performance of civil service duties. 5 U.S.C. § 8102(a). The liability of the United States under FECA is "exclusive and instead of all other liability of the United States" to anyone otherwise entitled to recover damages from the United States by an administrative or judicial proceeding under a Federal tort liability statute. 5 U.S.C. § 8116(c). The Supreme Court has noted: "Historically, workmen's compensation statutes were the offspring of a desire to give injured workers a quicker and more certain recovery than can be obtained from tort suits based on negligence and subject to common-law defenses to such suits. Thus compensation laws are practically always thought of as substitutes for, not

---

[3]Neither undersigned counsel nor the Air Force has ready access to information regarding the victims' receipt of FECA benefits. It was the understanding of undersigned counsel that counsel for the Plaintiffs had this information and would be submitting it to the Court.

supplements to, common-law tort actions." United States v. Demko, 385 U.S. 149, 151 (1966).   As

a general rule, recovery under compensation laws is the claimant's exclusive remedy.  Demko, 385

U.S. at 151 (citing Patterson v. United States, 359 U.S. 495 (1959) and Johansen v. United States,

343 U.S. 427 (1952)).  See also Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 193-94

(1983)(the FECA was "designed to protect the Government from suits under statutes, such as the

Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity.").

The Supreme Court in Lockheed recognized that in enacting the FECA exclusivity provision,

"Congress adopted the principal compromise--the "quid pro quo"--commonly found in workers'

compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits,

regardless of fault and without need for litigation, but in return they lose the right to sue the

Government." Lockheed Aircraft Corp., 460 U.S. at 194 (citing H.R.Rep. No. 729, 81st Cong., 1st

Sess., 14-15 (1949); S.Rep. No. 836, 81st Cong., 1st Sess., 23 (1949), U.S.Code Cong.Serv. 1949,

p. 2125).

> As the Sixth Circuit has noted,
>
> The lower federal courts have held, uniformly, that persons for whom the Government has supplied an administrative compensation remedy are precluded from seeking recovery against the United States for injuries received in the course of their work under the Federal Tort Claims Act, the Jones Act, or the Public Vessels Act. United States v. Demko, 385 U.S. 149, 151 n. 4 . . . (1966) (emphasis added); see also Flippo v. Tennessee Valley Auth., 486 F.2d 612, 612-13 (5th Cir.1973) (seaman employed by TVA may not bring action under Jones Act and was limited to remedies provided by FECA); Posey v. Tennessee Valley Auth., 93 F.2d 726, 727-28 (5th Cir.1937) (FECA provided exclusive remedy for TVA employees; TVA not subject to provisions of state workers' compensation laws); accord Mills v. Panama Canal Co., 272 F.2d 37, 38-39 (2nd Cir.1959) (FECA provided exclusive remedy for injured seaman employed by the Panama Canal Company), cert. denied, 362 U.S. 961. . . (1960); Petition of United States ex rel. Inland Waterway Corp., 212 F.Supp. 214, 215 (E.D.La.1962), aff'd per curiam sub nom. Jarvis v. United States, 342 F.2d 799 (5th Cir.), cert. denied, 382 U.S. 831 . . . (1965).

Turner ex rel. Turner v. Tennessee Valley Authority, 859 F.2d 412, 414 (6th Cir. 1988).

In addition, "[w]here FECA applies, federal courts have no jurisdiction to entertain FTCA claims asserted by an injured federal employee." <u>Hightower v. United States</u>, 205 F.Supp.2d 146, 151 (S.D.N.Y. 2002) (citing <u>Lockheed Aircraft Corp.</u>, 460 U.S. at 193-94). It is immaterial whether the FECA award was actually made. Rather, "if the injury is 'of the type intended to be covered [by the FECA], its remedies are exclusive, even if no actual compensation was awarded.'. Thus, regardless of whether plaintiffs decide to accept FECA benefits, plaintiffs will be limited to the exclusive remedy of FECA coverage." <u>Aponte v. U.S. Dept. of Treasury, Bureau of Alcohol, Tobacco, and Firearms</u>, 940 F.Supp. 898, 902 (E.D.N.C 1996) (quoting <u>McDaniel v. United States</u>, 970 F.2d 194 (6th Cir.1992)). And the type of injury that is covered by the FECA is an injury which occurred while the federal employee was on the job. <u>Griffin v. United States</u>, 703 F.2d 321, 322 (8th Cir. 1983)("The FECA only applies to a federal employee injured on the job. If the injury occurs when the employee is not on the job, then the FECA is not the exclusive remedy--or even the appropriate remedy. . . But if the personal injury did occur on the job . . . then FECA is the exclusive remedy. 5 U.S.C. §§ 8102(a), 8116(c)") The issue is whether there is coverage, not the scope of that coverage. <u>Griffin</u>, 703 F.2d at 322 ("That the FECA does not compensate an employee with Griffin's particular injury is a question of scope of coverage, not coverage in and of itself.") In effect, pursuant to 5 U.S.C. § 8116(c), eligibility for FECA benefits operates to compel a claimant to elect the FECA as his exclusive remedy and precludes his recovery under federal tort liability statutes.

While FECA exclusivity has been found repeatedly in connection with concurrent claims under the FTCA, federal courts have also held that the FECA is exclusive of relief under other statutory schemes. <u>See</u> <u>supra</u> at p.9. In <u>Vogrin v. Bureau of Alcohol, Tobacco and Firearms</u>, No. CIVA598CV117,  2001 WL 777427, *8 (N.D.W.Va., March 30, 2001), <u>aff'd</u>, 15 Fed.Appx. 72,

2001 WL 744857 (4th Cir. 2001),  the district court held that a plaintiff could not seek remedies

under both the FECA and the FOIA and the federal Privacy Act.  The Court noted that the plaintiff's

injuries were covered by FECA and that he had been awarded benefits for psychological and

psychiatric disabilities. Further, the medical issues raised in the FECA claim were the same matters

raised in the Privacy Act civil action, and the injuries were work-related.   The Court held that "the

exclusivity provision contained in 5 U.S.C. § 8116(c) precludes a suit under the Privacy Act even if

FECA does not provide benefits for all of the injuries that plaintiff Vogrin claims."  Vogrin, 2001

WL 777427, at *7.  The Court reasoned: .

> While the Federal Tort Claims Act and the Privacy Act are obviously not identical in their
> provisions, there are certain similarities to their remedies, particularly the remedies sought
> by plaintiff Vogrin in this action. Indeed, it appears to this Court that plaintiff Vogrin has
> attempted to use the Privacy Act as a tort liability statute. The FECA is intended to serve as a
> substitute rather than a supplement for a tort action. See White v. United States, 143 F.3d
> 232, 234 (5th Cir.1998). . . This Court finds that, based upon the facts in this case, the fact
> that plaintiff Vogrin has sought and received benefits under the FECA precludes his filing
> suit and pursuing a cause of action under the FOIA and the Privacy Act, because of the
> exclusivity provision contained in the FECA, 5 U.S.C. § 8116(c). Accordingly, this Court is
> required to dismiss this civil action under Fed.R.Civ.P. 12(b)(1) for lack of subject matter
> jurisdiction.

Vogrin, 2001 WL 777427, at *8.

Courts which have held that the FECA is not the exclusive remedy have done so after

examining the nature of the "alternate scheme".  For example, Miller v. Bolger, 802 F.2d 660 (3d.

Cir. 1986), the Court noted that " in the language of section 8116(c) specifically refers to the

alternative remedies "under a workmen's compensation statute or under a Federal tort liability

statute," which suggests that FECA was intended primarily to supplant an alternative liability

scheme for tortious injury and not to exclude liability under a federal discrimination statute such as

Title VII."  Miller, 802 F.2d at 663 .  FECA coverage does not exclude liability under Title VII

because "FECA was intended only to be a substitute for suits against the United States for tortious

injury as authorized by statutes similar to the Federal Tort Claims Act." Miller, 802 F.2d at 663

(citing <u>United States v. Demko</u>, 385 U.S. at 151 for the proposition that compensation laws are, generally, substitutes for common law tort actions.)   <u>See also</u> <u>Allman v. Hanley</u>, 302 F.2d 559, 563 (5th Cir.1962) (holding that FECA "does not abrogate the common law right of an employee to sue a negligent fellow employee."); <u>Meester v. Runyon</u>, 149 F.3d 855, 857 (8th Cir. 1998) (holding that "a frustrated FECA claimant cannot secure judicial review of a FECA compensation decision by claiming that the Rehabilitation Act entitles her to accommodation in performing an alternative position approved by the Department of Labor when the claim is predicated upon the same illness or injury that gave rise to the Department of Labor's initial decision.")

The Air Force regulation which includes the FECA exclusion is similar to provisions by other military departments.  The Army regulation contains some explanation for the inclusion of the FECA exclusion. <u>See</u> 32 C.F.R. §§ 536.24(k) (citing 536.50(j)(2))(Army).  Section 536.50(j)(2) provides:

> (j) Claims not payable. . . (2) Claims for the personal injury or death of a Government employee for whom benefits are provided by the Federal Employees Compensation Act (5 U.S.C. 8101-8150). . .  This Act provides that benefits paid under the Act are exclusive and instead of all other liability of the United States, including that under a Federal tort liability statute (5 U.S.C. 8116(c)). It extends to derivative claims, to subsequent malpractice for treatment of a covered injury, to injuries for which there is no scheduled compensation, and to employee harassment claims for which other remedies are available (42 U.S.C. 2000e).

Based on the foregoing, it is clear that the Air Force regulation is consistent with FECA's exclusivity provision.

III.   <u>Scope of Judicial Review under the Military Claims Act</u>

The Court asked for supplemental briefing on the issue of the whether the Court could review question of whether Military Claims Act violates a statute other than the Constitution and its enabling statute (Transcript at p.56).  Defendants submit that the answer is no.  In the first instance, there is no support in case law interpreting the Military Claims Act which would which supports

such broad review.  The case of <u>Scroggins v. United States</u>, 397 F.2d 295 (1968) suggested that judicial review would be appropriate " 'only where there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error 'going to the heart of the administrative determination.' " <u>Scroggins</u>, 397 F.2d at 297 (quoting <u>Gaines v. United States</u>, 158 Ct.Cl. 497, 502 (1962)).

Further, the Supreme Court has held that "[w]here the empowering provision of a statute states simply that the agency may 'make . . . such rules and regulations as may be necessary to carry out the provisions of this Act,' . . . we have held that the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of the enabling legislation.' " <u>Mourning v. Family Pub. Serv. Inc.</u>, 411 U.S. 356, 369 (1973) (quoting <u>Thorpe v. Housing Authority of City of Durham</u>, 393 U.S. 268, 280--281 (1969) and citing <u>American Trucking Assns. v. United States</u>, 344 U.S. 298 (1953)).

In the present case, Plaintiffs do not present a persuasive argument that they were deprived of any procedural rights under the Air Force's regulations, and indeed, such an argument could not find support in the Air Force's permissive regulatory scheme.  Nor do they argue that the Air Force misinterpreted its own regulations.  Thus they have not shown any error going to the heart of the determination.  <u>See</u> <u>Scroggins</u>, 397 F.2d at 298-300.  Further, Plaintiffs have failed to demonstrate that there is a colorable constitutional claim in this case. The lack of access to federal court for review of an administrative decision is not a per se procedural due process violation.  <u>Hata v. United States</u>,  23 F.3d 230, 234 (9th Cir. 1994).  As the Ninth Circuit has held, "The administrative claim procedure set forth in the Military Claims Act represents 'an appropriate balance between individual rights and Congress' desire to avoid the disruptive effect that judicial review may have on the 'prompt and authoritative administrative settlement of claims' against the military.' . . . Therefore,

preclusion of judicial review under the Military Claims Act does not violate due process." Hata v. United States, 23 F.3d at 234 (quoting Heller v. United States, 776 F.2d 92, 98 (3d Cir. 1985)). Plaintiffs' only argument is that the regulations violate the Military Claims Act, 10 U.S.C. § 2733(a), which provides that the Secretary broad discretion in prescribe regulations.

IV.    United States v. Babcock, 250 U.S. 328 (1919)

During the course of oral argument, the Court asked about the significance of the case of United States v. Babcock, 250 U.S. 328 (1919). Babcock involved claims by two army officers for the recovery of the value of property lost during military service.   In the first claim, the captain's horse had been accidentally strangled in the awns of forage ration. In the second claim, a lieutenant lost his personal effects during a hurricane while he was trying to save the property of the government and of others. The claims had been disallowed by the Auditor of the War Department. The Auditor's decision was affirmed on appeal by the Comptroller of the Treasury, and affirmed thereafter by the Court of Claims.  The officers appealed to the Supreme Court.

Justice Brandeis delivered the opinion of the Supreme Court.    The Court interpreted a precursor of the Military Claims Act called the Act of March 3, 1885, 31 U.S.C.A. § 218, to determine whether the Act authorizes recovery for horses under any circumstances and under what circumstances it authorizes recovery for other personal property.  Babcock, 250 U.S. at 330.  The Court began by noting that accepted rules of law:

> These general rules are well settled: (1) That the United States, when it creates rights in individuals against itself, is under no obligation to provide a remedy through the courts. United States ex rel. Dunlap v. Black, 128 U. S. 40, 9 Sup. Ct. 12, 32 L. Ed. 354; Ex parte Atocha, 17 Wall. 439, 21 L. Ed. 696; Gordon v. United States, 7 Wall. 188, 195, 19 L. Ed. 35; De Groot v. United States, 5 Wall. 419, 431, 433, 18 L. Ed. 700; Comegys v. Vasse, 1 Pet. 193, 212, 7 L. Ed. 108. (2) That where a statute creates a right and provides a special remedy, that remedy is exclusive. Wilder Manufacturing Co. v. Corn Products Co., 236 U. S. 165, 174, 175, 35 Sup. Ct. 398, 59 L. Ed. 520, Ann. Cas. 1916A, 118; Arnson v. Murphy,

- 14 -

109 U. S. 238, 3 Sup. Ct. 184, 27 L. Ed. 920; <u>Barnet v. National Bank</u>, 98 U. S. 555, 558, 25 L. Ed. 212; <u>Farmers' & Mechanics' National Bank v. Dearing</u>, 91 U. S. 29, 35, 23 L. Ed. 196.

<u>Babcock</u>, 250 U.S. at 330  The Court continued:

> Still the fact that the right and the remedy are thus intertwined might not, if the provision stood alone, require us to hold that the remedy expressly given excludes a right of review by the Court of Claims, where the decision of the special tribunal involved no disputed question of fact and the denial of compensation was rested wholly upon the construction of the act. <u>See</u> <u>Medbury v. United States</u>, 173 U. S. 492, 198, 19 Sup. Ct. 503, 43 L. Ed. 779; <u>Parish v. MacVeagh</u>, 214 U. S. 124, 29 Sup. Ct. 556, 53 L. Ed. 936; <u>McLean v. United States</u>, 226 U. S. 374, 33 Sup. Ct. 122, 57 L. Ed. 260; <u>United States v. Laughlin</u> (No. 200), 249 U. S. 440, 39 Sup. Ct. 340, 63 L. Ed. 696, decided April 14, 1919. But here Congress has provided: 'That any claim which shall be presented and acted on under authority of this act shall be held as finally determined, and shall never thereafter be reopened or considered.' These words express clearly the intention to confer upon the Treasury Department exclusive jurisdiction and to make its decision final.

 <u>Babcock</u>, 250 U.S. at 331.

Justice Brandeis' decision is compelling with reference to the issues in this case.  The high court clearly found that the predecessor of the Military Claims Act stood for the proposition that claims decided under that statute were final and not subject to any further consideration.   The significance of <u>Babcock</u> in this respect was addressed by the First Circuit in <u>Rodrigue v. United States</u>, 968 F.2d 1430 (1st Cir. 1992).  The First Circuit noted that when Congress enacted the Military Claims Act in 1943, it had did not have before it the decision of <u>Lindahl v. Office of Personnel Management</u>, 470 U.S. 768 (1985).[4], but rather, had the <u>Babcock</u> decision.

---

[4]In <u>Lindahl</u>, the Court held that the denial of a plaintiff's application for disability benefits was subject to judicial review in spite of language in the Civil Service Retirement Act that "[q]uestions of dependency and disability arising under the section shall be determined by ..., and determinations concerning these matters are final and conclusive and are not subject to review." <u>Lindahl</u>, 470 U.S. at 773 (citing 5 U.S.C. § 8347(c)). The Court reasoned that that phrase appeared to relate to factual matters, not questions of law. <u>Lindahl</u>, 470 U.S. at 779.

Further, from a historical standpoint, in 1943 Congress, rather than having <u>Lindahl</u>, had before it <u>United States v. Babcock</u>, 250 U.S. 328 . . . (1919), where the Court denied further action in the Court of Claims where the statute provided, <u>see</u> 250 U.S. at 331, 39 S.Ct. at 465, without indicating any exceptions,  That any claim which shall be presented and acted on under authority of this act shall be held as finally determined, and shall never thereafter be reopened or considered. . . . 250 U.S. at 331, 39 S.Ct. at 465.FN4.  <u>See</u>, <u>also</u>, <u>Williamsport Wire Rope Co. v. United States</u>, 277 U.S. 551, 561 . . . (1928); <u>Merrifield v. United States</u>, 14 Cl.Ct. 180 (1988) (no review in analogous statute); <u>Shull v. United States</u>, 228 Ct.Cl. 750, 755, 1981 WL 21476 (1981) (unsigned order and opinion). Significantly, <u>Babcock</u> involved a substantive precursor of the Military Claims Act.

<u>Rodrigue</u> 968 F.2d at 1433-1434.  The First Circuit reviewed the overwhelming case law

interpreting the Military Claims Act finality provision as precluding judicial review, and held as

follows:

With this array of decisions, and statutory language, read as "for all purposes," that, unlike <u>Lindahl</u>, shows no apparent ambiguity, we do not pause to detail the small bits of legislative comment cited to us as contradictory, except to say that our examination reveals inconsistency and nothing persuasive. We also need not resolve the erudite question whether Congress affirmatively intended that constitutional questions be reviewed or, simply, that the constitution requires it. <u>Cf.</u> <u>Bowen v. Michigan Academy of Family Physicians</u>, 476 U.S. 667, 681 n. 12 . . . (1986). We do not propose to break new ground by holding that Congress can forbid it. <u>Cf.</u> <u>Bartlett v. Bowen</u>, 816 F.2d 695 (D.C.Cir.1987) (2-1). Like our sister Circuits, however, we find, contrary to the district court, and the decision is for us de novo, <u>G.D. v. Westmoreland School District</u>, 930 F.2d 942, 946 (1st Cir.1991), that Congress intended no other review.

<u>Rodrigue</u> 1433-1434.

As this Court noted during oral argument, when enacting the Military Claims Act, Congress

was indeed re-enacting a statute against the backdrop of a Supreme Court case which held that no

review existed under that statute.  <u>See</u> Transcript at 59.  <u>Babcock</u> further supports the government's

contention and the weight of judicial precedent that Congress did not intend for the courts to review

final decisions under the Military Claims Act.

V.        1945 Amendments to the Military Claims Act

Finally, the Court inquired about the significance of the amendments to the Military Claims Act as reflected in the Military Personnel Claims Act of 1945.  In particular, the Court asked about the import of letters from Robert P. Patterson, Acting Secretary of War, and Ralph G. Boyd, Colonel, Judge Advocate General's Department, Chief of Claims Division.  See Exhibit B.

The Military Personnel Claims Act (MPCA) was intended "[t]o complete the original plan whereby the provisions for the settlement, in a substantially uniform manner, of all claims incident to the activities of the War Department or of the Army may be consolidated into three acts," including the Foreign Claims Act, the Military Claims Act and the MPCA.  See Exhibit B, at 716. Secretary Patterson explained that the MPCA was necessary to fill the gap left by the FCA and the Military Claims Act, to  address "claims of military personnel and civilian employees . . . for damage of personal property."  Id.

Of concern to this Court is the fact that both Secretary Patterson and Colonel Boyd explain that "in the absence of fraud or mistake in mathematical calculations, the findings of fact, conclusions of law, and the decision of the Secretary of War . . . upon the merits of any claim, would not be subject to review by any other administrative or accounting officer, employee, or agent of the United States."  Id.  The Court inquires as to the significance of the fact that there is no reference to the courts, and that some review is allowed if there is a fraud or mistake.

Far from suggesting the availability of judicial review, this section seems only to suggest that further administrative review of the decision is possible in the event of fraud or mathematical mistake.  Administrative review is in fact allowed under regulations to the Military Claims Act.  For example, Air Force regulations provides for an appeal of final denials:

(a) A claimant may appeal the final denial of the claim. The claimant sends the request, in writing, to the settlement authority within a reasonable time following the final denial. Sixty days is considered a reasonable time, but the settlement authority may waive the time limit for good cause.

(b) Upon receipt of the appeal, the original settlement authority reviews the appeal.

(c) Where the settlement authority does not reach a final agreement on an appealed claim, he or she sends the entire claim file to the next higher settlement authority, who is the appellate authority for that claim.

(d) The decision of the appellate authority is the final administrative action on the claim.

See 32 C.F.R. § 842.52. An appeal is the equivalent of a motion for reconsideration. See 32 C.F.R. § 842.41(a). With regard to "appellate authority", the regulations provide that "[u]pon appeal, a settlement authority has the same authority specified above. However, no appellate authority below the Office of the Secretary of the Air Force may deny an appeal of a claim it had previously denied." See 32 C.F.R. § 842.42(c).

The 1968 Amendments to the Military Claims Act support this interpretation. See Exhibit C. The Committee on the Judiciary of the House of Representatives commented that "Clause (2) of the bill would clarify the appeals provision of the Military Claims Act with respect to settlements made by delegatees who are authorized to settle and pay claims not in excess of $1,000 under 10 U.S.C. § 2733(g) by specifically authorizing an appeal to the Secretary of the military department concerned." Exhibit C at 3629. The report also stated that "[a]uthority to designate an intermediate appellate authority to consider the appeals of these small claims . . . would continue to protect these claimants from any arbitrary action by approving authority, and insure fair and equitable treatment." Id.

The 1964 amendments to the Military Personnel and Civilian Employees' Claims Act also bear out this interpretation. The MPCEA contains a similar finality provision, found at 31 U.S.C. §

3721(k).  In the Senate Report dated August 14, 1964, Assistant Secretary to the Interior D. Otis

Beasley wrote: "No provision is made for appeal to the courts.  On the contrary, the bill provides

that the administrative settlement of a claim is final and conclusive."  <u>See</u> Exhibit D. <u>See</u> <u>also</u>

<u>Towry</u>, 459 F.Supp. at 108.

Further, in its original form, the Military Claims Act stated that "[a]ny such settlement made

by the Secretary of War, or his designee, under the authority of this Act and such regulations as he

may prescribe hereunder, shall be final and conclusive *for all purposes*, notwithstanding any other

provision of law to the contrary."  <u>See</u> Exhibit A; <u>Rodrigue v. United States</u>, 968 F.2d 1430, 1433

(1st Cir. 1992) (citing  <u>United States v. Wade</u>, 170 F.2d 298, 299 (1st Cir.1948)).  While the words

"for all purposes" were omitted in the 1956 revision, these words were removed as surplusage.  <u>See</u>

10 U.S.C. § 2735, Historical and Statutory Notes, Revision Notes and Legislative Reports, 1956

Acts ("The words 'for all purposes' ... are omitted as surplusage."); <u>Rodrigue v. United States</u>, 968

F.2d at 1433 ("An unnumbered House Report (Judiciary) on the revision of Title 10 . . .  reprinted in

1956 U.S.Code and Admin.News 4613, 4620, 84th Cong. 2d Sess., confirms that the revised statute

should be read as the old.")

Finally, the 1972 Amendments to the Military Claims Act discuss the rationale behind the

inclusion of the finality provision of 10 U.S.C. § 2735.

> The purpose of the proposed legislation is to amend section 2735 of title 10, United States
> Code, to provide that the settlement of a claim under sections 2734a, 2734b, and 2737 of
> title 10 shall be final and conclusive. These sections relate, respectively, to (1) claims against
> the United States for property loss or personal injury or death in a foreign country incident to
> noncombat activities of civilian employees or members of the Armed Forces of the United
> States; (2) claims against a foreign country for property loss or personal injury or death
> incident to activity of members of the armed forces of foreign countries in the United States;
> and (3) claims for property loss or injury or death resulting from the use of property of the
> United States and not cognizable under other law.

Under the present provisions of section 2735, finality of settlement applies to property and personal injury claims under sections 2733 and 2734 of title 10. <u>Similar finality of settlement statutes include those applicable to Federal tort claims (28 U.S.C. 2672), admiralty claims involving the military departments (10 U.S.C. 4806, 7622(d), 7623(d), and 9806), and claims generated by National Guard activities (32 U.S.C. 715). The proposed legislation would be consistent with the cited general policy of preventing other agencies of the Government from reviewing and reversing actions on claim settlements of agencies specifically authorized to settle and pay certain claims.</u>

<u>See</u> 1972 U.S.C.C.A.N. 3106, 3109-10 (emphasis added).   <u>See also</u> <u>Towry</u>, 459 F.Supp. at 107.

This all leads us back where we started; the case involves a statute with a somewhat ambiguous legislative history, but one that is clear on its fact in its preclusion of judicial review, supported by overwhelming judicial precedent that interprets the MCA as precluding such review.

VI.    <u>Conclusion</u>

For the foregoing reasons and the reasons set forth in their moving papers, the Defendants, United States of America, Department of the Air Force and Colonel Charles H. Wilcox, request that their motion to dismiss be granted and the complaint be dismissed in its entirety.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


LAUREN M. NASH, ct01705
ASSISTANT U.S. ATTORNEY
UNITED STATES ATTORNEY'S OFFICE
157 CHURCH STREET, P.O. BOX 1824
NEW HAVEN, CT  06510
Telephone: (203) 821-3700
Facsimile:  (203) 773-5373
E-mail: lauren.nash@usdoj.gov

<u>CERTIFICATION</u>

This is to certify that a copy of the within and foregoing Supplemental Brief in Further

Support of Motion to Dismiss was mailed, postage prepaid, this 23rd day of April, 2004, to:


Richard A. Bieder, Esq.Ruth Daniella Weissman, Esq.
Koskoff, Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604

Justin T. Green, Esq.
Kreindler & Kreindler
100 Park Avenue
New York, NY 10017



_____
LAUREN M. NASH
ASSISTANT U.S. ATTORNEY