UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KEVIN MURPHY, Administrator, et al.,               :

      Plaintiffs,                                       :

V.                                                 :          CASE NO. 3:03CV500 (MRK)

United States of America, et al.,                  :

      Defendants.                                  :          April 23, 2004


**<u>PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS</u>**

The first section of this supplemental brief will reprise the Plaintiffs' main arguments.

The second section will answer the Defendant's arguments.  The third section will then address

the Court's question of whether the Air Force's regulations are legislative or interpretive.

**I.  THE AIR FORCE ERRONEOUSLY DENIED PLAINTIFFS' CLAIMS.**

    **A.  Defendant's statutory misconstruction is of a constitutional magnitude.**

The exclusionary clause in 5 U.S.C. sec. 8116(c) (part of the Federal Employees

Compensation Act, hereinafter "the FECA exclusivity clause")[1] was not meant to exclude

---

[1] 5 U.S.C. sec. 8116(c), provides:
> The liability of the United States or an instrumentality thereof
> under this subchapter or any extension thereof with respect to the
> injury or death of an employee is exclusive and instead of all other
> liability of the United States or the instrumentality to the

1

claimants under the Military Claims Act (hereinafter "MCA"), as interpreted by the Air Force in 32 C.F.R. sec. 842.50(r).[2]  The FECA exclusivity clause makes its coverage exclusive of any worker's compensation statute or federal tort liability act.  5 U.S.C. sec. 8116(c).  The MCA is neither.  It is not a worker's compensation act for the simple reason that it does not require claimants to be federal employees or military employees—indeed, most military employees are by definition exempt from coverage under the act because of its "incident to service" exception. 10 U.S.C. sec. 2733(b)(3).  It is not a federal tort liability act because it does not waive sovereign immunity.  Lundeen v. Dept. Labor and Indus., 469 P.2d 886, 891 (Wash. 1970).  A liability act, by definition, is an act, which allows the government to be sued, in the same manner, as a private individual would be.  Id.  See e.g., Suits in Admiralty Act (46 U.S.C.S. 741 et seq.), Public Vessels Act (46 U.S.C. 781 et seq.), Federal Tort Claims Act (28 U.S.C. sec. 2672 et seq.) (hereinafter FTCA).  FECA's legislative history bears out this interpretation.

> The savings to the Government by the elimination of costly and needless claims and litigation *under the Federal Tort Claims Act, Suits in Admiralty Act, Public Vessels Act, and the like,* which presently weigh heavily upon the Government and involve

---

> employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death *in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute* (emphasis added).

[2] 32 C.F.R. sec. 842.50, entitled "Claims not payable," provides, in pertinent subpart r, "Is for the personal injury or death of a government employee for whom benefits are provided by the FECA."

considerable expense to defend will be eliminated, offsetting in substantial part the increased cost in compensation benefits.

Miller v. Bolger, 802 F.2d 660, 664 (1986) (quoting S Rep. No. 836, 81st Cong., 1st Sess., reprinted in 1949 U.S. Code Cong. & Ad. News 2125, 2136, 2143 (emphasis added to USCCAAN, but supplied in Miller)).

The proper interpretation of 5 U.S.C. sec. 8116 vis-à-vis the MCA is found in subpart (b), where a potential recipient is allowed to elect coverage.[3] Defendant's protestations to the contrary, we do have "law to apply." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 401, 410 (1971). The "law to apply" in this context is not the MCA law, which, unfortunately, barely exists, but FECA law, and as we shall see below, separation of powers law.

Furthermore, no discretion is due the Air Force's interpretation of the FECA exclusivity provision because, as to this interpretation, the Air Force is not interpreting its own statute. See Citicorp v. Board of Governors Federal Reserve System, 936 F.2d 66, 75 (2d. Cir. 1991). Even if it were construing its own statute, full deference to the agency would be inappropriate where a pure question of statutory interpretation is involved. Sullivan v. Zebley, 493 U.S. 521, 528

---

[3]For any claimants who have already received FECA benefits, that receipt should not be considered a valid election because it was not a knowing election. Election implies a claimant was given a choice. In this case, FECA-eligible claimants were told that FECA was the exclusive remedy, and that the MCA was not an option. Any such claimant, therefore, in the event the case at bar is resolved in favor of Plaintiffs, should not be bound by a prior compelled "election," but have the option of deciding which statute would provide the greatest recovery, considering future earnings, offsets, and any other components of the Air Force's formula.

(1990) (citing <u>Bowen v. Yuckert</u>, 482 U.S. 137, 145 (1987)).  <u>See also</u> <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 843-844 (1984).  Deference to an agency is particularly appropriate where the specialized knowledge or expertise of the agency is important.  <u>United States v. Mead Corporation</u>, 533 U.S. 218, 234 (2001) (citing <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 139 (1944)).  <u>See also</u> <u>Industrial Union Department, AFL-CIO v. American Petroleum Institute</u>, 448 U.S. 607, 674 (1980) (Rehnquist, J., concurring in the judgment) (hereinafter "the Benzene case" or "<u>Benzene</u>").  A pure question of law, however, is involved in the present case.

But most importantly, no deference is due the Air Force's interpretation because it is manifestly incorrect.  <u>General Dynamics Land System v. Cline</u>, 124 S. Ct. 1236, 157 L.Ed. 2d 1094, 2004 U.S. LEXIS 1623 (2004) (agency was "clearly wrong") (citing to <u>Edelman v. Lynchburg College</u>, 535 U.S. 106, 114 (2002) (agency was "clearly right")).  <u>See also</u> <u>Wolke v. Dreadnought Marine, Inc.</u>, 954 F. Supp. 1133 (D.Va. 1997) ("If Congress has spoken and the regulation contradicts Congress' intent, then the regulation is void.").

One of several general limitations on deference is that an administrative construction must not expand or narrow the scope of the statute.  Thus, <u>Sullivan v. Zebley</u>, 493 U.S. 521, 528 (1990) invalidated a social security regulation which excluded too many children from coverage, in contradiction to the express mandate of the statute and the intent of Congress.  Similarly, <u>Legal Assistance for Vietnamese Asylum Seekers v. Dept. of State</u>, 310 U.S. App. D.C. 168, 45 F.3d 469, 473 (D.C. Cir. 1995) invalidated a regulation requiring additional procedures for

Vietnamese immigrant visas, where Congress' intent was clearly that applicants should not suffer discrimination because of their nationality.  See also 2 Am. Jur. 2d sec. 88(8), p. 111.

Because the FECA exclusivity provision is an invalid basis on which to deny Plaintiffs' claims, the claims must be remanded to the Air Force with an instruction to consider them without reference to 32 C.F.R. sec. 842.50(r).  The Air Force itself has channeled the discretion of the MCA insofar as the preface of 32 C.F.R. sec. 842.50 states that the exclusions are all based on statute or case law.  See 32 C.F.R. sec. 842.50.[4]  Obviously, those exclusions must be based on *valid* interpretations of statute or case law.  Indeed, the preface to regulations seems to anticipate possible litigation by its further provision that interpretations are federal questions to be decided under federal law.  32 C.F.R. sec. 842.50.

Plaintiffs' statutory claim is one of particularly constitutional magnitude.  See Wolke v. Dreadnought Marine, 954 F. Supp. 1133, 1136 (D. W.Va. 1997) (invalidating on separation of powers grounds Department of Labor regulation construing the Family and Medical Leave Act (hereinafter FMLA) in a manner contradictory to Congressional mandate).  In that case, the plaintiff clearly was not an eligible employee under the FMLA.  Id. at 1138.  In the present case, the MCA is clearly not a federal tort liability act.  Therefore, no deference is due.

---

[4] The preface to 32 C.F.R. sec. 842.50 provides, "Exclusions listed in sec. 842.50(a) through (l) of this part, are based on the wording of 28 U.S.C. sec. 2680.  The remainder are based either on statute or court decisions.  The interpretation of these exclusions is a Federal question decided under Federal law.  Where State law differs with Federal law, Federal law prevails.  A claim is not payable under this subpart if it (a) . . . (oo)(6)."

> Deference to regulations protects the separation of powers in most cases.  But in this case, the executive branch has exceeded its authority and usurped Congress's role.  Instead of passing a regulation that clarifies the law, the regulators passed a regulation that contradicts the law.  Courts are the proper institution to check such overreaching, for courts are the 'final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear Congressional intent.' <u>Chevron</u>, 467 U.S. at 843 n.9

<u>Wolke</u>, 954 F. Supp. at 1136 ) (finding regulation not entitled to deference).  <u>Chevron</u> also framed the issue in constitutional terms, but held deference was due:

> When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail. In such a case, federal judges -- who have no constituency -- have a duty to respect legitimate policy choices made by those who do. The responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones: "Our Constitution vests such responsibilities in the political branches." *TVA v. Hill*, 437 U.S. 153, 195 (1978).

467 U.S. at 866.

As an interpretation of 5 U.S.C. sec. 8116(c), the regulation is clearly wrong.  As an interpretation of 10 U.S.C. sec. 2733, assuming *arguendo* that Defendant was correct in its view that the interpretation of the statute allows absolute discretion, then 32 C.F.R. sec. 842.50 (r) is impermissible for an "other reason."  <u>Barnhart v. Walton</u>, 535 U.S. 212, 218 (2002).  Namely,

that it violates the separation of powers doctrine as an improper interpretation of the FECA exclusivity provision.

It is not the case that every claim can be stated as a statutory one. Many cases unsuccessfully seeking review under the MCA did not present statutory claims. See, e.g., Schneider v. United States, 27 F.3d 1327, 1332 (8th Cir. 1994) (claiming due process violation in evaluation of negligence) and Towry v. United States, 459 F. Supp. 101 (E.D. La. 1978) (claiming recovery awarded was insufficient). While Welch v. United States, 446 F. Supp. 75 (D. Conn. 1978) also concerned a claim that a statute had been misconstrued and misapplied, Welch did not present a claim of as great a constitutional magnitude as Plaintiffs' claim because Welch concerned an interpretation of a statutory construction as applied to one individual in a particular circumstance. Although not framing the issue as a constitutional one, Welch nevertheless noted that review was possible where "agency inaction or action turns on a mistake of law" because of the "fundamental principle that ours is a government of laws, not men." Id. at 78 (citing to Harmon v. Brucker, 355 U.S. 579, 582 (1958), Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 319 (1958), and Hammond v. Lenfest, 398 F.2d 705, 715 (2d Cir. 1968) (allowing review of discretionary military action)). [5]

---

[5] See also Mindes v. Seaman, 453 F.2d 197, 200 (5th Cir. 1971) for the following propositions: that "[j]udicial review has been held to extend to the constitutionality of military statutes, executive orders, and regulations"; that whether the military acts "arbitrarily or capriciously without proper justification, is a question which the courts are always open to decide" (quoting United States v. Flower, 452 F.2d 80, 86 (5th Cir. 1971)); and that review is available where "military officials have violated their own regulations" (citing to Nixon v. Secretary of Navy,

**B. Plaintiffs' due process claim is also of constitutional magnitude.**

The Air Force is required to pay Plaintiffs because it has paid others who were killed in the same air crash.[6]  If the Air Force were to decide not to pay Plaintiffs, then that would be arbitrary and capricious, because not consistent or reasoned behavior.  See Motor Vehicle Manufacturers Assn. v. State Farm Mutual Automobile Ins. Co., 463 U.S. 29, 56 (1983) ("an agency changing its course must supply a reasoned analysis") (internal citation and quotation marks omitted).  Because a property interest has arisen in this situation, the Air Force cannot refuse to settle the claim.  In Tarpeh-Doe v. United States, 904 F.3d 719, 724 (D.C. Cir. 1990), the court noted that the "consistent practice of a decisional body" could create a property interest "even in the absence of express regulatory language or in the face of ostensibly contradictory

---

422 F.2d 934 (2d Cir. 1970)).  Mindes further noted,  "The Court could not stay its hand if, for example, it was shown that only blacks were assigned to combat positions while whites were given safe jobs in the sanctuary of rear echelons."  453 F.2d at 199.

Mindes sets forth a balancing test for reviewability.  Id. at 201.  First, the "nature and strength of the claim," where constitutional claims are considered more important than those having a statutory or regulatory base, and where the liberty implications in haircut regulations are less important than those in court martials.  Second,  "[t]he potential injury to the plaintiff if review is refused".  Third, "[t]he type and degree of anticipated interference with the military function," whether or not such review would "seriously impede the military in the performance of vital duties.  Fourth, "[t]he extent to which the exercise of military expertise or discretion is involved," where deference is granted "in matters such as promotions or orders directly related to specific military functions."  Id. at 201-02.  In the present case, a statutory claim of constitutional magnitude is at issue, yet no vital duties or specific military function is implicated.

[6] See Appendix, p. 1, which single page is submitted under seal.  Other substantial payments were made by the government for this crash, but undersigned counsel do not represent the clients who received those payments.  The U.S. government can advise the Court fully of those payments.

agency policy statements" (citing to <u>Perry v. Sindermann</u>, 408 U.S. 593, 601-03 (1972)).

<u>Accord</u> <u>Furlong v. Shalala</u>, 156 F. 3d 384, 395 (2d Cir. 1998). Although <u>Tarpeh-Doe</u>, held the

plaintiff had no such interest because there was no prior practice to compare and no express

regulatory language to require procedures adhere to minimal due process standards, 904 F.3d at

722, the present Plaintiffs' situation is quite different because payment has already been made to

others killed in the same crash.

Also distinguishable from the present case, <u>Schneider v. Feinberg</u>, 345 F.3d 135, 144-45

(2d Cir. 2003), concerned the administration of the September 11 Victim Compensation Fund of

2001. The dispute over the regulations in <u>Feinberg</u>, issued after notice and comment rulemaking,

was how the awards of plaintiffs in the 98th percentile of earnings should be calculated. <u>Id.</u> The

court held that the Special Master's discretion as to those awards was beyond the reach of

review. <u>Id.</u> at 145. Even so, the Second Circuit Court of Appeals held that a *de jure* cap would

have been impermissible, as exceeding the scope of the regulations. <u>Id.</u> at 144. Moreover,

regarding the use of a different consumption rate for single childless decedents, the court

admitted that it would have applied the arbitrary and capricious standard of the Administrative

Procedure Act (hereinafter "APA"), if there were any meaningful standard by which to apply it.

<u>Id.</u> at 149. See 5 U.S.C. 706)(2)(A). But, there, once again, because there was no standard to

apply, an issue of how to calculate an amount under the Fund was held to be beyond the reach of

the court. <u>Id.</u>

In this case, given the precedent of numerous settlements, and five known amounts, a means of comparison is not lacking, and thus should not hinder a valid determination of a fair award, even if some aspects of whatever formula the Air Force applies are held to be discretionary, as in <u>Feinberg</u>, which otherwise assumed the availability of arbitrary and capricious review. <u>Id.</u>  <u>See also</u> <u>Schneider v. United States</u>, 27 F.3d 1327, 1334 (8th Cir. 1994) (Heaney, J., dissenting) ("the MCA does confer an entitlement to settlement upon a showing of negligence and therefore due process requires fair procedures to determine negligence.  Absent such procedures, the promise of benefits to those who are injured by the negligence of the military is a sham"); <u>Tarpeh-Doe v. United States</u>, 904 F.2d 719, 724 (1990), (Wald, J., dissenting) ("Nowhere in the statute or legislative history authorizing settlement of claims is there any indication that Congress intended to permit agencies to act arbitrarily in granting or denying tort claims.  Indeed, such a suggestion seems so counterintuitive as hardly to merit discussion, even though in fact it is the linchpin of the majority's decision").

**C.  The MCA is reviewable.**

It is well established that review of claims of constitutional magnitude are permitted under the claims act.  <u>Rodrigue v. United States</u>, 968 F.2d 1430, 1434 (1st Cir. 1992).  <u>See also</u> <u>Bowen v. Michigan Academy of Family Physicians</u>, 476 U.S. 667, 681 (1986) (a "serious constitutional question" would arise if a statute were construed as precluding constitutional claims from judicial review) and <u>Johnson v. Robison</u>, 415 U.S. 361, 365-367 (1974) (construing

"final and conclusive provision" of Veterans' Readjustment Benefits Act as allowing for judicial review of constitutional issues).

In fact, the MCA was intended to allow for even wider review. Holding sufficient due process had been given and that the *Feres* doctrine had been properly applied, Hata v. United States, 23 F.3d 230, 234 (9th Cir. 1994), noted in dicta that judicial review should be permitted where "there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error 'going to the heart of administrative determination'" (quoting was has become known as Scroggins review since Lindahl v. United States Office of Personnel Management, 470 U.S. 768, 778 (1985) (quoting Scroggins v. United States, 397 F.2d 295, 297 (Ct. Cl. 1968))). See also LaBash v. United States, 668 F.2d 1153, 1155 (1982) (holding *Feres* doctrine properly applied and noting no "cognizable constitutional" claim had been made); Broadnax v. United States Army, 710 F.2d 865, 867 (D.C. Cir. 1983) (noting Scroggins review should be available)).

Even while asserting that review of the MCA was not permitted, Hata nonetheless did review the underlying claims to ascertain if sufficient due process had been given, and LaBash and Hata both determined the *Feres* doctrine had been properly applied. Moreover, Scroggins review does itself have constitutional dimensions, implicating substantive and procedural due process rights: "substantial departure from important procedural rights" implicates procedural due process; "a misconstruction of the governing legislation" implicates a substantive due process problem; "other like error going to the heart of administrative determination" implicates

basic arbitrary and capricious analysis, at least where permitted, i.e. where there is some standard by which to judge an abuse of discretion.

In pre-Scroggins terms, Welch, 446 F. Supp. at 77-78, asserted that the MCA permitted judicial review of a mistake of law because "ours is a government of laws, not men."  Despite the "final and conclusive" provision in 10 U.S.C. sec. 2735, Welch stated that "none of the factors which would overcome the presumption of reviewability of an agency's interpretation" was present.  Id.  at 78.  When interpreted properly, the legislative history to the MCA actually supports reviewability.  Id. at 77-78.

Incorrectly, the Rodrigue court dismissed the legislative history as contradictory, inconsistent, and lacking in persuasion.  968 F.2d 1430, 1434 (lst Cir. 1992).  But Rodrigue should not have equated a 1964 letter to the judiciary from the Assistant Secretary of the Interior[7] with a statement from the Committee on the Judiciary issued when the bill was actually last amended in 1972.[8]  The latter should take precedence.  As pointed out by Judge Clarie in Welch,

---

[7]  S. Rep. No. 1423, 88th Congress, 2d Sess., 1964.  Letter from D. Otis Beasley, Assistant Secretary of the Interior to Hon. James. O. Eastland, Chairman, Committee on the Judiciary, dated May 28, 1964, stated "No provision is made for appeal to the courts."  See Appendix, p. 11.

[8]  S. Rep. No. 92-1056, 92nd Congress, 2d Sess., 1972.  See Appendix, pp. 3-8.  In the main body of the Report, the Committee on the Judiciary of the House of Representatives is quoted as having said:

> The effect of the provision as to finality is merely to provide that a final settlement is final in the full sense of the word and will not be subject to reopening as to that specific claim.  *This does not prevent an appeal of the decision to higher authority as provided in the law nor would it preclude the settlement authority that made*

446 F. Supp. at 78, n. 5 "the official Senate Report is entitled to greater weight than a mere letter

to the Chairman of the relevant Senate Committee" and it "more directly addresses the 'purpose'

of the legislation than does the passing remark in the above-mentioned letter."  Also the

legislative history in 1972 should take precedence of a committee report published in 1964,

because the final amendment to 10 U.S.C. sec. 2735 was in 1972.  See Pub. L. 92-413, 86 Stat.

649 (Aug. 29, 1972).

---

> *the decision from reconsidering its action.*  The witness at the
> earlier hearing stated that the rules of the General Accounting
> Office permit such reconsideration in accordance with the criteria
> set forth in its rules.  It is also pertinent to note that the bill's
> provisions do not bar the General Accounting Office from
> reviewing the records of any department with respect to the
> handling of finances including general practices and procedures
> with reference to claims settlement.

Appendix, p. 5 (emphasis added).  The portion emphasized above refers to review by an Article
III Court (the "higher authority as provided in the law"), as well as to the possibility of
administrative appeal to "the settlement authority who made the decision."  The final sentence
indicates the sort of review indicated in the 1945 Legislative history quoted by the Court at oral
argument on February 5, 2004, where it was mentioned that mathematical errors and fraud might
be reviewed and corrected.

 Attached to this report is the letter to the Speaker of the House from the Assistant
Secretary of the Air Force, Spencer J. Schedler, who wrote that the "proposed legislation would
be consistent with the cited general policy of preventing *other agencies* of the Government from
reviewing and reversing actions on claims settlements of agencies specifically authorized to and
pay certain claims" (emphasis added).  See Appendix, p. 8 (because of poor copy quality this
page could not be re-typed or scanned for electronic submission).  This portion of the report in
quoted in Welch, 446 F. Supp. at 78.

 Finally, another letter is attached from the Assistant Comptroller General to the Chairman
of the Committee of the Judiciary, affirming that the extension of the finality provision of 10
U.S.C. sec. 2735 as it applies to 10 U.S.C. secs. 2733 and 2734 should now apply to 10 U.S.C.
secs. 2734a, 2734b, and 2737.  See Appendix, p. 8 (because of poor copy quality this page could
not be re-typed or scanned for electronic submission).  This portion of the report in quoted in
Welch, 446 F. Supp. at 78.

Despite 10 U.S.C. sec. 2735's finality provision which specifies "notwithstanding any other provision of law," the Senate Report states that appeal "to higher authority as provided in the law" may be made, and that "the settlement authority who made the decision" would not be precluded from reconsidering its action.  (Appendix, p. 5)  Moreover, in the 1972 legislative history, the representative of the Air Force itself stated that the finality language was meant to prevent *other agencies* of the government from reviewing and reversing awards.  Rodrigue, therefore, ought not to have relied on the 1945 predecessor MCA statute and United States v. Babcock, 250 U.S. 328 (1919) for the proposition that judicial review is precluded under 10 U.S.C. sec. 2735.  Review by an Article III court is permitted, at least as to errors of a constitutional magnitude, including Scroggins level or fundamental fairness review.

This view of 10 U.S.C. sec. 2735's 1972 legislative history is bolstered when considered from the point of view of Johnson, 415 U.S. at 365-367 (allowing review despite "final and conclusive" provision) and Lindahl, 470 U.S. at 778 (allowing Scroggins review).  Lindahl required "clear and convincing evidence" to overcome the presumption of the availability of judicial review, 470 U.S. at 778, and detailed several factors to consider, such as "the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved."  Id. at 779.  Babcock's holding does not control.

Insofar, however, that Babcock was a "substantive precursor" of the MCA,  Rodrigue, 968 F.2d at 1434, its lessons are by no means all to be drawn in favor of defendants.  First of all, distinguishably, Babcock did not consider any issue of constitutional or even statutory nature.

Secondly, the procedural history of <u>Babcock</u> presents an exemplum of the sort of agency conflict that the legislative history of <u>Welch</u> says the MCA's "final and conclusive" provision was meant to forestall.  In <u>Babcock</u>, the Secretary of War made an award, but then the Auditor of the War Department disallowed it.  Then, upon appeal, the Comptroller of the Treasury affirmed the disallowance.  250 U.S. at 330.  The Treasury is one of the "other agencies" referred to in the 1972 legislative history, the agencies which <u>Welch</u> held were the focus of the "final and conclusive" provision in 10 U.S.C. sec. 2735.  At that historical stage of the administrative agency process, it was necessary to specify that the Comptroller of the Treasury not be permitted to overturn or adjust awards.

Finally, <u>Babcock</u> also noted that "the fact that the right and the remedy are thus intertwined might not, if the provision stood alone, require us to hold that the remedy expressly given excludes a right of review by the Court of Claims, where the decision of the special tribunal involves no disputed question of fact and the denial of compensation rested wholly upon the construction of the act"—even where, as both here and in <u>Babcock</u>, the United States had created a right against itself, and where the statute-created right provided the exclusive remedy. <u>Id.</u> at 331.  Given <u>Babcock</u>'s reasoning that review of a claims statute is not precluded by the fact that the right and remedy are intertwined, and given this reason should not be trumped where constitutional review cannot be precluded, <u>Tarpeh-Doe</u>'s reliance on prisoner rights cases as the appropriate analog for claims act cases is not appropriate, because claims acts are not enacted to

distribute gratuities, but to make reparation for injury.  See <u>McLean v. United States</u>, 226 U.S.

374, 383 (1912).

The legislative history of the MCA indicates its purpose was that meritorious claims be

paid.  In 1964, Director Kermit Gordon wrote to the Chairman of the Judiciary Committee that

Congress intended to "assure an orderly and prompt means for the settlement of meritorious

claims."  S.R. No. 1423, 88th Congress, 2d Sess., 1964.  Appendix, p. 10.

**D.  The lack of ordinary reviewability makes the MCA a "last resort."**

<u>Paalan v. United States</u>, 51 Fed. Cl. 738, 750 (2002), used the phrase "last resort" to

describe the MCA.  <u>Paalan</u>'s cited cases set forth several propositions about the MCA which are

summarized as supposedly demonstrating that it is a court of "last resort," although none of the

cases actually use that phrase.  Claimants can try to settle under the MCA and then go to a

federal tort liability act if they cannot reach agreement under the MCA.  See <u>Lundeen v. Dept. of</u>

<u>Labor and Indus.</u>, 469 P.2d 886, 890 (Wash. 1970).  A claimant can apply simultaneously to the

MCA and a federal tort liability act.  See <u>Hass v. United States Air Force</u>, 848 F. Supp. 926, 933

n.6 (D. Kan. 1994) (citing <u>Arkwright Mutual Ins. Co. v. Bargain City, U.S.A., Inc.</u>, 251 F. Supp.

221, 227-28 (E.D. Pa. 1966), aff'd 373 F.2d 701)).  A claimant can apply first or solely to a

federal tort liability act, such as the FTCA, and not be forced to apply to the MCA first even if

the claimant is eligible under the MCA.  See <u>United States v. Gaidys</u>, 194 F.2d 762, 764 (10th

Cir. 1952).  In <u>Gaidys</u>, the defendant government tried to interpret the FTCA as exclusive of the

MCA, in the sense that if one were eligible for the MCA, one could not apply for the FTCA.[9] This impermissibly restrictive interpretation by the executive on the Congressional mandate in the FTCA was not permitted by Gaidys, 194 F.2d at 764 ("to narrow the Tort Claims Act in that manner would not be in harmony with the Congressional purpose in enacting it").[10]  It is clear that one cannot bring suit under the MCA in an Article III court, Palaan, 51 Fed Cl. at 749 (citing Gaidys, Huff, and Lundeen), but that is a different matter than asking an Article III court subsequently to review a MCA decision for claims that the "military's denial of a claim violated the Constitution" or a claim that the "military agency breached an agreement to pay an MCA claim."  Paalan v. United States, 51 Fed. Cl. at 750 (2002) (citing Massie v. United, 1166 F.3d 1184, 1188 (Fed. Cir. 1999)).

In sum, calling the MCA a "last resort" may be no more than a nod to the fact that if a claimant had any other choice, she would go to another statute: one where the government has waived sovereign immunity, such as 28 U.S.C. sec. 2672.  Under that statute, if a claimant is not satisfied with the administrative award, she can then move to suit and potentially recover a full award.  The threat of suit under that and other acts doubtless makes them that much more fairly

---

[9] In the present case, and in many of the exclusions from coverage listed in 32 C.F.R. sec. 842.50, by contrast, the government is trying to say that if one is not eligible for the FTCA, one cannot apply to the MCA.  See 32 C.F.R. sec. 842.50 (a-l).

[10] In 1956, the MCA was amended to provide that claims would be allowed under 10 U.S.C. sec. 2733 only if it was not "covered by section 2735 of this title or section 2672 of title 28."  10 U.S.C. sec. 2733(b)(2).  In light of the cases cited above, this exclusivity provision, as to 28 U.S.C. sec. 2672 (the FTCA), does not refer to coverage in the sense of being precluded from applying to the MCA, but only that one cannot get a double recovery with both the MCA and the FTCA.

administered than the MCA.  Likewise, under other acts, settlements are probably increased to encourage settlement and avoid suit.  Under the MCA, however, the government currently has no incentive to settle fairly a case where a claimant cannot move to suit or have any recourse to judicial review absent a constitutional claim.

## II.  THE DEFENDANT'S POSITION IS UNTENABLE.

The following section presents another reason that an agency should not be allowed to escape review of its fundamental fairness in substance and procedure.

### A.  The Secretary of the Air Force does not have complete discretion to administer the MCA; furthermore, his discretion must be exercised without caprice.

Defendant argues that the MCA has given total discretion to the executive departments of the military, such that the Secretaries of the military departments may issue any regulations whatsoever, follow such regulations whenever they feel like it, and then pay whichever claims they want to pay.  Stated thusly, *reductio ad absurdum*, perhaps, it is clear to see that such an interpretation cannot possibly be valid.  Otherwise, the Air Force would be permitted to administer the statute in an entirely arbitrary and capricious way.

To the Air Force's credit, it seems its settlement authority is not quite that badly exercised.  First of all, the statute itself is not a completely unfettered grant of discretion.  The statute specifies "under such regulations as the Secretary may prescribe."  10 U.S.C. sec. 2733.  Defendant acknowledged at oral argument that the regulations have to be constitutional, and that any statutory construction, which seemed to be an "extreme" misconstruction should be

reviewable.  Transcript of Oral Argument on February 5, 2004 before the Honorable Mark R. Kravitz, United States District Judge for the District of Connecticut, in New Haven, Connecticut, at 12, 14, and 55-56.

Further, 10 U.S.C. sec. 2733 specifies the circumstances under which the Secretary is allowed to pay:  as to noncombat activities, where causation has been established; where the laws of the place allow recovery; where the tortfeasor was acting within the scope of employment, etc. 10 U.S.C. sec. 2733.  These are appropriate congressional canalizations of agency power.  See Benzene, 448 U.S. at 675.  As cited above, in the preface to 32 C.F.R. sec. 842.50 (r), *supra,* n. 4, asserting that all the exclusions are based on statute or case law, the regulations themselves indicate an awareness that the discretion must be canalized.  To fulfill the congressional mandate, the Secretary did have to promulgate regulations of some kind.

Unlike a regulation specifying "all redheaded widows will be paid double anyone else," the exclusion for claimants eligible for FECA, 32 C.F.R. sec. 842.50(r), is a regulation that Congress could validly have passed, but, notably, did not pass.  Spending power resides with Congress.  U. S. Constitution, Article I, section 8.  See Fullilove v. Klutznick, 448 U.S. 448, 475, 526 (1980) and United States v. Butler, 297 U.S. 1, 65-66 (1936).  Congress did not choose to limit the MCA to exclude those eligible for FECA.   Like the regulations in Sullivan, 493 U.S. at 532 (which cut off social security for an overly broad classification of children) and Legal Assistance, 45 F.3d at 473, (which excluded too many aliens), the FECA exclusivity provision at issue here has been impermissibly expanded, and is wrong on its face, both as a statutory

interpretation and as a violation of the separation of powers.  See, *supra,* Chevron, 467 U.S. at 843-44 and 866; Sullivan, 493 U.S. at 528; Legal Assistance, 45 F.3d at 473; and Wolke, 954 F. Supp. at 1137-38.

Likewise, the formulation "may pay" cannot have meant that the Secretaries of the Departments of Defense should exercise their discretion to pay in an arbitrary and capricious way.  It is inconceivable that Congress would have given the Air Force discretion to pay claims without assuming an "intelligible principle" would accompany this decision.  Benzene, 448 U.S. at 686 (Rehnquist, J., concurring).  See also State of South Dakota v. U.S. Department of Interior, 69 F. 3d 878, 882 (8th Cir. 1995) (Congressional delegation of power to Secretary of Interior invalid where insufficient intelligible principle found in mandate to purchase land "for Indians").  If Congress did so intend, that intention would violate the aspect of the separation of powers doctrine referred to as the "nondelegation doctrine."  Benzene, 448 U.S. at 685.  As set forth in the Benzene case, the nondelegation doctrine serves three important functions.  First, it "ensures to the extent consistent with orderly governmental administration that important choices of social policy are made by Congress, the branch of our Government most responsive to the popular will."  Id.  Second, "to the extent Congress finds it necessary to delegate authority," the nondelegation doctrine "provides the recipient of that authority with an 'intelligible principle' to guide the exercise of the delegated discretion." Id. at 685-6.  Third, "the doctrine ensures that courts charged with reviewing the exercise of delegated legislative discretion will be able to test that exercise against ascertainable standards."  Id. at 686.

If Congress did so intend an unfettered exercise of discretion, a discretion not answerable to statutory, due process, or arbitrary and capricious review, then that delegation of the spending power to the executive would itself be invalid.  See Benzene, 448 U.S. at 686-87.  For a statute to authorize validly the distribution of funds under a claims act, its intelligible principle must include a commitment to fundamental fairness.  This intelligible principle can be imparted by Scroggins review, another way of achieving the goal that "ours should be a government of laws, not men."  Welch v. United States, 446 F. Supp. 75, 78 (1978) (quoting Hammond v. Lenfest, 398 F.2d 702 (2d Cir. 1968)); Marbury v. Madison, 5 U.S. 137, 163 (1803); and Yick Wo v. Hopkins, 118 U.S. 356, 370 (1886).  When an agency is given an intelligible principle, courts are able to review its decisions and test them against "ascertainable standards."  448 U.S. at 686. See also Mistretta v. United States, 488 U.S. 361, 655 (1989) (citing J.W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 409 (1928) (judging as well the "inherent necessities" of government coordination in a given situation)).

Two principles compel the conclusion that every grant of legislative power must be accompanied with an understanding that Scroggins review is available:  *1) The legislature is allowed to act arbitrarily and capriciously; 2) Administrative agencies are not.*  See Sullivan, 493 U.S. at 528 (citing Chevron) and Schneider v. Feinberg, 345 F.3d at 148.

Before the MCA was passed, tort claims against the government were settled by a multitude of individual Congressional bills.[11]  While this legislative process could have been influenced by some forms of partiality, and so have awarded claims arbitrarily and capriciously, Congress cannot legitimately grant to an administrative agency the authority to mimic this manner of dispensing such Acts of Legislative Grace, for such a power resides only in the legislature, the representative of the people, where that power can be checked by the will of the people.[12]

Instead, once Congress has expressed its will in the form of laws, those laws must control, not the individual whim and caprice of any individual agency or administrator.   It is "a fundamental principle that ours is a government of laws, not men."  Welch, 446 F. Supp. at 78. An administrative agency, therefore, must act fairly and in accordance with due process of law, lest it fall afoul of arbitrary and capricious review (or, in the terms of Scroggins, review of "errors going to the heart of administrative determination").

---

[11] S. Rep. No. 1423, 88th Congress, 2d Sess., 1964.  Letter from D. Otis Beasley, Assistant Secretary of the Interior to Hon. James. O. Eastland, Chairman, Committee on the Judiciary, dated  May 28, 1964, discussing private bill passed to replace personal property lost "aboard a powerboat in Alaska." Appendix, p. 11.

[12] Survivors of those killed in the attack on the U.S.S. Cole and the federal building in Oklahoma Charges might level charges of unfairness against Congress regarding the September 11 Victim Compensation Fund, but lobbying the legislature would be the only way to redress that inequity.

**B) If Congress truly intended that the Secretary of the Air Force have complete discretion to grant claims of certain claimants but deny those of similarly situated claimants, or otherwise engage in arbitrary and capricious behavior in the granting of awards,** *then such delegation of Congress' tort claim settlement authority to the executive would be invalid.*

Such a delegation of Congress' authority to the legislature--without an intelligible principle--violates the separation of powers of doctrine.  Benzene, 448 U.S. at 686-87 (Rehnquist, J., concurring).   An intelligible principle is the animating principle that must give the executive the power to control its basic life processes.  The statute does that in certain ways.  For example, regarding noncombat activities, causation must be established. 10 U.S.C. sec. 2733 (a).  But more than that, this animating principle must also always include the bedrock principles of fundamental fairness: the basic commitment to procedural due process, substantive due process, and the avoidance of arbitrary and capricious decisions.  Otherwise, an agency could wreak havoc, like a golem, the body of a man without sufficient intelligible principle to supply context and understanding to the basic commands he is given.

The threat of review by an Article III court as to an agency's observance of these constitutional standards, set forth both in the APA and in the Scroggins formula, serves as the executive's superego, restraining its potentially monstrous behavior, by supplementing the basic animating principle in Congress' grant of power to the executive.  Thus, for the intelligible principle found in the MCA to be considered a valid delegation of Congressional power, it must allow for Scroggins review.  Even administrative agencies given wide discretion in the implementation of their statutes must comport themselves in accord with the values of

23

fundamental fairness.  Judicial review, therefore, must be permitted wherever there is a

"substantial departure from important procedural rights" (procedural due process), "a

misconstruction of the governing legislation" (which in the present case results in a substantive

due process problem), or "other like error going to the heart of administrative determination"

(basic arbitrary and capricious analysis).  See Lindahl v. United States Office of Personnel

Management, 470 U.S. 768, 778 (1985) (quoting  Scroggins v. United States, 397 F.2d 295, 297

(Ct. Cl. 1968)).  In general, it would be hard to judge the MCA as to the fairness of its

settlements procedures and the amounts awarded.  Here, however, the precedent of many settled

claims provide "the consistent practice of a decisional body" by which to judge.  Tarpeh-Doe,

904 F.3d at 724.

Far from lacking *any* argument of constitutional magnitude, the Plaintiffs have now

asserted a second separation of powers issue.  In addition to Plaintiffs' original claim that an

executive agency had trespassed on the legislative power by impermissibly expanding the FECA

exclusivity provision, now at issue as well is the limitation on Congress not to delegate its

spending power improperly, without an intelligible principle.   As a result, the Court has

jurisdiction under the Supremacy Clause to review both Congress' overbroad delegation to the

executive, as well as the executive's overreaching its delegated authority.  In sum, this delegation

of the spending power can be valid only if all the limitations on the Secretary's discretion set

forth in 10 U.S.C. sec. 2733 are understood to have been delegated with the further principles of

fundamental fairness, wherein "ours is a government of laws, not men," and are so understood to be reviewable under the <u>Scroggins</u> formula.

Synthetically reading the MCA in tandem with the "intelligible principle" provided by <u>Scroggins</u> resolves as well the conundrum presented by <u>Tarpeh-Doe</u>, and its refusal to recognize an obligation to pay where no explicit mandatory language existed. 904 F.2d at 723. The spending power must be exercised with an intelligible principle. "The regulations most assuredly do not say that a claimant may be led down the yellow brick road of 'thorough investigation,' only to be faced at the end with the wizard-like administrator flipping coins behind a screen." Id. at 726 (Wald, J., dissenting).

If there is no entitlement for a claimant to be paid something, as budgets allow, for what were the claims acts enacted? To say that MCA does not create at least a legitimate expectation of reparation for injury is to say that "Congress gave a right and took it away at one and the same instant, or, in some confusion of mind, intended to withhold" it the same time it conferred it. <u>McLean v. United States</u>, 226 U.S. 374, 383 (1912). "The act was not [enacted as] a simple gratuity. Public moneys are not appropriated as mere gifts. They are appropriated in recognition and reward of merit or in recompense for service, or, as it may be inferred in the present case, reparation for injustice done." Id. at 381.

While a claims statute does not waive sovereign immunity, the government's retention of its sovereign immunity does not immunize the agency from paying claims under the very statute, which provides for payment—unless budgetary considerations would preempt the ability to pay

fair and comparable recoveries to all claimants.  Even where the United States has created the

right against itself, and even where the statute-created right provides the exclusive remedy, it is

not necessary to preclude review simply because the "right and the remedy are thus intertwined."

Babcock, 250 U.S. at 331.

      Viewed from this perspective, the MCA, far from granting its administrators unbounded

discretion, instead is "so narrowly confined as virtually to guarantee conferral of the benefit,"

Furlong, 156 F.3d 384, 394-95 (1988), according to some budgetary formula, as long as the

conditions precedent are met.  The Secretary would still need to exercise discretion in deciding

how best to institute fair regulations for processing, awarding, and paying claims. Even without

the precedents of a decisional body, the Secretary's discretion could actually be so thoroughly

channeled that the administrative agency has no recourse:  once causation or negligence has been

established, and it has been determined that no exemptions apply, conferral of some amount is

"virtually assured."  Furlong v. Shalala, 156 F.3d 384, 394-95 (1998) (following the Perry v.

Sindermann, 408 U.S. at 601-03, rationale in Tarpeh-Doe, 904 F.3d at 724).  See also  Gagliardi

v. Village of Pawling, 18 F.3d 188, 192 (2d Cir. 1994); Yale Auto Parts, Inc. v. Johnson, 758

F.2d 54, 58-59 (2d Cir. 1985).

      For Congress to have delegated its spending power without the understanding that the

agency would follow procedural or substantive due process protections would be a violation of

the separation of powers.  It is not, therefore, appropriate to compare a claims act to prisoners'

rights cases, as was done in denying the claim in Tarpeh-Doe, 904 F.3d at 722-23 (citing

Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 516-17 (1989) (holding

anything above basic human rights could be considered worthy of due process consideration only

if "substantive predicates" were established to channel the otherwise "completely unfettered"

discretion of the prison administrator)).  The MCA was not established to distribute gratuities.

See McLean, 226 U.S. at 380-81.

## III.  REGULATIONS ISSUED UNDER THE MILITARY CLAIMS ACT SHOULD BE PROMULGATED AFTER NOTICE AND COMMENT RULEMAKING.

As stated in United States v. Mead Corporation, 533 U.S. 218, 227 (2001), the test for

whether a rule is interpretive or legislative is whether "Congress delegated authority to the

agency generally to make rules carrying the force of law."  Whether or not such a broad

delegation of Congress' rulemaking authority to the military departments could be constitutional

absent a commitment to Scroggins review, Congress nevertheless did intend that the Secretaries

makes rules carrying the force of law.  Indeed, as to 32 C.F.R. sec. 842.50(r), the Air Force

invented a new law altogether--by expanding the FECA exclusivity provision.

By contrast, an interpretive rule "expresses the agency's view of what another rule,

regulation, or statute means," when those are outside the policy expertise of the agency.  Allied

Van Lines, Inc. v. Interstate Commerce. Com., 708 F.2d 297, 300 (7th Cir. 1983) (citing K.

Davis, 2 Administrative Law Treatise, sec. 7:11 at 56 (2d ed. 1979)).  32 C.R.R. sec. 842.50 (r),

therefore, would be an interpretive rule only, because based on a statute outside the Air Force's

expertise.

Because most of the Air Force's sparse regulations are of a legislative nature, however, and because the military function exemption should not apply to settlements under the Military Claims Act, the regulations should have been issued after notice and comment rulemaking.  See 5 U.S.C. sec. 553.  Independent Guard Assoc. of Nevada v. O'Leary, 57 F.3d 766, 769-70 (9th Cir. 1995) held that 5 U.S.C. sec. 553(a)(1), "the military function exemption" to the notice and comment rulemaking required under the APA, applied only to the extent that a military function was involved.  "The legislative history and relevant case law direct that an exception can be invoked only where the activities being regulated directly involve a military function."  Id. at 770.

As to a plaintiff who can show prejudice, the regulations should be considered invalid. See United States v. Mulero-Joubert, 289 F.3d 168, 171-72 (2002) (constructive notice sufficient despite lack of notice from duly promulgated regulation). See also Louis v. Nelson, 544 F. Supp. 973, 995-97 (S.D. Fla. 1982).

In the present case, even the notice and comment rulemaking process would not serve to justify a regulation such as 32 C.F.R. sec. 842.50(r), which violates the separation of powers.  To many other claimants, however, the lack of notice and comment rulemaking procedures must have been harmful for years.  Since Welch, many claimants have been hard pressed to figure out why virtually every claim of someone in the military is excluded as "incident to service."  Even Rodrigue, 968 F.2d at 1434, noted that the incident to service exemption seems to have been stretched beyond all common sense.  This sort of problem area might be sorted out during notice

and comment rulemaking.  Even if the regulations were not liberalized as a result of the notice and comment rulemaking, at least they might include some indications as to when it might ever be possible to make a successful claim.

The Welch conundrum is currently preventing claims from being made by many women who are raped "incident to their service."  See Henry Mark Holzer, "The Endless Ordeal of Jacqueline Ortiz:  A Desert Storm Soldier's Unsuccessful Attempt to Recovery for a Sexual Attack by her First Sergeant," 24 N.M.L. REV. 51 (1994).  According to a recent editorial in the New York Times, in the last two years, ninety-two charges of rape have been lodged under the Pacific Air Forces Command.  (See Appendix, p. 2, "Confronting Rape in the Military," N.Y. TIMES, March 12, 2004, at A1)  In the past eighteen months, 112 reports of rape and other sexual abuse have been reported from the war-front Central Command of Iraq, Afghanistan and Kuwait. Id.  The total number of such incidents is no doubt much higher given the disincentives to reporting such behavior.  Id.  "Confidential surveys have found that up to 30 percent of women veterans reported being victimized in sexual assaults while in the military.  Three out of four said they had not dared to report being assaulted because of concerns about privacy and career advancement."  Id.

Were notice and comment rulemaking procedures followed, perhaps, these victims and other military personnel who care about the problems could influence the process to change the rules might be changed so that rape would no longer be considered incident to a victim's service, but a rapist would be considered to have acted within the scope of his employment.

Or, if those doctrines are not susceptible to being stood on their heads, then, perhaps, the Air Force would simply decide to pay such claims under 10 USC 2733, as it now does under 10 USC sec. 2734 (providing for claims for foreigners) (where 32 C.F.R. sec. 842.64(c)(2) specifies that when "the cause is a criminal act clearly outside the scope of employment, ordinarily pay the claim and consider disciplinary action against the offender").

Following the notice and comment rulemaking procedures provided for in the APA could also result in regulations that assure claims are administered with safeguards for procedural due process.  Such regulations would then serve to render the Military Claims Act constitutional, channeling its discretion, and so providing a means for a court to conduct  Scroggins review. Further, regulations so promulgated might also require the publication of awards and decisions, which would also promote fairness and provide a standard for review under the Perry v. Sindermann approach.  As noted earlier in Mindes, *supra* n.4,  "The Court could not stay its hand if, for example, it was shown that only blacks were assigned to combat positions while whites were given safe jobs in the sanctuary of rear echelons."  453 F.2d at 199.  Yet, because no decisions or awards are reported or published, it is currently virtually impossible to detect this type of bias in the administration of the MCA.

Even where rulemaking power is granted, such regulations are not controlling when they exceed the Secretary's statutory authority and when they are arbitrary and capricious.  Sullivan, 493 U.S. 521, 528 (citing Chevron, 467 U.S. at 843-844).

**IV. CONCLUSION.**

If the regulations issued under the MCA are issued after notice and comment rulemaking and if its administration is subject at least to constitutional standards of review, including Scroggins due process and arbitrary and capricious review, then the statutory authority with which Congress delegated its spending power to the agency can be said to be validly granted, i.e. channeled with a sufficiently intelligible principle. This intelligible principle is the common underpinning of all American jurisprudence, whereby "ours is a government of laws, not men." That is what makes the United States government's bureaucracies for the most part fair, and far different than those found in the Banana Republics. No doubt Scroggins reversals will be virtually unheard of. And, most likely, once an agency is aware that it will be subject to Scroggins review, then the necessity of it will become that much more unlikely. This check on agency behavior is the purpose and result of the separation of powers doctrine.

If the Court views the Air Force's misconstruction of the FECA exclusivity provision as a pure constitutional issue, one going to the separation of powers, then today it is not necessary for the Court to decide that the MCA is subject to Scroggins review, or that Congress' delegation of its spending power to the executive branch is unconstitutional unless the MCA is subject to Scroggins review. In the present case, 32 C.F.R. sec. 842.50(r) was based on an erroneous interpretation of the FECA exclusivity provision. As an interpretation of 10 U.S.C. sec. 2733, it is invalid, because the Air Force's exclusion should have been based on a legitimate interpretation of law or statute. As an interpretation of 5 U.S.C. sec. 8116(c), it is an

impermissible expansion of the reach of that statute, both exceeding its statutory authority and short of statutory authority, in a way that trespasses on the power reserved to the legislature. Moreover, here, a consistent precedent has been established as to all the other civilian passengers in the plane, which crashed en route to Dubrovnik over the mountains of Croatia.  (See Appendix, p. 1).  The Plaintiffs' claims, therefore, should be remanded to the Air Force for them to be settled reasonably and fairly.

Therefore, for the reasons stated above, the Plaintiffs respectfully request the Court to deny Defendant's motion to dismiss pursuant to Rule 12(b)(1) and (b)(6).

THE PLAINTIFFS

By _____
      Richard A. Bieder, Esq.
      Federal Bar # ct04208
      Ruth Daniella Weissman, Esq.
      Federal Bar # ct25441
      Koskoff, Koskoff & Bieder
      350 Fairfield Avenue, 5th Floor
      Bridgeport, CT  06604
      Tel. (203) 336-4421
      Fax (203) 368-3244

<u>CERTIFICATION</u>

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on this

23rd day of April, 2004, to all counsel as follows:

Lauren M. Nash
U.S. Attorneys Office
157 Church Street
P.O. Box 1824
23rd Floor
New Haven, CT  06510

Justin T. Green
Kreindler & Kreindler
100 Park Avenue
New York, New York 10017
(212) 687-8181

_____
Richard A. Bieder