The SPEAKER. Is there objection to the request of the gentleman from Wisconsin?

There was no objection.

Mr. MURRAY of Wisconsin. Mr. Speaker, I take this minute to say to my colleagues that I think practically all of us are acquainted with Marvin Jones. I never met Mr. Davis and never saw him but once or twice. I do know that the people of this country have a very very high regard for Mr. Davis. Regardless of many of the sins of the New Deal agricultural program, which Mr. Jones has been a party to, I hope he will not follow such a course during wartime. I think in fairness to Mr. Jones and in fairness to the war effort we should start from scratch. I reserve the right personally to criticize Mr. Jones in case he does not follow the right kind of a program from here on. He cannot now continue to be a part of an agricultural program that caters to a few so-called basic crops that represent but 25 percent of the national farm income. I do not even want to mention to him the fact that he has been one of the leaders of an agricultural program that gives 6,400 farmers in the great State of Texas a subsidy of $12,000,000 a year, which is more than the farmers in 35 other States obtain. I do not want to mention a lot of unpleasant things in connection with the unfair and unjust New Deal agricultural program. I think we should start out with Mr. Jones as Food Administrator at this time and try to help produce the food that is necessary to win this war, and do it by quitting talk about price and instead getting into high gear in production. If we do not do that, we shall not have anything to eat. We spend plenty of time talking about appropriations for food production, but the O. P. A. does not let the canners preserve this food after it is produced. I hope Mr. Jones can measure up to his responsibilities.

### SETTLEMENT OF CLAIMS AGAINST WAR DEPARTMENT

Mr. McGEHEE. Mr. Speaker, I ask unanimous consent for the immediate consideration of the bill (S. 1026) to provide for the settlement of claims for damage to or loss or destruction of property or personal injury or death caused by military personnel or civilian employees, or otherwise incident to activities, of the War Department or of the Army.

The Clerk read the title of the bill.

The SPEAKER. Is there objection to the request of the gentleman from Mississippi?

Mr. MICHENER. Reserving the right to object, Mr. Speaker, will the gentleman explain the bill?

Mr. McGEHEE. Yes. Mr. Speaker, this bill was introduced by the chairman of the Senate Committee on Military Affairs. It passed the Senate and was referred to the House Committee on Claims, was unanimously reported by that committee, and is now on the calendar.

The bill was introduced at the suggestion of the Secretary of War, Mr. Stimson. Its purport is to permit the War Department to settle claims for up to $1,000 during the period of the war; the limitation now being $500, as is now provided by statute.

Mr. CASE. Mr. Speaker, will the gentleman yield?

Mr. McGEHEE. I yield to the gentleman from South Dakota.

Mr. CASE. I am wondering what the effect of that will be in relation to a paragraph that is in the Army appropriation bill now pending in the Senate, unless action was finally completed yesterday, which provides authority for the War Department to settle claims for damages to personal property not exceeding $500.

Mr. McGEHEE. I am not familiar with the provisions of the bill pending in the Senate, but I do know that there are several acts of Congress which conflict in some respect and do not give the War Department the proper authority to settle claims up to $500. This bill consolidates them into one and makes it easier for settlements to be made, and increases the amount they can settle for during the period of the war to $1,000.

Mr. CASE. I certainly am not opposed to the War Department's having authority to settle these small claims without requiring special legislation on each one, but in view of the fact that section is a new one in the appropriation bill and will have some bearing upon the use of money appropriated for the coming fiscal year, it would be well to examine the language of the appropriation bill and, before this bill is acted upon in the Senate, have appropriate language placed in it to avoid any possible conflict.

Mr. McGEHEE. May I say to the gentleman, as I stated before, I am not familiar with the provision of the amendment offered in the Senate on the appropriation bill, but I take it that the War Department making this recommendation and following the committees in each branch of the Congress in the passage of appropriation bills and other bills affecting it would certainly call the attention of the Senate to the fact that this legislation is pending, which would take care of the situation as they desire it. I stated to the Members that during the period of the war this permits the War Department to settle claims up to $1,000. I might say further this will relieve your Claims Committee in both the Senate and the House of a great deal of work. It will certainly lessen the expense of settling claims, because we are all familiar with what it costs to put a bill through the two branches of Congress. I think it should be passed. It is concurred in by the entire membership of the Claims Committee.

Mr. MICHENER. This bill does not take away any right from the claimant?

Mr. McGEHEE. No; no.

Mr. MICHENER. But it simply confers the right on the Department to adjust claims up to a given amount?

Mr. McGEHEE. That is right.

Mr. MICHENER. But if the claimant does not want to accept the amount offered he can then present his claim just the same as he does now?

LXXXIX—425

Mr. McGEHEE. That
Mr. McCORMACK. 
man yield?

Mr. MICHENER. I y
Mr. McCORMACK. In
Department acts advers
ant can file his bill in Co

Mr. McGEHEE. He 
Mr. McCORMACK. 
ment acted adversely wit
they could act upon, the
still has the right to con

Mr. McGEHEE. That
Mr. CASE. Will the 
further?

Mr. McGEHEE. I yiel
Mr. CASE. The questi
merely to be sure that 
in the appropriation bil
as a limitation upon wh
to do here.

Mr. MICHENER. The
acted dealing with a spec
vails. If the bill to whi
man now refers fixes t
$1,000 and then later ir
appropriation bill fixes 
$500, there is no question
last law enacted will pre

Mr. McGEHEE. Tha
might answer the gentler
saying, since he has call
to my attention, and on
insistence by the War 
the passage of this bill,
me two or three times ye
be glad to go to the Sen
and inform them of the
act with this proviso, wil
eliminating the proviso 
priation bill.

Mr. NORRELL. Mr. S
gentleman yield?

Mr. McGEHEE. I yiel
Mr. NORRELL. I am w
the burden of proof and 
evidence required before 
partment will be permitt
a claim. Does the bill ten
Government responsible?

Mr. McGEHEE. It pla
tions whatever. It is left 
judgment of the represen
War Department. In the 
Department should turn 
even though it is within t
called for in this bill, then 
party or the injured party 
have this bill introduced i

Mr. NORRELL. I was t
should be some degree of l
the War Department could
to act favorably on a clai

Mr. McGEHEE. In answ
tleman's question, I cannot 
how such language could be 
in this bill.

The SPEAKER. Is ther
the present consideration 

There being no objectic
read the bill, as follows:

Be it enacted, etc., That t
War, and, subject to appeal t
of War, such other officer o
may designate for such purp
such regulations as he may
hereby authorized to consider
just, determine, settle, and pa
not in excess of $500, or in t

BEST COPY AVAILABLE

1943　　　　　CONGRESSIONAL RECORD—HOUSE　　　　　6749

$1,000 during the period of the war; the limitation now being $500, as is now provided by statute.

Mr. CASE. Mr. Speaker, will the gentleman yield?

Mr. McGEHEE. I yield to the gentleman from South Dakota.

Mr. CASE. I am wondering what the effect of that will be in relation to a paragraph that is in the Army appropriation bill now pending in the Senate, unless action was finally completed yesterday, which provides authority for the War Department to settle claims for damages to personal property not exceeding $500.

Mr. McGEHEE. I am not familiar with the provisions of the bill pending in the Senate, but I do know that there are several acts of Congress which conflict in some respect and do not give the War Department the proper authority to settle claims up to $500. This bill consolidates them into one and makes it easier for settlements to be made, and increases the amount they can settle for during the period of the war to $1,000.

Mr. CASE. I certainly am not opposed to the War Department's having authority to settle these small claims without requiring special legislation on each one, but in view of the fact that section is a new one in the appropriation bill and will have some bearing upon the use of money appropriated for the coming fiscal year, it would be well to examine the language of the appropriation bill and, before this bill is acted upon in the Senate, have appropriate language placed in it to avoid any possible conflict.

Mr. McGEHEE. May I say to the gentleman, as I stated before, I am not familiar with the provision of the amendment offered in the Senate on the appropriation bill, but I take it that the War Department making this recommendation and following the committees in each branch of the Congress in the passage of appropriation bills and other bills affecting it would certainly call the attention of the Senate to the fact that this legislation is pending, which would take care of the situation as they desire it. I stated to the Members that during the period of the war this permits the War Department to settle claims up to $1,000. I might say further this will relieve your Claims Committee in both the Senate and the House of a great deal of work. It will certainly lessen the expense of settling claims, because we are all familiar with what it costs to put a bill through the two branches of Congress. I think it should be passed. It is concurred in by the entire membership of the Claims Committee.

Mr. MICHENER. This bill does not take away any right from the claimant?

Mr. McGEHEE. No; no.

Mr. MICHENER. But it simply confers the right on the Department to adjust claims up to a given amount?

Mr. McGEHEE. That is right.

Mr. MICHENER. But if the claimant does not want to accept the amount offered he can then present his claim just the same as he does now?

Mr. McGEHEE. That is true.

Mr. McCORMACK. Will the gentleman yield?

Mr. MICHENER. I yield.

Mr. McCORMACK. In addition, if the Department acts adversely, the claimant can file his bill in Congress?

Mr. McGEHEE. He can file his bill.

Mr. McCORMACK. If the Department acted adversely within the amount they could act upon, then the claimant still has the right to come to Congress?

Mr. McGEHEE. That is right.

Mr. CASE. Will the gentleman yield further?

Mr. McGEHEE. I yield.

Mr. CASE. The question I raised was merely to be sure that that paragraph in the appropriation bill does not act as a limitation upon what you propose to do here.

Mr. MICHENER. The last law enacted dealing with a specific matter prevails. If the bill to which the gentleman now refers fixes the amount at $1,000 and then later in the week an appropriation bill fixes the amount at $500, there is no question but what the last law enacted will prevail.

Mr. McGEHEE. That is true. I might answer the gentleman further by saying, since he has called this proviso to my attention, and on account of the insistence by the War Department on the passage of this bill, having called me two or three times yesterday, I shall be glad to go to the Senate committee and inform them of the passage of the act with this proviso, with the view of eliminating the proviso in the appropriation bill.

Mr. NORRELL. Mr. Speaker, will the gentleman yield?

Mr. McGEHEE. I yield.

Mr. NORRELL. I am wondering about the burden of proof and the degree of evidence required before the War Department will be permitted to approve a claim. Does the bill tend to make the Government responsible?

Mr. McGEHEE. It places no restrictions whatever. It is left entirely in the judgment of the representatives of the War Department. In the event the War Department should turn down a claim, even though it is within the amount as called for in this bill, then the aggrieved party or the injured party has a right to have this bill introduced in Congress.

Mr. NORRELL. I was thinking there should be some degree of liability before the War Department could be permitted to act favorably on a claim.

Mr. McGEHEE. In answer to the gentleman's question, I cannot visualize just how such language could be incorporated in this bill.

The SPEAKER. Is there objection to the present consideration of the bill?

There being no objection, the Clerk read the bill, as follows:

Be it enacted, etc., That the Secretary of War, and, subject to appeal to the Secretary of War, such other officer or officers as he may designate for such purposes and under such regulations as he may prescribe, are hereby authorized to consider, ascertain, adjust, determine, settle, and pay in an amount not in excess of $500, or in time of war not in excess of $1,000, where accepted by the claimant in full satisfaction and final settlement, any claim against the United States arising on or after May 27, 1941, when such claim is substantiated in such manner as the Secretary of War may by regulation prescribe, for damage to or loss or destruction of property, real or personal, or for personal injury or death, caused by military personnel or civilian employees of the War Department or of the Army while acting within the scope of their employment, or otherwise incident to noncombat activities of the War Department or of the Army, including claims for damage to or loss or destruction, by criminal acts, of registered or insured mail while in the possession of the military authorities, claims for damage to or loss or destruction of personal property bailed to the Government and claims for damages to real property incident to the use and occupancy thereof, whether under a lease, express or implied, or otherwise: Provided, That the damage to or loss or destruction of property, or the personal injury or death, shall not have been caused in whole or in part by any negligence or wrongful act on the part of the claimant, his agent, or employee. No claim shall be settled under this act unless presented in writing within 1 year after the accident or incident out of which such claim arises shall have occurred: Provided, That if such accident or incident occurs in time of war, or if war intervenes within 1 year after its occurrence, any claim may on good cause shown be presented within 1 year after peace is established. The amount allowed on account of personal injury or death shall be limited to reasonable medical, hospital, and burial expenses actually incurred, except that no payment shall be made to any claimant in reimbursement for medical or hospital services furnished at the expense of the United States nor, in the case of burial, of such portion of the expense thereof as may be otherwise paid by the United States. Any such settlement made by the Secretary of War, or his designee, under the authority of this act and such regulations as he may prescribe hereunder, shall be final and conclusive for all purposes, notwithstanding any other provision of law to the contrary. The provisions of this act shall not be applicable to claims arising in foreign countries or possessions thereof which are cognizable under the provisions of the act of January 2, 1942 (55 Stat. 880; 31 U. S. C. 224d), as amended, or to claims for damage to or loss or destruction of property of military personnel or civilian employees of the War Department or of the Army, or for personal injury or death of such persons, if such damage, loss, destruction, injury, or death occurs incident to their service. The Secretary of War may report such claims as exceed $500, or in time of war $1,000, to Congress for its consideration.

Sec. 2. Such appropriations as may be required for the settlement of claims under the provisions of this act are hereby authorized. Appropriations available to the War Department for the settlement of claims under the provisions of other laws shall be available for the settlement of claims of the same character under the provisions of this act.

Sec. 3. That portion of section 1 of the act of August 24, 1912 (37 Stat. 586), reading as follows: "Provided, That hereafter the Secretary of War is authorized to consider, ascertain, adjust, and determine the amounts due on all claims for damages to and loss of private property when the amount of the claim does not exceed the sum of $1,000, occasioned by heavy gun fire and target practice of troops, and for damages to vessels, wharves, and other private property, found to be due to maneuvers or other military operations for which the Government is responsible, and report the amounts so ascertained and determined to be due the claimants to Congress at each session thereof

LXXXIX—425

BEST COPY AVAILABLE

through the Treasury Department, for payment as legal claims out of appropriations that may be made by Congress therefor.", is hereby repealed.

"SEC. 4. The act of December 28, 1922 (42 Stat. 1066; 31 U. S. C. 215-217), shall hereafter be inapplicable to the War Department.

"SEC. 5. Section 4 of the River and Harbor Act, approved June 25, 1910 (36 Stat. 676), as amended by the act of June 5, 1920 (41 Stat. 1015; 33 U. S. C. 564), is hereby repealed.

"SEC. 6. The act of March 3, 1885 (23 Stat. 350), as amended by the act of July 9, 1918 (40 Stat. 860), and by the act of March 4, 1921 (41 Stat. 1436), is hereby amended by adding, after section 5, the following sections:

"SEC. 5a. Any authorization or direction in this act to the Secretary of War, and any reference herein to a decision, declaration, or other action by the Secretary of War, shall include authorization or direction to, and action by, as the case may be, such other officer or officers as he may designate for such purposes, acting under such regulations as he may prescribe. Any settlement made by the Secretary of War, or his designee, under the authority of this act, under such regulations as he may prescribe, shall be final and conclusive for all purposes, notwithstanding any other provisions of law to the contrary.

"SEC. 5b. The provisions of this act shall be applicable also to civilian personnel and civilian employees of the War Department or of the Army, including such personnel and employees engaged on civil works."

"SEC. 7. The act of February 13, 1936 (49 Stat. 1138; 31 U. S. C. 224a), shall hereafter be inapplicable to acts of officers, enlisted men, and employees of the Army and officers, employees, or agents of the War Department."

The bill was ordered to be read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

PERMISSION TO ADDRESS THE HOUSE

Mr. RICHARDS. Mr. Speaker, I ask unanimous consent to address the House for 20 minutes on next Thursday, after the disposition of the business on the Speaker's desk and any other special orders.

The SPEAKER. Is there objection?
There was no objection.

HOUR OF MEETING TOMORROW

Mr. McCORMACK. Mr. Speaker, I ask unanimous consent that when the House adjourns today it adjourn to meet at 11 o'clock tomorrow.

The SPEAKER. Is there objection?
There was no objection.

VOCATIONAL REHABILITATION ACT AMENDMENTS, 1943

Mr. BARDEN. Mr. Speaker, I call up the conference report on the bill (H. R. 2536), to amend the act entitled "An act to provide for the promotion of vocational rehabilitation of persons disabled in industry or otherwise, and their return to civil employment," approved June 2, 1920, as amended, and for other purposes; and I ask unanimous consent that the statement on the part of the managers may be read in lieu of the report.

The Clerk read the title of the bill.
The SPEAKER. Is there objection to the request of the gentleman from North Carolina?
There was no objection.
The Clerk read the statement.

The conference report and statement are as follows:

CONFERENCE REPORT

The committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 2536) to amend the act entitled "An act to provide for the promotion of vocational rehabilitation of persons disabled in industry or otherwise and their return to civil employment", approved June 2, 1920, as amended, and for other purposes, having met, after full and free conference, have agreed to recommend and do recommend to their respective Houses as follows:

That the Senate recede from its amendments numbered 3, 4, and 5.

That the House recede from its disagreement to the amendments of the Senate numbered 1, 2, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; and agree to the same.

Amendment numbered 11: That the House recede from its disagreement to the amendment of the Senate numbered 11, and agree to the same with an amendment, as follows: In lieu of the matter proposed to be inserted by the Senate amendment insert the following: "and medical examinations where necessary to determine eligibility for vocational rehabilitation, the nature of rehabilitation services required, or occupational limitations, in the case"; and the Senate agree to the same.

Amendment numbered 18: That the House recede from its disagreement to the amendment of the Senate numbered 18, and agree to the same with an amendment, as follows: In lieu of the matter proposed to be inserted by the Senate amendment insert the following: "establishing such facilities and furnishing such"; and the Senate agree to the same.

GRAHAM A. BARDEN,
EDWARD J. HART,
JOHN LESINSKI,
*Managers on the part of the House.*
ELBERT D. THOMAS,
ROBERT M. LA FOLLETTE, Jr.,
ALLEN J. ELLENDER,
ROBERT A. TAFT,
GEORGE D. AIKEN,
*Managers on the part of the Senate.*

STATEMENT

The managers on the part of the House at the conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 2536) to amend the act entitled "An Act to provide for the promotion of vocational rehabilitation of persons disabled in industry or otherwise and their return to civil employment", approved June 2, 1920, as amended, and for other purposes, submit the following statement in explanation of the effect of the action agreed upon by the conferees and recommended in the accompanying conference report:

Amendments numbered 1, 10, 12, 17, 18, 21, 23, and 25: These amendments are technical and clarifying amendments. The House recedes.

Amendment numbered 2: The House bill provided that as one of the conditions for approvability of a State plan for vocational rehabilitation such plan should provide that vocational rehabilitation under it should be available only to such classes of individuals as should be approved by the Administrator. The Senate amendment provided that vocational rehabilitation under such plan should be available only to classes of employable individuals as defined by the Administrator. The House recedes.

Amendments numbered 3, 4, and 5: Under the House bill one of the requirements for approvability of a State plan for vocational rehabilitation was that it contain such provisions as to the qualification of personnel for appointment in administering the plan as are necessary to the establishment and maintenance of personnel standards. The Senate amendment numbered 3 provided that the plan should contain such provisions as to personnel in administering the plan as are necessary to the establishment and maintenance of a merit system. The Senate recedes.

Amendments numbered 6 and 7: Under the House bill one of the requirements of a State plan was that it provide for compliance with such rules, regulations, and standards with respect to expenditures upon which Federal grants are made available under section 3 (a) as the Administrator might establish. The Senate amendments required the State plan to provide such rules, regulations, and standards with respect to such expenditures as the Administrator might find reasonable and necessary. The House recedes.

Amendments numbered 8, 9, 13, and 30: These Senate amendments provided for including within the scope of the Act war disabled civilians certified to the State as such by the Federal Security Administrator, and for having the Federal Government pay the necessary cost of providing vocational rehabilitation for them. As defined in section 10 (b), the term "war disabled civilian" means (1) civilians (except those paid for services as civilian defense workers) disabled while serving after December 6, 1941 and prior to the termination of the war in the Aircraft Warning Service, as members of the Civilian Air Patrol, or as members of the United States Civilian Defense Corps (including registered trainees); and (2) civilians disabled while serving during a corresponding period as officers or members of the crew of a vessel owned or chartered by the Maritime Commission or the War Shipping Administration, or operated under charter from such Commission or Administration. The disability in any such case must be incurred in line of duty and not due to the civilian's own misconduct. There was no corresponding provision in the House bill. The conference agreement retains the provisions of these Senate amendments.

Amendment numbered 30 also retained the definition of the terms "vocational rehabilitation" and "rehabilitation services" which were contained in the House bill. This amendment eliminated, however, a provision which provided in effect that such terms should not be considered to require any State to provide all such services which may be necessary, and that a State plan might be limited to training, or to training and any one or more of the other vocational rehabilitation services. As a result of the conference action on this amendment, the provision of the House bill just referred to is eliminated.

Amendments numbered 11 and 14: Senate amendment numbered 11 provided, in effect, that disabled individuals might be given medical examinations where necessary to determine eligibility for vocational rehabilitation, the nature of rehabilitation services required, or their occupational limitations. The language of the House bill which was stricken by Senate amendment numbered 14 would have limited such medical examinations to disabled individuals who were found to require financial assistance. The conference agreement retains and clarifies Senate amendment numbered 11 and the House recedes from its disagreement on Senate amendment numbered 14.

Amendment numbered 15: This amendment provided for including in the rehabilitation services furnished to needy disabled individuals transportation, occupational licenses, and customary occupational tools and equipment. There was no corresponding provision in the House bill. The House recedes.

BEST COPY AVAILABLE

consent that the Senate proceed to the consideration of Senate bill 218, to authorize relief of disbursing officers of the Army on account of loss or deficiency of Government funds, vouchers, records, or papers in their charge.

The Navy has already been given the same consideration which is provided for in the bill. It was granted several years ago.

The PRESIDING OFFICER. Is there objection to the present consideration of the bill?

There being no objection the bill (S. 218) to authorize relief of disbursing officers of the Army on account of loss or deficiency of Government funds, vouchers, records, or papers in their charge was considered, ordered to be engrossed for a third reading, read the third time, and passed, as follows:

*Be it enacted etc.*, That the General Accounting Office shall relieve any disbursing officer of the Army charged with responsibility on account of loss or deficiency while in the line of duty, of Government funds, vouchers, records, or papers, in his charge, where such loss or deficiency occurred without fault or negligence on the part of said officer: *Provided*, That the Secretary of War shall have determined that the officer was in the line of his duty, and the loss or deficiency occurred without fault or negligence on his part: *Provided further*, That the determination by the Secretary of War of the aforesaid questions shall be conclusive upon the General Accounting Office; *Provided further*, That all cases of relief granted under this authority during any fiscal year shall be reported in detail to the Congress by the Secretary of War: *And provided further*, That this Act shall be applicable only to the actual physical loss of Government funds, vouchers, records, or papers, and shall not include deficiencies in the accounts of disbursing officers of the Army resulting from illegal or erroneous payments.

### TRAVEL COSTS OF DEPENDENTS OF MILITARY AND CIVILIAN PERSONNEL

Mr. REYNOLDS. Mr. President, I now ask unanimous consent that the Senate proceed to the consideration of Senate bill 220, to provide for payment of certain travel costs of dependents of military and civilian personnel of the Army and the War Department on a mileage basis in order to promote efficiency and economy in such payments.

The bill would provide for the payment of certain travel costs of dependents of military and civilian personnel. At the present time it is necessary to have rate experts calculate the cost of transportation from one place to another of the families of Army and civilian personnel, and the Army desires the opportunity to decentralize the payments to field offices, and pay straight fare to the nearest point at 4 cents a mile for adults, and 2 cents a mile for children. It is said that the bill would save the Government considerable money, and the Bureau of the Budget has no objection to it whatever.

Mr. McNARY. Would the bill result in additional expense?

Mr. REYNOLDS. Not at all. It would lessen the present expense.

The PRESIDING OFFICER. Is there objection to the present consideration of the bill?

LXXXIX — 384

There being no objection, the Senate proceeded to consider the bill (S. 220) to provide for payment of certain travel costs of dependents of military and civilian personnel of the Army and the War Department on a mileage basis in order to promote efficiency and economy in such payments, which had been reported from the Committee on Military Affairs with an amendment to strike out all after the enacting clause, and insert:

That (a) in any case where, in lieu of transportation in kind, reimbursement for actual travel costs, or travel at Government expense, of dependents of military and naval, and civilian personnel of the Army, Navy, Marine Corps, and Coast Guard, and War and Navy Departments is now or may hereafter be authorized by law, payment for authorized travel of such dependents shall be made after the completion of such travel (and subject to the provisions of subsections (b), (c), and (d) of this section) on a mileage basis at the following rates:

(1) Four cents a mile for each dependent 12 years of age or more;

(2) Two cents a mile for each dependent less than 12 years of age but not less than 5 years of age;

(3) Nothing for any dependent less than 5 years of age.

(b) The provisions of this act shall apply irrespective of the mode of travel, but shall apply only with respect to such part of authorized travel as takes place within the continental United States (not including Alaska).

(c) Payments shall be made under the provisions of this act for authorized travel heretofore performed by the dependents described in subsection (a) of this section for which reimbursement has not been made at the time of the enactment of this act.

(d) Reimbursement for such travel shall be computed on the basis of distances shown in the official mileage tables of the War Department in effect at the time the travel is performed and if the distances cannot be obtained from the official mileage tables they shall be computed over the shortest usually traveled route.

SEC. 2. That during the present war and for 6 months after the termination thereof, or until such earlier time as Congress by concurrent resolution, or the President by proclamation, may designate, and under such regulations as the Secretary of War may prescribe, claims heretofore or hereafter presented for reimbursement for travel of dependents and shipment of household effects (including packing, crating, and unpacking thereof) of military personnel, as now or hereafter authorized by law or regulations, performed or had at their own expense, may be submitted by and payments made to the military personnel concerned or such dependents as they may designate, or in absence of designation of a dependent by said military personnel, to such dependent as may be designated by the Secretary of War or the Secretary of the Navy, or such person as he may authorize to act for him.

SEC. 3. The Secretary of War and the Secretary of the Navy may prescribe any regulations necessary to carry out the provisions of this act.

The amendment was agreed to.

The bill was ordered to be engrossed for a third reading, read the third time, and passed.

### CLAIMS FOR DAMAGES ARISING OUT OF ACTIVITIES OF WAR DEPARTMENT

Mr. REYNOLDS. Mr. President, I ask unanimous consent that the Senate proceed to the consideration of Senate bill 1026, to provide for settlement of claims for damage to or loss or destruction of property or personal injury or death caused by military personnel or civilian employees.

The Army is merely asking for authority to make settlement of claims for damage on the part of employees of the Army up to the amount of $1,000.

Mr. McNARY. What is the calendar number?

Mr. REYNOLDS. It is Senate bill 1026, Calendar No. 245. The bill was reported unanimously by the full committee.

The PRESIDING OFFICER. Is there objection to the present consideration of the bill?

Mr. McNARY. I understood the Senator to say that the bill had the unanimous approval of the committee.

Mr. REYNOLDS. It had the unanimous approval of the committee, according to my recollection.

Mr. HILL. It not only had the unanimous approval of the committee, but the bill was given careful study by the esteemed distinguished Senator from Vermont (Mr. AUSTIN). He went over it very carefully. He is one of the ablest lawyers in the Senate, and perhaps the ablest lawyer of the committee. He studied the bill carefully, and, as I recall, some suggestions were made with regard to amendments which were agreed to, and then the bill was unanimously approved.

Mr. REYNOLDS. Four or five Army officers appeared before the committee and were examined with regard to the bill.

Mr. TAFT. What happens if a man who has a claim against the Army does not get as much as he thinks he is entitled to? The tendency of the War Department is not to pay anyone anything.

Mr. REYNOLDS. The claimant would be entitled to file another claim, or he could have a private claim bill introduced in the Congress.

Mr. HILL. I may say to the Senator from Ohio that that question was pretty thoroughly thrashed out in the committee. The bill takes no rights away from a claimant at all. He has every right he would have had. The object of the bill is to expedite and, if possible, get rid of claims without a great number of bills being piled up in Congress. It would not take away any right from a claimant.

The PRESIDING OFFICER. Is there objection to the request of the Senator from North Carolina?

There being no objection, the Senate proceeded to consider the bill (S. 1026) to provide for the settlement of claims for damage to or loss or destruction of property or personal injury or death caused by military personnel or civilian employees, or otherwise incident to activities of the War Department or of the Army, which had been reported from the Committee on Military Affairs with amendments, in section 1, page 1, line 8, before the numerals "$1,000", to insert "$500, or in time of war not in excess of"; on page 2, line 9, after the word

AVAILABLE