MILITARY PERSONNEL, ETC.—CLAIMS

the Atomic Energy Commission need for the use of the 7,000 acres ceases, the land will have a definite value for irrigation purposes.

Section 3 of the proposed bill would authorize similar treatment, by agreement between the Secretary of the Interior and the Atomic Energy Commission, of not to exceed an additional 1,920 acres of public domain lands, and acquired lands of equal value, if the need, therefore, should arise.

The proposed legislation has been prepared in collaboration with the Atomic Energy Commission, and the Commission joins in the recommendation that it be enacted.

The Bureau of the Budget has advised that there is no objection to the presentation of this draft bill from the standpoint of the administration's program.

Sincerely yours,

KENNETH HOLUM,
*Assistant Secretary of the Interior.*

COMMITTEE RECOMMENDATION

The Interior and Insular Affairs Committee recommends enactment of H.R. 11960, as amended.

## MILITARY PERSONNEL AND CIVILIAN EMPLOYEES' CLAIMS ACT OF 1964

*For text of Act see p. 871*

Senate Report (Judiciary Committee) No. 1423,
Aug. 13, 1964 [To accompany H.R. 6910]

House Report (Judiciary Committee) No. 460,
June 25, 1963 [To accompany H.R. 6910]

Cong. Record Vol. 110 (1964)

DATES OF CONSIDERATION AND PASSAGE

House July 15, 1963;  Aug. 20, 1964

Senate Aug. 14, 1964

The Senate Report is set out.

Senate Report No. 1423

THE Committee on the Judiciary, to which was referred the bill (H.R. 6910) to provide for the settlement of claims against the United States by members of the uniformed services and civilian officers and employees of the United States for damage to, or loss of, personal property incident to their service, and for other purposes, having considered the same, reports favorably thereon, with an amendment, and recommends that the bill, as amended, do pass.

PURPOSE OF AMENDMENT

The purpose of the amendment is to provide that this act may be cited as the "Military Personnel and Civilian Employees' Claims Act of 1964."

3407

## LEGISLATIVE HISTORY

### PURPOSE

The purpose of the bill is to extend to other agencies of the Government the authority now possessed by the military departments, and as now provided as to the Coast Guard, with respect to the settlement of claims for loss or damage of personal property of members of the Armed Forces or civilian employees of those departments when the loss or damage is incident to their Government service.

The bill is intended to be in addition to, and not in substitution of, existing authority of any Federal agency to settle claims (except as to the statute specifically repealed by secs. 5 and 6).

### STATEMENT

The legislation was introduced in accordance with the recommendations of an executive communication sent to the Congress by the Federal Aviation Agency.

The bill as passed by the House of Representatives differs from the draft which was submitted in the executive communication only with respect to the correction of the date in the short title and minor technical changes which include modification of the language as to repeal of existing law and related wording and its application to the military departments.

The bill as passed by the House of Representatives is further recommended by the Bureau of the Budget and the Department of the Interior, whose recommendations to the Senate Committee on the Judiciary are attached and made a part of this report.

In its favorable report on the bill the Committee on the Judiciary of the House of Representatives set forth the purpose of the bill and explained the minor amendments made to the bill as submitted by the executive communication as follows:

> A civilian employee of a military department or the Coast Guard, or a member of the Army, Navy, Air Force, Marine Corps, or the Coast Guard, can assert a claim for the damage or loss of personal property incident to the claimant's Government service, and the claim can be settled in accordance with the authority contained either in section 2732 of title 10 or section 490 of title 14 of the United States Code. The enactment of the provisions of H.R. 6910 would extend equivalent authority to all Government agencies so that all employees of the Government and military personnel would be entitled to assert such claims. Accordingly, the provisions of H.R. 6910 were drafted to conform with the language of sections 2732 and 2735 of title 10 where applicable. Those sections contain the latest enactments on the subject and are the result of a codification which had as its aim the restatement of the substance of the Military Personnel Claims Act of 1945 in a clear and unambiguous form which would follow accepted modern usage and the best methods of legislative drafting (H.Rept. 970, 84th Cong., 1st sess., pp. 8–10).
>
> Prior to the enactment of title 10 into positive law as a codified title of the United States Code, the provisions of those sections were included in the Military Personnel Claims Act of 1945 (act of

MILITARY PERSONNEL, ETC.—CLAIMS

May 29, 1945, ch. 135, 1, 59 Stat. 225, as amended). The provisions of the Military Personnel Claims Act were repealed when title 10 became law (act of August 10, 1956, ch. 1041, 70A Stat. 155). Equivalent authority to that provided in section 2732 of title 10 is provided as to the Coast Guard in section 490 of title 14 of the United States Code.

In its communication recommending the enactment of this legislation, the Federal Aviation Agency outlined the history of this particular legislation. In 1952 the Civil Aeronautics Administration, the predecessor to the Federal Aviation Agency, was faced with the problem of obtaining relief for a group of Government employees who suffered personal property losses when Government-owned quarters on Wake Island were destroyed or damaged by a typhoon. The losses suffered by these employees served to emphasize the total lack of authority on the part of the employing agencies in that case to make administrative settlement in an instance where military personnel or civilian employees of the military departments could have been compensated in accordance with the provisions of the Military Personnel Claims Act. This prompted the Civil Aeronautics Administration to recommend legislation which would have the effect of extending similar settlement authority for claims for personal property losses suffered by employees of all Federal agencies, and would also provide for the persons who suffered losses in the 1952 typhoon, since it was proposed that the new provisions would be given retroactive effect.

During the 86th Congress this committee concluded that the group of employees who suffered losses on Wake Island should be granted relief by special legislation. Accordingly, H.R. 8251 of that Congress granting such relief was favorably reported and ultimately became Private Law 86-258. In the 2d session of the 86th Congress this committee favorably reported H.R. 10978 which, with a committee amendment, with the exception of the changes referred to at the outset of this report, embodied the provisions of the present bill H.R. 6910. H.R. 10978 of the 86th Congress passed the House on April 4, 1960. During the 87th Congress the bill H.R. 10357 embodying similar provisions was reported by this committee and passed the House on March 19, 1962.

## ANALYSIS OF THE BILL

### SECTION 1

The first section of the bill, as amended, provides that the act may be cited as the "Military Personnel and Civilian Employees Claims Act of 1963."

### SECTION 2

The second section of the bill defines three basic terms used in its provisions. "Agency" is defined as including executive departments, military departments, independent establishments, or cor-

## LEGISLATIVE HISTORY

porations "primarily acting as an instrumentality of the United States." Contractors with the Government are expressly excluded. The term "uniformed services" includes the Army, Navy, Air Force, Marine Corps, Coast Guard, Coast and Geodetic Survey, and Public Health Service. As used in the proposed language, "settle" is to mean "consider, ascertain, adjust, determine, and dispose of any claim." Such settlement may be by full or partial allowance or disallowance.

At a hearing conducted on a similar bill, H.R. 9877, during the 87th Congress, on February 21, 1962, a representative of the Navy Department pointed out that the inclusion of the words "primarily acting as an instrumentality of the United States" included in this section, which were apparently derived from similar language in the Federal tort claims provisions of title 28, United States Code, should not be interpreted as including the employees of nonappropriated fund activities of the military departments. On the basis of this testimony of that hearing, this committee agrees that it should be made clear that the words "primarily acting as an instrumentality of the United States" refer only to "a corporation" and are not intended to extend the benefits of this bill to employees of an organization which could be said to be primarily acting as an instrumentality of the Government but which in fact is not a part of an executive department, military department, or independent establishment. This, of course, has primary reference to the nonappropriated fund activities of the military departments. At the same hearing it was pointed out that the military departments, under the present provisions of section 2732 of title 10, United States Code have authority to settle claims of the sort covered by this bill. However, the Federal Aviation Agency draft did not include a reference to the military departments in its definition of "Agency." In order to preserve existing procedures and practices it is necessary to include a reference to the military departments. As has been stated in the purpose of this legislation at the outset of this report, it is intended to extend to the other agencies of Government the authority now possessed by the military departments and the Coast Guard with reference to the settlement of claims for the loss or damage of personal property.

## SECTION 3

Section 3 is the basic section of the bill and contains five subsections.

### Subsection (a)

This subsection confers claims settlement authority on the head of an agency or his designee to settle and pay claims for not more than $6,500 made by an employee or member of the uniformed service attached to that agency for damage or loss of personal property "incident to his service." Here it is provided that the claim may be paid or the property replaced in kind when a claim has been substantiated and the possession of the property is deter-

## MILITARY PERSONNEL, ETC.—CLAIMS

mined to be reasonable, useful, or proper under the circumstances of the case. These provisions are similar to those presently contained in subsection (a) of section 2732 of title 10 and in subsection (a) of section 490 of title 14 of the United States Code. The proposed language expressly provides that the subsection is not to apply to claims settled before its enactment. The proposed draft originally provided that the exclusion be phrased so as to apply to claims "settled *and paid*" before enactment. At the hearing on February 21, 1962, Government witnesses expressed the fear that the reference to payment of a claim might possibly be interpreted to mean that only such payment would result in exclusion. Accordingly, as amended H.R. 6910 omits the words "and paid" so that there will be no argument that the present bill would allow reconsideration of denied claims. However, this committee would further observe that by its terms this bill grants authority to pay claims "arising after the effective date of this Act."

### Subsection (b)

This subsection provides for the payment of a claim in the event that a person entitled to assert a claim under subsection (a) should be dead. Such a claim could be made by the surviving (1) spouse, (2) children, (3) father or mother or both, or (4) brothers or sisters or both, when the claim arose either before, concurrently with, or after the decedent's death. Similar language concerning claims by survivors is now carried in subsection (c) of section 2732 of title 10 and subsection (b) of section 490 of title 14.

### Subsection (c)

This subsection specifies a 2-year period for the presentation of claims with special provision for the filing of claims beyond that period in the event of war or armed conflict and good cause is shown. This language is similar to that contained in the Military Personnel Claims Act provisions of section 2732 of title 10 and in subsection (c) of section 490 of title 14. The subsection bars claims which occur at quarters occupied by a claimant within the 50 States or the District of Columbia that were not assigned to him or otherwise provided in kind by the United States. The subsection also specifies that a claim will not be allowed where it was caused wholly or in part by the negligent or wrongful act of the claimant or his agent or employee, and this limitation is similarly presently contained in section 2732 of title 10 and section 490 of title 14.

The amended bill omits as surplus language a reference to the presentment of claims "* * * within one year after the date of the enactment of this Act * * *" as an alternative to its being presented within the 2 years after accrual as is stated in the bill. Since the bill has no retroactive effect, such alternative language would be of no effect. Clearly, the bill refers to claims arising after the effective date of the legislation, and therefore the claims must be filed within a 2-year period as specified in the bill.

## LEGISLATIVE HISTORY

**Subsection (d)**

This subsection specifies that the beginning and end of an armed conflict of the sort referred to in subsection (c) as bearing upon the time for filing claims, is to be established either by a concurrent resolution of the Congress or by a determination of the President. This is a parallel to subsection (e) of section 2732 and subsection (c) of title 14.

**Subsection (e)**

This subsection would require the head of each agency to report once a year to the Congress on claims settled under the authority conferred by the section. This is the equivalent to the language now found in subsection (f) of section 2732.

### SECTION 4

This section provides that the settlement of a claim under the proposed act is to be final and conclusive. Section 2735 of title 10 and subsection (d) of section 490 of title 14 contain similar language.

Sections 5, 6, and 7 provide for the repeal of existing law which is superseded by the new provisions.

However, as amended, H.R. 6910 provides for a delay of 2 years in the effective date of the repeal of section 2732 of title 10, United States Code, and of section 490 of title 14, United States Code, and amendments concerning related references in those two titles. This delay was not provided in the original draft as it accompanied the executive communication, and such a delay is required in order to provide for the settlement of claims covered by existing law. As has been stated, the provisions of H.R. 6910 apply only to claims arising after its enactment, but it must be remembered that sections 2732 and 490 both contain provisions permitting claims to be filed within 2 years. The delay in the repeal of those sections must be provided so that the authority to settle those claims arising prior to the effective date of the present bill, H.R. 6910, will not be cut off prematurely.

### CONCLUSION

There is a clearly defined need for this sort of legislation. The lack of such claims settlement authority in other than the military departments and the Coast Guard has resulted in appeals to Congress for the payment of claims for property losses incident to Government service. Each year this committee is called upon to consider numbers of private bills providing such relief, and therefore the committee finds itself able to appreciate the need for this general authority. The experience of the military departments under the Military Personnel Claims Act and under the provisions of section 2732 after the enactment of title 10 as a codified title of the United States Code, and the experience of the Coast Guard under its parallel provisions, have demonstrated the practicality of this sort of legislation. It has further been demonstrated that the Gov-

ernment has benefited from improved morale of its personnel as the result of payment for losses or damage of personal property of those employees or servicemen incident to their service It is also relevant to observe that the experience of the military departments and the Coast Guard in administering the present military personnel claims provisions and the regulations promulgated by those departments to implement those provisions have served to establish guidelines and standards which will aid in the application of the extended coverage of the provisions as contained in this bill. This committee has concluded that the time has come for this claims authority to be given such an application, and recommends that the bill be considered favorably.

The committee believes that the bill is meritorious and recommends it favorably.

Attached and made a part of this report are (1) a letter, dated May 12, 1964, from the Bureau of the Budget; (2) a letter, dated May 28, 1964, from the Department of the Interior; and (3) a letter to the Speaker of the House of Representatives from the Federal Aviation Agency, dated June 5, 1963, transmitting the draft of the bill.

I

EXECUTIVE OFFICE OF THE PRESIDENT,
BUREAU OF THE BUDGET,
*Washington, D. C., May 12, 1964.*

Hon. JAMES O. EASTLAND,
*Chairman, Committee on the Judiciary,*
*U. S. Senate, Washington, D. C.*

DEAR MR. CHAIRMAN: Private relief legislation has traditionally afforded a means for redressing individual grievances and assuming appropriate Government responsibility in many types of cases. The legislative and executive branches have always regarded such legislation as symbolizing the concern we feel for the individual and the need, when circumstances justify it, to set aside the rules of law that are otherwise of general applicability. Certainly, nothing should be done that would tend to undermine this salutary process and the important purpose which it serves.

It often happens, however, that the repeated enactment of similar private relief bills demonstrates that there is a gap in existing law or that a new law should be framed to meet circumstances which have and probably will continue to recur. The Congress has often been willing, in the past, to meet this situation by the enactment of general legislation that will make the future enactment of a particular class of private bills unnecessary. The Legislative Reorganization Act of 1946 provides a noteworthy example of such action, although there are many others of more recent date. We believe that the results have been uniformly good when this has been done. These results include reducing the burden which consideration of such bills necessarily imposes on both the legislative and executive branches and, of even greater importance, the provision of faster relief for all claimants on an equal basis.

An examination of private relief bills enacted during recent sessions of the Congress discloses that there are two areas where, in our opinion, the enactment of general legislation would produce the results referred to above. In both areas, your committee has, in the past, had before it bills which would do just that. The areas in question involved relief from the liability to reimburse the Government for erroneous overpayments

3413

## LEGISLATIVE HISTORY

received in good faith—currently H.R. 3800—and payment of compensation to Government employees for personal property lost incident to their Government service, H.R. 6910. This latter bill has, of course, been passed by the House and is now pending before your committee.

Both of these bills are strongly endorsed by the administration. Both contain limitations which should obviate concern about abuse of the authority which they would provide. Both would authorize relief under circumstances where private bills have consistently provided relief in recent years and where, in the absence of general legislation, they can be expected to continue to provide such relief in the future. Both of these bills are substantially identical to bills that have passed the House in recent Congresses.

Because of the special concern of your committee, both in regard to H.R. 3800 and H.R. 6910 as well as for the whole private relief process, I am writing to ask that you and the members of your committee give your wholehearted support to the enactment of these two bills at the current session of the Congress. Passage of these bills will enable the Judiciary Committees, the Congress, the President, and the executive agencies concerned to devote more attention to the many other urgent matters coming before them and, as with existing authorities having a similar purpose, will assure an orderly and prompt means for the settlement of meritorious claims.

I earnestly hope, therefore, that your committee will see its way clear to take early and favorable action on H.R. 6910 and, when it comes before you, H.R. 3800.

I am sending a similar letter to the chairman of the House Judiciary Committee.

Sincerely yours,

KERMIT GORDON, *Director.*

---

II

DEPARTMENT OF THE INTERIOR,
OFFICE OF THE SECRETARY,
*Washington, D. C., May 28, 1964.*

Hon. JAMES O. EASTLAND,
*Chairman, Committee on the Judiciary,*
*U. S. Senate, Washington, D. C.*

DEAR SENATOR EASTLAND: Your committee has requested this Department's report on H.R. 6910, to provide for the settlement of claims against the United States by members of the uniformed services and civilian officers and employees of the United States for damage to, or loss of, personal property incident to their service, and for other purposes, which passed the House of Representatives on July 15, 1963.

We recommend the enactment of the bill.

H.R. 6910 extends to all agencies of Government the discretionary authority now possessed by the Defense Department and the Coast Guard to settle claims involving the loss or damage of the personal property of a military or civilian employee of the Government. The bill provides for the settlement and payment of a claim arising after enactment of this legislation in an amount not to exceed $6,500 when the loss or damage is incident to the employee's Government service. Claims must be made in writing within 2 years after they accrue except in the case of war or armed conflict. Payment may be made in kind or in cash.

The House-passed bill bars any claim for damage or loss occurring at quarters occupied by the claimant which were not assigned or provided him. Further, acclaim will be barred where it is found that the damage or loss was caused wholly or in part by the claimant's negligence or wrongful act, or that of his agent or his employee. No provision is made

3414

MILITARY PERSONNEL, ETC.—CLAIMS

for appeal to the courts. On the contrary, the bill provides that the administrative settlement of a claim is final and conclusive.

Provision is made for each agency head to prescribe regulations in carrying out the provisions of the bill. Such regulations might provide that payment will not be made where the personal property is covered by private insurance.

We are unable to estimate the cost of this legislation to this Department. We point out, however, that the enactment of this bill will obviate the need for private relief bills such as the act of May 6, 1954 (68 Stat. A 46) providing relief to Daryl L. Roberts, et al., in the amount of $757 for personal property lost on July 12, 1950, aboard a powerboat in Alaska.

The Bureau of the Budget has advised that there is no objection to the presentation of this report from the standpoint of the administration's program.

Sincerely yours,

D. OTIS BEASLEY,
*Assistant Secretary of the Interior.*

III

FEDERAL AVIATION AGENCY,
OFFICE OF THE ADMINISTRATOR,
*Washington, D. C., June 5, 1963.*

Hon. JOHN W. MCCORMACK,
*Speaker of the House of Representatives,*
*Washington, D. C.*

DEAR MR. SPEAKER: I transmit herewith for the consideration of the Congress a draft bill to provide for the settlement of claims against the United States by members of the uniformed services and civilian officers and employees of the United States for damage to, or loss of, personal property incident to their service, and for other purposes.

The purpose of the proposed legislation is to extend to other agencies of Government the authority now possessed by the military departments with respect to settlement of claims for loss or damage of personal property of members of the Armed Forces or civilian employees of those departments when the loss or damage is incident to their Government service.

The proposed legislation has a history that goes back to September 1952, when over 100 employees of the Civil Aeronautics administration, our predecessor agency, suffered loss of personal property in a typhoon at Wake Island because the quarters provided by the Government proved to be inadequate protection.

While the Department of Commerce was considering the submission of private bills to pay for these losses, it received a suggestion from Congressman Chauncey W. Reed, then chairman of the House Committee on the Judiciary, that it prepare, instead, a draft of general legislation to permit administrative payment of claims of this type by head of executive agencies without, in each case, presenting them to the Congress for adjustment through private bills. A widespread need for such legislation existed apart from the Wake Island disaster, and the Department complied with this request.

The House of Representatives recognizing the need for the authority sought, passed H.R. 10357 in the 87th Congress. However, Congress adjourned without the Senate's taking action on the bill. The draft proposal submitted herewith is identical to H.R. 10357 as passed by the House.

This Agency's continuing experience with the hardship suffered by Government employees who suffer losses incident to their employment through no fault of their own serves to strengthen our conviction that an imperative need continues to exist for passage of this legislation. To particu-

3415

LEGISLATIVE HISTORY

larize, several employees suffered loss of personal belongings when they were forced to evacuate from an aircraft in which they were traveling in the course of their duties. Others sustained losses through theft of personally owned hand tools stored at the place of their employment provided by the Government. Employees have borne personal property losses where their belongings were stored in Government buildings which were consumed by fire.

The recent Typhoon Karen incident on Guam demonstrates the costly and inconvenient circumstances into which Government employees are from time to time thrust. That typhoon caused 84 FAA employees to suffer personal property losses, averaging roughly $1,500 for married employees and $450 for single. Some expeditious means of reinstating those suffering the loss to their normal circumstances is needed.

The only recourse these employees now have is to seek compensation for the loss by private relief bill. This is a very costly process for the Government, and an unnecessarily burdensome route for the employee, the employing agency, and the Congress. In many instances the expenses incurred by the Government in processing such bills exceeds the amount of the claim.

It seems apparent that it is in the best interests of the Government to permit settlement of these claims administratively. Enactment of this legislation would be a financial saving to the Government. It would provide to the Government agencies a means of restoring the unfortunate and unforeseen losses sustained by their employees under circumstances in which it is fair that the Government should make up the loss.

The Bureau of the Budget has advised that there is no objection from the standpoint of the administration's program to the submission of this proposed legislation to the Congress.

Sincerely,

N. E. HALABY, *Administrator.*

## HOUSING ACT OF 1964

*For text of Act see p. 873*

Senate Report (Banking and Currency Committee) No. 1265,
July 29, 1964 [To accompany S. 3049]

House Report (Banking and Currency Committee) No. 1703,
Aug. 5, 1964 [To accompany H.R. 12175]

Conference Report No. 1828, Aug. 18, 1964 [To accompany S. 3049]

Cong. Record Vol. 110 (1964)

### DATES OF CONSIDERATION AND PASSAGE

House Aug. 13, 19, 1964

Senate July 31, Aug. 19, 1964

The Senate bill passed in lieu of the House bill with an amendment adopting much of the language of the House bill. The House Report and the Conference Report are set out

House Report No. 1703

THE Committee on Banking and Currency, to whom was referred the bill (H.R. 12175) to extend and amend laws relating to housing, urban renewal, and community facilities, and for other purposes, having considered the same, report favorably thereon without amendment and recommend that the bill do pass.