UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEVIN MURPHY, Administrator, et al., | : | |
| Plaintiffs, | : | |
| V. | : | CASE NO. 3:03CV500 (MRK) |
| United States of America, et al., | : | |
| Defendants. | : | May 20, 2004 |

PLAINTIFFS' ADDITIONAL SUPPLEMENTAL MEMORANDUM
AND FINAL REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Pursuant to the Court's instruction at oral argument on February 5, 2004, Plaintiffs respond herein to several elements of Defendant's Supplemental Brief in Support of the Motion to Dismiss filed on April 23, 2004. See Transcript at p. 61.

**I.  The legislative history to the Military Claims Act [hereinafter "MCA"] indicates that the tort claims settlement authority delegated under the MCA has not been channeled with a sufficiently intelligible principle, absent the implied availability of <u>Scroggins</u> review.**

The 1945 and 1978 legislative histories illuminate the procedures used for the payment of meritorious claims.

**A.  The Spending Power and the Appropriations Clause after 1978.**

Prior to 1978, claims under $25,000 settled under sections 2733 and 2734 of title 10 as well as section 715 of title 32 were paid directly by the agency concerned out of available appropriations. If an award exceeded $25,000, the agency paid the first $25,000 and submitted the excess to the Congress for a specific appropriation. The practice became to submit the awards to the Congress

> through the Office of Management and Budget as appropriation requests. The appropriations were then included in supplemental appropriation acts and were made almost as a matter of routine.
>
> In early 1978, Congress eliminated the need for specific appropriations by expanding the permanent judgment appropriations, 31 U.S.C. sec. 1304 (former 31 U.S.C. sec. 724a), to cover amounts awarded under these three statutes in excess of the amounts payable from agency appropriations.

H.R. No. 98-407, Oct. 6, 1983, P.L. 98-564 in 1984 U.S.Code Cong. And Adm. News 4872, at 4876. (See Defendant's Exhibit B)

Before 1978, amounts exceeding the Secretary's claims settlement limit were granted via specific appropriation by Congress. Now that settlements are entirely approved via the automatic appropriation statute, 31 U.S.C. sec. 1304, no argument can be made that Congress is in any way performing an "Act of Legislative Grace" when it approves meritorious claims in excess of $100,000, the amount currently listed in 10 U.S.C. sec. 2733(d). Thus, the decisions of the agencies administering the MCA must be subject to Scroggins review. See Hata v. United States, 23 F.3d 230, 234 (9th Cir. 1994) (citing Lindahl v. United States, 470 U.S. 768, 778 (1985) and Scroggins v. United States, 397 F.2d 295, 297 (Ct. Cl 1968)). Otherwise, Congress' delegation of its spending power and tort settlement authority is unconstitutional, as having not been delegated with an "intelligible principle." Industrial Union Dept. AFL-CIO v. American Petroleum Institute, 448 U.S. 607, 686 (Rehnquist, J., concurring). See also State of South Dakota v. U.S. Department of Interior, 69 F.3d 878, 882 (8th Cir. 1995).

The settlement authority exercised by the agencies via the automatic appropriations statute in 31 U.S.C. sec. 1304 is not a lump sum appropriation to be distributed at the agency's

discretion, as was the case in <u>Lincoln v. Vigil</u>, 508 U.S. 182, 192 (1993).  Rather, under 31 U.S.C. sec. 1304, an agency decides that certain payments should be made, and then requests their appropriation.  As set forth in Plaintiffs' preceding brief, under the MCA, the agencies must have rules determining how they will award claims, in order that their delegated powers are channeled appropriately via consistent standards and procedures.  If the decisions to award money are made fairly, then the automatic appropriation of the amounts requested is a valid exercise of Congress' spending power.  If not, then the spending power exercised through the tort settlement authority delegated to the executive is unconstitutional.  In the present case, Plaintiffs should be appropriately compensated because the Air Force has already fairly compensated all of the other civilian passengers who were killed en route to Dubrovnik in the fatal crash at issue.  See Plaintiffs' Brief of 4/23/04, pp. 8-10.

      In addition, the standards and procedures for deciding which appropriations to request via 31 U.S.C. 1034 need to have been issued after notice and comment rulemaking.  The exemptions sets forth in 5 U.S.C. sec. 553(a)(1) for military functions, or in 5 U.S.C. 553(a)(2) for public property, loans, grants, benefits or contracts, do not apply to payments made under the MCA, because they are, as defined by 31 U.S.C. sec. 1304, either judgments, awards or compromise settlements.

      Furthermore, while it may be a discretionary agency decision to decide how much of an agency's budget should be its total settlement budget for claims to be paid in amounts less than $100,000, and, as such, this decision would not be subject to the notice and comment

requirements of 5 U.S.C. sec. 553, see Lincoln v. Vigil, 508 U.S. at 197-98 (citing Citizen's to Preserve Overton Park v. Volpe, 401 U.S. 402, 414 (1971)), the standards and procedures for making individual awards out of that discretionary amount must be consistent with the standards and procedures for awards made and then appropriated via 31 U.S.C. sec. 1304, lest the MCA be administered in an arbitrary and capricious way.  In the present case, based on the settlements paid to the other passengers, Plaintiffs' claims should each be settled for an amount over $100,000.  (See the document submitted under seal as  page 1 of the Appendix to Plaintiffs' 4/23/04 brief).  The procedures for making awards under $100,000, therefore, are not presently at issue.

      **B.**     **Revisions to the Precursor of the MCA in 1945.**

The 1945 legislative history from a statute related to the MCA supports Plaintiffs' interpretation of the "final and conclusive" provision of 10 U.S.C. sec. 2735.  Formerly, a decision of the Secretary of the War Department had to be reviewed and approved by the Auditor of the War Department, an officer of the Treasury.  See Newcomber v. United States, 51 Ct. Cl. 408, 423, 424-5 (1916).  After these amendments, the Secretary of the military was to have the final decision, absent fraud or mathematical mistake.  See Defendant's Exhibit D.  Administrative appeals would no longer be taken outside the War Department to the Comptroller of the Treasury, but would be conducted within the administrative agency, as provided.  This analysis accords with the analysis in Welch v. United States, 446 F. Supp. 75, 78 (D. Conn. 1978) (holding that the final and conclusive provision was meant to preclude *other agencies*

from overturning or adjusting awards made by the secretaries of the military departments). The "final and conclusive" language does not encompass reference to the role of courts at all, at least as to issues implicated by Scroggins, such as the proper application of law. If Congress did intend to foreclose such review, then such intention would violate the separation of powers doctrine. See Plaintiffs' Supplemental Brief of April 23, 2004, pp. 10-16.

**II.    5 U.S.C. sec. 8116(c), the exclusivity provision of the Federal Employees' Compensation Act [hereinafter FECA], does not preclude recovery under the MCA.**

Defendant cites many cases for the proposition that FECA-eligible claimants are excluded from applying under a federal tort liability act. These marshaled cases are not persuasive to the present case because the MCA is not a federal tort liability act. The MCA is not a waiver of sovereign immunity. See Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 193-194 (1983) (holding federal tort liability acts waive sovereign immunity). Under tort liability acts, such as the Jones Act, the Public Vessels Act, the Suits in Admiralty Act, the government puts itself in the position of an ordinary defendant. Eligibility for FECA means that one gives up "the right to sue the government." Lockheed, 460 U.S. at 194 (citing H.R. Rep. 729, 81st Cong., 1st Sess., 14-15 (1949); S. Rep. No. 836, 81st Cong., 1st Sess., 23 (1949)).

In oral argument and the motion to dismiss, Defendant has not disputed that under the MCA the government retains its sovereign immunity. In accord with this view, Air Force Captain Jules F. Miller, when serving as General Counsel in the Air Force's Litigation division, wrote that the Military Claims Act is not a waiver of sovereign immunity. J. Miller, "Liability

and Relief of Government Contractors for Injuries to Service Members," 104 MIL. L. REV. l, 14 (1984). Although Col. Wilcox asserted that the MCA was a federal tort liability act, when denying Plaintiffs' administrative appeal, no deference is accorded the position of an agency taken in anticipation of litigation. See United States v. Mead, 533 U.S. 218, 238 n.19 (2001).

Even final decisions of the Secretary of Labor regarding FECA coverage may be reviewed for violations of a clear statutory mandate or prohibition, or for a constitutional claim, as in the present case where Plaintiffs have presented separation of powers claims based on the misconstruction of a statute. See Staacke v. United States Secretary of Labor, 841 F.2d 278, 281 (9th Cir. 1988)). See also Kendall v. Brock, 689 F. Supp. 354, 363 (D.Vt. 1987) (reviewing FECA decision for constitutionality and finding no due process violation).

Despite language regarding the exclusiveness of the FECA as to a federal tort liability act or workmen's compensation act, courts have nonetheless allowed plaintiffs to pursue recovery under these acts. See, e.g., Wallace v. United States, 669 F.2d 947, 952-54 (4th Cir. 1984) (holding FECA did not preclude suit under Swine Flu Act); DeFord v. Secretary of Labor, 700 F.2d 281, 290-91 (6th Cir. 1983) (allowing plaintiff to pursue alternative administrative remedy under 42 U.S.C. sec. 5851); Miller v. Bolger, 802 F.2d 660, 663-66 (3rd Cir. 1986) (holding FECA recovery did not constitute election because Title VII recovery represented "equitable make-whole relief" to redress discrimination).[1]

---

[1] The Army regulation cited by Defendant's 4/26/04 brief at p. 12, 32 C.F.R. sec. 536.50(j)(2), demonstrates another instance of statutory overreaching, where the Army claims 5 U.S.C.

Additionally, FECA was not the exclusive remedy where the dual capacity doctrine was found to allow recovery under the Federal Tort Claims Act itself. See Wright v. United States, 717 F.2d 254, 260 (6th Cir. 1983) (holding treatment at government medical facility for ectopic pregnancy did not subsume medical malpractice injury to FECA coverage where treatment was not "created by an obligation or condition of employment"). In Elman v. United States, 173 F.3d 486, 491 (3rd Cir. 1999), the court held the dual capacity doctrine could apply to the government as the owner of the sidewalk upon which the plaintiff was injured. This doctrine, however, still was not adopted to allow recovery under a federal tort liability act, because FECA's exclusivity provision precludes election under a federal tort liability statute. Id. at 491-92.

Even so, extending FECA in many such cases is done remedially. For instance, Voteller v. United States, 904 F.2d 128, 130-31 (2d Cir. 1990) concerned the government's liability for malpractice by one of its doctors subsequent to an injury aggravated by the plaintiff's work. Given the remedial nature of the FECA, the court held that such injury should be compensable, well in line with the common tort theory that a tortfeasor is liable for all the subsequent foreseeable damage of the initial tort. The contrary view would create an intolerable result, given that, in many cases, should the government refuse to pay FECA benefits, the hapless injured employee would then also lose the medical malpractice case because she was not able to prove the negligence of the alleged tortfeasor. Thus, extensions of the FECA are in fact often

---

8116(c) is exclusive of "employee harassment claims for which other remedies are available (42 U.S.C. 2000e)," despite the fact that Miller v. Bolger is still good law in a majority of circuits. See Reidy v. Runyon, 971 F. Supp. 760, 770 (S.D.N.Y. 1997) (collecting cases).

remedial.  See DeFord v. Secretary of Labor, 700 F.2d 281, 290 (6th Cir. 1983) (noting liberal construction given to compensation acts is for the benefit of employees "so that liberal coverage under the Act may be provided.").

This liberality of coverage should not then be used as a device "for applying the FECA where it has no application or where stretching its application would be unjust."  Id.  In the present case, the FECA exclusivity provision should not be applied to exclude MCA coverage because the MCA is not a federal tort liability act.  Moreover, no remedial policy reason exists for extending the exclusivity provision of FECA in this case, because, to recover for injury or death due to noncombat activity, claimants need only establish causation.  See 32 C.F.R. sec. 842.49(b).

As to the MCA, which is neither a workers' compensation scheme, nor a federal tort liability act, Congress has not spoken regarding its exclusivity with the FECA.  Despite the fact that both the MCA and the FECA have been amended numerous times, the MCA being amended in 1956 particularly to exclude coverage under the FTCA,[2] the acts have never mentioned they are exclusive of or instead of one another.  Indeed, in light of the above analysis of the legislative history, the language of the statutes themselves, and the subsequent judicial interpretations of the exclusivity provisions, "exclusive" can often be interpreted to mean that one may not receive double compensation.  See, e.g., Elman, 173 F.3d at 490.

---

[2]Double recovery only is precluded:  a claimant is not restricted to choosing either the MCA or a federal tort liability act.  See Paalan v. United States, 51 Fed. Cl. 738, 750 (collecting cases).

The notion that the Department of Labor has decided to afford FECA coverage in this instance does not insulate the decision from Plaintiffs' challenge.  The Department of Labor's decision to award FECA does not by itself preclude Plaintiffs from applying elsewhere.  See Miller v. Bolger, 802 F.2d 660, 666 (3rd Cir. 1986) (holding that availability of Title VII recovery did not "usurp the Secretary of Labor's power under 5 U.S.C. sec. 8128(b) to make final and unreviewable determinations of FECA benefits").

Finally, those Plaintiffs who have accepted FECA payments should not be prevented from recovering under the MCA should it provide more adequate compensation, exclusive of any double recovery, because "mere acceptance" is not enough to constitute a binding election. Hoopes v. United States, 867 F. Supp. 349, 352 (E.D.N.C. 1994) (citing Martinez, 566 P.2d 895, 898 (4th Cir. 1977) (quoting 2A Larson, *Workmen's Compensation* sec. 67.22, at 12-52-53)).  A binding election requires "evidence of a [claimant's] conscious intent to elect the compensation remedy and to waive his other rights."  Id.

**III.     Conclusion.**

      Therefore, for the reasons stated above, the Plaintiffs respectfully request the Court to deny Defendant's motion to dismiss pursuant to Rule 12(b)(1) and (b)(6).

                                      THE PLAINTIFFS

                                      By  _____
                                            Ruth D. Weissman, Esq.
                                            Federal Bar # ct25441
                                            Koskoff, Koskoff & Bieder
                                            350 Fairfield Ave. 5th Floor
                                            Bridgeport, CT  06604
                                            Tel. (203) 336-4421
                                            Fax (203) 368-3244

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on this 20th day of May, 2004, to all counsel as follows:

Lauren M. Nash
U.S. Attorneys Office
157 Church Street
P.O. Box 1824
23rd Floor
New Haven, CT  06510

Justin T. Green
Kreindler & Kreindler
100 Park Avenue
New York, New York 10017
(212) 687-8181

_____
Ruth Daniella Weissman