UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KEVIN MURPHY, Administrator of the Estate of LAWRENCE MARTIN PAYNE, BARBARA GOREN and MICHAEL PAYNE, | : <br> : <br> : <br> : No. 3:03CV500 (MRK) |
| DARRELL W. DARLING and KAREN A. DARLING, Individually and as Co-Personal Representatives of the Estate of ADAM NOEL DARLING, deceased, | : <br> : <br> : <br> : |
| KEVIN MURPHY, Administrator of the Estate of GAIL E. DOBERT, | : <br> : |
| Plaintiffs, | : |
| v. | : |
| UNITED STATES OF AMERICA, DEPARTMENT OF THE AIR FORCE and COLONEL CHARLES H. WILCOX II, | : <br> : <br> : |
| Defendants. | : |



## MEMORANDUM OF DECISION

Plaintiffs, representatives of the estates of Commerce Department employees killed in a 1996 crash of a U.S. Air Force plane in Croatia, have brought this lawsuit seeking to compel the Department of the Air Force ("Air Force") to consider their damage claims under the Military Claims Act, 10 U.S.C. § 2733. Defendants have moved to dismiss this action, claiming that this Court lacks subject matter jurisdiction over Plaintiffs' claims.

1

This Court is deeply sympathetic to the plight of the families of these Commerce Department employees. Due to the negligence of their Government, they lost family members who were serving their country and the international community. That terrible tragedy has now been compounded by the Government's decision effectively to deny any compensation for those deaths, even though it has provided substantial compensation to other victims of the same accident. Regrettably, however, this Court lacks the power to assist these families. If they are to achieve the result they desire, they must take their case to Congress or back to the Air Force. Accordingly, the Court GRANTS Defendants' Motion to Dismiss [doc. #10].

## I.

There is no dispute about the underlying facts of this case. On April 3, 1996, a U.S. Air Force CT-43A, carrying a delegation from the U.S. Department of Commerce, including Secretary of Commerce Ron Brown, on a good will mission to Bosnia, crashed into the side of a mountain and exploded. Compl. [doc. #1], ¶¶ 9, 10. Commerce Department employees Lawrence Martin Payne, Adam Noel Darling, and Gail Dobert were part of the delegation, and they, along with everyone else on board, were killed in the crash. *Id.* ¶ 9. An Air Force investigation determined that the proximate cause of the crash was "a failure of command" within the Air Force, "aircrew error," and the pilots' use of "an improperly designed instrument approach procedure." *Id.* ¶ 11.

Plaintiffs are representatives of the estates of Mr. Payne, Mr. Darling, and Ms. Dobert. *Id.* ¶¶ 2-7. Following the crash, each of the Plaintiffs filed claims against the Air Force for recovery of death damages and loss of consortium pursuant to the Military Claims Act ("MCA"),

10 U.S.C. § 2733,[1] and its enabling regulations, 32 C.F.R. § 842.49(b). *Id.* ¶ 12. The Air Force considered Plaintiffs' claims under both the MCA and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(k). Def's Mem. in Supp. of Mot. to Dismiss [doc. #11], at 3.

The Air Force concluded that none of Plaintiffs could be paid under the FTCA because that statute specifically prohibits payment of claims arising in a foreign country. *Id.* Plaintiffs do not contest that ruling. The Air Force also denied Plaintiffs' MCA claims. The Air Force did so on the basis of an Air Force regulation, 32 C.F.R. § 842.50(r),[2] and Air Force Instruction

---

[1] The MCA provides, in pertinent part, as follows:

(a) Under such regulations as the Secretary concerned may prescribe, he, or, subject to appeal to him, the Judge Advocate General of an armed force under his jurisdiction, or the Chief Counsel of the Coast Guard, as appropriate, if designated by him, may settle, and pay in an amount not more than $100,000, a claim against the United States for--

(1) damage to or loss of real property, including damage or loss incident to use and occupancy;

(2) damage to or loss of personal property, including property bailed to the United States and including registered or insured mail damaged, lost, or destroyed by a criminal act while in the possession of the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be; or

(3) personal injury or death;
either caused by a civilian officer or employee of that department, or the Coast Guard, or a member of the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be, acting within the scope of his employment, or otherwise incident to noncombat activities of that department, or the Coast Guard.

10 U.S.C. § 2733(a).

[2] The Air Force regulation provides, in pertinent part, that a claim is not payable if it "[i]s for the personal injury or death of a government employee for whom benefits are provided by the FECA." 32 C.F.R. § 842.50(r).

3

51-501,[3] which provide that the exclusive remedy for Plaintiffs is the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8116(c).[4] Compl. [doc. #1], ¶¶ 15, 16. Under FECA, Plaintiffs will be paid an average of $1,000 each for the deaths. Pl's Mem. in Opp'n to Mot. to Dismiss [doc. #16], at 8. By contrast to the decisions regarding the Plaintiffs, the Air Force chose to allow claims under the MCA for other victims of the crash who were ineligible for FECA benefits, and, without disclosing the actual amounts awarded, this Court notes that the Air Force agreed to make sizeable payments under the MCA to the estates of the other victims.

---

[3] Air Force Instruction 51-501 provides, in pertinent part, as follows:

**3.6. Payable MCA Claims:** . . .

> 3.6.2. Noncombat Activity Claims. Claims caused by the noncombat activities of the US Armed Forces, whether or not such injuries or damages arose out of negligent or wrongful acts or omissions, unless an exclusion listed in paragraph **3.7.** applies.

**3.7. MCA Exclusions.** Settlement authorities cannot pay claims described in paragraph **3.6.** under the MCA if the claim: . . .

> 3.7.9. Is for the personal injury or death of any person for whom benefits are available under the Federal Employees' Compensation Act, 5 U.S.C. 8101, and following.

Air Force Instruction 51-501, ¶¶ 3.6.-3.7.

[4] FECA provides, in pertinent part, as follows:

> The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute. However, this subsection does not apply to a master or a member of a crew of a vessel.

5 U.S.C. § 8116(c).

4

It is the Air Force's denial of Plaintiffs' MCA claims that is the basis of this lawsuit. The August 18, 1998 letter from Col. Charles H. Wilcox, II, Director of Civil Law and Litigation for the Air Force, denying Plaintiffs' appeal within the Department of the Air Force thoroughly explains the Air Force's reasoning. The letter is worth quoting at length:

> As finally enacted, and as pertinent to the instant case, the plain-language of FECA's exclusive liability provision provides that where FECA will cover the injury at issue, no other recovery may be had by a Government employee, his representative or his next of kin, by way of an administrative proceeding under a Federal tort liability statute. By virtue of this language, a claimant under the MCA who seeks redress from an injury already covered by FECA, will be limited to FECA as the only means of recovery from the Government. This is because claims settlement under the MCA is an administrative proceeding, and the MCA itself is a Federal tort liability statute. As a tort liability statute, the MCA allocates losses arising out of human activities. It is considered "socially unreasonable" to require individuals to bear the burden of injury arising out of the noncombat activities of the armed forces. *See* Prosser and Keeton on the Law of Torts 6, (5th ed. 1984). *In the instant case, the burden of injury is covered by FECA, and FECA's exclusivity provision mandates non-payment of claims under the MCA where such claims are otherwise covered by FECA.*
>
> Almost since the inception of the Air Force fifty years ago, the Air Force has consistently utilized the MCA as a payment authority of last resort, to cover those situations where no other provision of law provides for payment by the Government. Such utilization has been incident to the MCA's status as an "authorization" statute, authorizing the payment of certain claims but not requiring payment of any claim. *See Schneider v. United States*, 27 F.3d 1327, 1333 (8th Cir. 1994), *cert denied*, 513 U.S. 1077 (1995); *Newman v. Soballe*, 871 F.2d 969, 973 (11th Cir. 1989); *Collins v. United States*, 67 F.3d 284, 286 (Fed. Cir. 1995); *Niedbala v. United States*, 37 Fed. Cl. 43, 46 (Ct. Cl. 1996). The non-usage of the MCA for claims covered by FECA has helped ensure a uniformity of benefits among all Government civilian employees. No matter the circumstances under which they may be injured or killed, all civil service employees receive the same benefits for their injury or death: FECA. To allow payment under the MCA in the instant case would not only violate FECA's exclusivity provision, but also permit a double recovery from the Government not otherwise generally provided to other civil service employees and their families facing similar losses.

Wilcox Letter, at 2-3 (emphasis added).

Plaintiffs exhausted administrative remedies by filing an unsuccessful appeal with the administrative appellate authority pursuant to Air Force Instruction 51-501 and 32 C.F.R. §

842.52(a). Compl. [doc. #1], ¶ 13. The appellate authority upheld the original decision denying Plaintiffs' claims on the basis of 32 C.F.R. § 842.50(r) and Air Force Instruction 51-501, ¶ 3.7.9. Def's Mem. in Supp. of Mot. to Dismiss [doc. #11], at 4.

Plaintiffs filed suit on March 20, 2003, arguing that Defendants' actions were arbitrary and capricious and otherwise contrary to law. At base, Plaintiffs assert that Air Force Regulation § 842.50(r) and Air Force Instruction 51-501, ¶ 3.7.9 -- which provide that the Air Force will not pay a claim under the MCA claim if the claimant is eligible for benefits under FECA -- rest on a misinterpretation of the FECA exclusivity provision, 5 U.S.C. § 8116(c). Pls' Supp. Mem. in Opp'n to Defs' Mot. to Dismiss [doc. #34], at 2. Plaintiffs seek a declaratory judgment invalidating 32 C.F.R. § 842.50 and Air Force Instruction 51-501 and a writ of mandamus compelling Defendants to consider Plaintiffs' MCA claim without regard to that regulation and instruction. Compl. [doc. #1], at 6. Defendants' Motion to Dismiss [doc. # 10] asserts that the Court lacks subject matter jurisdiction over the complaint under 10 U.S.C. § 2735, which provides that "[n]otwithstanding any other provision of law, the settlement of a claim under [the MCA] is final and conclusive."

## II.

"When considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). However, the Second Circuit has emphasized that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Thus, "the district court must look at the substance of the allegations to determine jurisdiction." *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012,

1019 (2d Cir. 1993).

### III.

The first question this Court must resolve is whether it has subject matter jurisdiction over Plaintiffs' claims. Mem. in Supp. of Mot. to Dismiss [doc. #11], at 1. Under 28 U.S.C. § 1331, district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." However, this general grant of federal question jurisdiction is subject to any statutes Congress may enact that preclude judicial review. *Califano v. Sanders*, 430 U.S. 99, 105 (1977) ("The obvious effect of [the 1976 modification to § 1331], subject only to preclusion-of-review statutes created or retained by Congress, is to confer jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate. We conclude that this amendment now largely undercuts the rationale for interpreting the APA as an independent jurisdictional provision."). Defendants claim that the MCA contains just such a preclusion of review provision.

The MCA authorizes the Secretary of each of the armed forces "[u]nder such regulations as the Secretary concerned may prescribe" to

> settle, and pay in an amount not more than $100,000, a claim against the United States for (1) damage to or loss of real property, including damage or loss incident to use and occupancy; (2) damage to or loss of personal property, including property bailed to the United States and including registered or insured mail damaged, lost, or destroyed by a criminal act while in the possession of the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be; or (3) personal injury or death; either caused by a civilian officer or employee of that department, or the Coast Guard, or a member of the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be, acting within the scope of his employment, or otherwise incident to noncombat activities of that department, or the Coast Guard.

10 U.S.C. § 2733(a); *see* note 1 *supra*.[5] A claim "may be allowed" under the MCA "only if" it is presented in writing within two years after the claim accrues, the claim is not covered by 10 U.S.C. § 2734 or 28 U.S.C. § 2672, the claim is not for personal injury or death "incident to [the claimant's] service," the personal injury or death was not caused by a negligent act of the claimant, and the claim is substantiated in accordance with the Secretary's regulations. 10 U.S.C. § 2733(b). Under the MCA, a decision to disallow a claim, such as the Air Force's decisions in this case, constitutes a "settlement" of a claim. 10 U.S.C. § 2731 ("In this chapter, 'settle' means [to] consider, ascertain, adjust, determine, and dispose of a claim, whether by full or partial allowance or by disallowance.").

The provision of the MCA that is the focus of the present motion states that "[n]otwithstanding any other provision of law, the settlement of a claim under section 2733, 2734, 2734a, 2734b, or 2737 of this title is final and conclusive." 10 U.S.C. § 2735. Defendants argue that § 2735 bars judicial review of the Secretary's decision to disallow Plaintiffs' claims. Plaintiffs counter that § 2735 was intended merely to preclude review of MCA decisions by other executive agencies or officials, and not by the courts.

The Court does not write on a blank slate in addressing this issue. In *Welch v. United States*, 446 F. Supp. 75 (D. Conn. 1978), the only reported case in this District and apparently in this Circuit addressing this issue, the former Chief Judge of this Court, T. Emmet Clarie, held that the MCA was intended only to preclude review of settlements by other federal executive agencies and officials and that § 2735 did not prohibit judicial review of the armed forces'

---

[5] If the Secretary concludes that a claim in excess of $100,000 is meritorious, the Secretary may pay the claimant $100,000 and report any meritorious amount in excess of $100,000 to the Secretary of the Treasury for payment. 10 U.S.C. § 2733(d).

decisions to allow or disallow MCA claims. *Id. at* 78. As Chief Judge Clarie explained, "Under this view, Congress, in enacting § 2735, was not precluding judicial review of agency construction and application of law, but only making the settlements of MCA claims final with respect to administrative review." *Id.*

*Welch* involved a sailor who was serving on active duty at the U.S. Naval Air Facility in Sigonella, Italy, when he "was struck by a United States Naval vehicle, which was negligently driven by a member of the United States Navy." *Id.* at 76. The sailor died of his injuries, and his estate filed a claim under the MCA. The Navy determined that the sailor was killed "incident to his service" and was thus barred from recovery under the MCA. As noted, Chief Judge Clarie decided that he had subject matter jurisdiction to review the Navy's disposition of the MCA claim, and he based that conclusion largely on his evaluation of the Senate Report which accompanied the 1972 amendments to the MCA: "[T]he legislative history suggests that the purpose of the 'final and conclusive' language in § 2735 is to prevent federal executive agencies and officials, such as the Comptroller General of the United States, from reviewing and possibly rejecting the settlements of MCA claims." *Id.* at 78. Nevertheless, Chief Judge Clarie concluded that the Secretary of the Navy had correctly applied the law in determining that the sailor's death was incident to service within the meaning of the MCA.

The reading of the MCA adopted in *Welch* has not proved persuasive to other courts that have considered the issue. In fact, it appears that courts considering this issue after *Welch* have unanimously rejected its holding and have concluded that § 2735 precludes judicial review of settlements of MCA claims. *See, e.g., Collins v. United States*, 67 F.3d 284 (Fed. Cir. 1995); *Schneider v. United States*, 27 F.3d 1327 (8th Cir. 1994); *Hata v. United States*, 23 F.3d 230 (9th

9

Cir. 1994); *Rodrigue v. United States*, 968 F.2d 1430 (1st Cir. 1992); *Broadnax v. United States Army*, 710 F.2d 865 (D.C. Cir. 1983); *Duncan v. West*, 965 F. Supp. 796 (E.D. Va. 1997); *Minns v. United States*, 974 F. Supp. 500 (D. Md. 1997).[6] As one judge has noted, "the overwhelming weight of judicial authority, indeed seven circuits and numerous district courts, persuasively holds that § 2735 rebuts the presumption in favor of judicial review of an adverse administrative decision." *Duncan*, 965 F. Supp. at 800. These courts have concluded that the "final and conclusive" language of § 2735 is sufficiently explicit to bar all judicial review of MCA settlements (whether allowances or disallowances), with the possible exception of constitutional claims. *See, e.g., Collins*, 67 F.3d at 287 ("We are convinced that when Congress included the finality provision in the Military Claims Act it intended that army claims would be considered and disposed of by the army and not by the courts."); *Schneider*, 27 F.3d at 1331-32 ("We conclude that the language of section 2735 clearly expresses Congress's intent to preclude judicial review and presents no ambiguity that would give rise to a presumption in favor of judicial review. . . . We now join our sister circuits in holding that section 2735 is unambiguous and that absent a constitutional claim the disallowance of a claim under the Military Claims Act is not subject to judicial review.").

Given that *Welch* has been uniformly disapproved, this Court believes that there is a need to revisit the issue afresh. In interpreting the language of the MCA, the Court is cognizant of the rule that judicial review is available unless clearly precluded. The Supreme Court has held that "only upon a showing of clear and convincing evidence of a contrary legislative intent should the

---

[6] Some of these courts were more explicit than others in rejecting the *Welch* approach. *See, e.g., Duncan*, 965 F. Supp. at 800 ("That interpretation [in *Welch*] of § 2735 is unpersuasive in light of the MCA's plain and unambiguous language to the contrary."); *Minns*, 974 F. Supp. at 508 ("[The *Welch* decision] must be considered an aberration and no longer good law.").

courts restrict access to judicial review," *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967) (internal quotations omitted), though courts will preclude review where Congress's intent to do so is clear. *Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 671 (1986) ("To preclude judicial review under this bill a statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to withhold it."). In making this evaluation, the Supreme Court has instructed courts to "look to such evidence as 'specific language or specific legislative history that is a reliable indicator of congressional intent,' or a specific congressional intent to preclude judicial review that is 'fairly discernible in the detail of the legislative scheme.' " *Traynor v. Turnage*, 485 U.S. 535, 542 (1988) (quoting *Bowen*, 476 U.S. at 673).

**The Statutory Language.** When examining a statute, courts must begin (and often must end) with the language of the statute itself. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) ("As in any case of statutory construction, our analysis begins with 'the language of the statute.' And where the statutory language provides a clear answer, it ends there as well.") (quoting *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992)); *United States v. Gayle*, 342 F.3d 89, 92 (2d Cir. 2003) ("Statutory construction begins with the plain text and, if that text is unambiguous, it usually ends there as well.").

As other courts have concluded, the language of § 2735 appears fairly clear and definitive. The statute provides: "Notwithstanding any other provision of law, the settlement of a claim under section 2733, 2734, 2734a, 2734b, or 2737 of this title is final and conclusive." 10 U.S.C. § 2735. On its face, the phrase "final and conclusive" suggests that Congress did not intend for settlement decisions to be reviewed. *See Hata*, 23 F.3d at 233 ("[T]he express language of the MCA provides clear and convincing evidence of legislative intent."); *Duncan*,

11

965 F. Supp. at 800 ("[T]he provision's plain and unambiguous language makes unmistakably clear that the Army's determination is final in all circumstances."). Furthermore, if full review were available, the addition of the phase "notwithstanding any other provision of law" would be meaningless. Yet courts are required to construe statutes so as to give meaning to each portion of a statutory provision. *See, e.g., Connecticut v. United States Dep't of the Interior*, 228 F.3d 82, 88 (2d Cir. 2000) ("[courts] are required to 'disfavor interpretations of statutes that would render language superfluous.' ") (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992)). The Eighth Circuit emphasized this point in *Schneider*:

> [S]ection 2735 is clear on its face. The statute does not merely say that the agency decision is "final," or "final and conclusive." Rather, the statute states that the Secretary's decision is "final and conclusive" "notwithstanding any other provision of law." To interpret the section as precluding only further administrative review would be to render meaningless the phrase "notwithstanding any other provision of law."

27 F.3d at 1331 (internal citations omitted). Accordingly, many courts have suggested that "the MCA could scarcely be clearer on its face." *Duncan*, 965 F. Supp. at 800.

In fact, however, the MCA could be a good deal clearer, as the provision in FECA that precludes judicial review demonstrates. Section 8128(b) of FECA provides as follows:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is – *(1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.*

5 U.S.C. § 8128(b) (emphasis added). This door-closing language of FECA encompasses more than finality and conclusiveness; it goes one step further and explicitly bars judicial review. The Supreme Court has described the language of § 8128(b) as the model preclusion-of-review statute and as exemplifying the kind of language Congress uses when it "intends to bar judicial review altogether." *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 779-80 & n. 13 (1985); *see*

*also Staacke v. United States Sec. of Labor*, 841 F.2d 278, 281 (9th Cir. 1988) ("Significantly, the Supreme Court has singled out section 8128(b) as a model preclusion-of-review statute.").

FECA's preclusion-of-review language is important not only because it is much more explicit than the MCA, but also because a number of the circuits have held that despite the seeming clarity of § 8128(b), "an implicit and narrow exception to the bar on judicial review exists for claims that the agency exceeded the scope of its delegated authority or violated a clear statutory mandate." *Hanauer v. Reich*, 82 F.3d 1304, 1307 (4th Cir. 1996). These opinions rely on a host of Supreme Court opinions in other contexts that have held that even under statutes precluding judicial review of agency action, district courts "surely" have jurisdiction "to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act" though not "to 'review,' . . . a decision of the Board made within its jurisdiction." *Leedom v. Kyne*, 358 U.S. 184, 188 (1958); *see also Oestereich v. Selective Serv. Sys. Local Bd. No. 11*, 393 U.S. 233, 238-39 (1968) ("Since the exemption granted divinity students is plain and unequivocal and in no way contested here, and since the scope of the statutory delinquency concept is not broad enough to sustain a revocation of what Congress has granted as a statutory right, or sufficiently buttressed by legislative standards, we conclude that pre-induction judicial review is not precluded in cases of this type.").

Thus, the Fourth Circuit in *Hanauer* said this about FECA's preclusion-of-review provision: "[W]hen a claimant would have no other opportunity for meaningful and adequate judicial review of a claim that an agency exceeded its statutory authority, a district court may still consider such a claim, even if a statute precludes judicial review in general." *Hanauer*, 82 F.3d at 1309. The Ninth Circuit in *Staacke* held similarly: "Even where the statutory provision absolutely bars judicial review, however, there are two situations where review is nonetheless

13

available: First, courts maintain jurisdiction to consider constitutional claims, and, second, jurisdiction exists where defendant is charged with violating a clear statutory mandate or prohibition." *Staacke*, 841 F.2d at 281 (internal citations omitted). And the Eighth Circuit in *Brumley v. United States Dep't of Labor*, 28 F.3d 746 (8th Cir. 1994), stated that the "plain meaning of [§ 8128] shows Congressional intent 'to bar judicial review altogether.' However, it has been held that the preclusion-of-review statute cannot serve to immunize [the Department of Labor] from judicial review when its actions violate the Constitution or a clear statutory mandate." *Id.* at 747 (internal citations omitted).

The Second Circuit has not directly addressed the scope of judicial review available under FECA, but that court has approvingly noted in *dicta* that

> [m]any sister circuits have held that § 8128(b) lacks preclusive effect on an employee's suit raising a constitutional challenge to an [Office of Workers Compensation Programs ("OWCP")] denial of FECA benefits. Additionally, some circuits have held that § 8128(b) does not bar jurisdiction even over a direct appeal by an employee denied benefits, so long as the employee argues in federal court that OWCP violated a clear statutory mandate under FECA.

*United States v. Sforza*, 326 F.3d 107, 111-12 (2d Cir. 2003).

To be sure, not all circuits follow the approach of the Fourth, Eighth and Ninth Circuits to FECA. The First and Third Circuits have concluded that "there is nothing in the legislative history which would permit a departure from the unequivocal language of § 8128(b) to review such an asserted violation [of a clear statutory mandate], and that the decisions of our court preclude such a departure." *McDougal-Saddler v. Herman*, 184 F.3d 207, 212 (3d Cir. 1999); *see also Paluca v. Secretary of Labor*, 813 F.2d 524, 525-27 (1st Cir. 1987) ("We conclude that § 8128(b) does preclude judicial review of the merits of policy or rulemaking decisions on statutory grounds, but does not impede the adjudication by the courts of constitutional issues

14

such as those raised by plaintiffs in this case" as that reading "would create the absurd result of permitting a court to strike down a policy statement of the Secretary, notwithstanding the court's inability to review any subsequent individual adjudications for conformance with its policy decision"). Since FECA's review provision is not before this Court, it need not resolve this issue and side with one group of circuits or the other. The point of this review of case law under § 8128(b) is merely to demonstrate that even when Congress uses far more explicit language in precluding review than it used in § 2735 of the MCA, many courts (though not all) still find implicit exceptions for judicial review of constitutional claims and alleged violations of clear statutory mandates.

Case law under FECA is not anomalous. Courts have adopted a similar approach when confronted with other statutes containing broad preclusion language similar to FECA and far more explicit than that contained in the MCA. For example, the Export Administration Act of 1979, 50 U.S.C. § 2401 *et seq.* ("EAA"), contains a provision stating that the "Secretary's written decision shall be final *and is not subject to judicial review.*" 50 U.S.C. § 2412(e) (emphasis added). Nonetheless, the Ninth and D.C. Circuits have each allowed for some judicial review of decisions under the EAA:

> [C]ertain limited types of judicial review are available under the EAA despite the Act's seemingly absolute preclusion of review. First, colorable constitutional claims may be reviewed by the courts even when a statute otherwise precludes judicial review.... Second, we believe that claims that the Secretary acted in excess of his delegated authority under the EAA are also reviewable.

*United States v. Bozarov*, 974 F.2d 1037, 1044-45 (9th Cir. 1992); *see also Dart v. United States*, 848 F.2d 217, 225 (D.C. Cir. 1988) ("We believe the EAA's finality clause permits review of agency actions that exceed statutory authority.").

15

Similarly, Congress granted the Office of Personnel Management authority to make decisions regarding questions of disability and dependency in the Civil Service retirement context and provided that "the decisions of the Office concerning these matters are final and conclusive and *are not subject to review*." 5 U.S.C. § 8347(c) (emphasis added). Nonetheless, the Supreme Court in *Lindahl v. Office of Personnel Mgmt.*, 470 U.S. 768 (1985), held that "while the factual underpinnings of § 8347 disability determinations may not be judicially reviewed, such review is available to determine whether 'there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination.'" *Id.* at 791 (quoting *Scroggins v. United States*, 397 F.2d 295, 297 (Ct. Cl. 1968)) (internal citations and quotation marks omitted).

Analogously, § 7429 of the Internal Revenue Code provides that "any determination made by a district court under this section shall be final and conclusive *and shall not be reviewed by any other court*." 26 U.S.C. § 7429(f) (emphasis added). Yet, the Seventh Circuit has ruled that

> although a district court's decision on the merits of the making and amount of the assessment is unreviewable, an appellate court does have jurisdiction to determine whether the district court acted within the scope of its statutory authority in dismissing a § 7429 action on procedural grounds. Thus, a district court's unauthorized acts are subject to review; its authorized, yet erroneous, acts are not.

*Hiley v. United States*, 807 F.2d 623, 627-28 (7th Cir. 1986); *see also Schuster v. United States*, 765 F.2d 1047, 1049 (11th Cir. 1985) ("where the appeal is based on procedural error – i.e., that the district court acted outside its authority, rather than acting erroneously within its authority – this court will review the decision to determine whether such error occurred."). Notably, the Second Circuit has followed the Seventh Circuit's approach to the scope of review available under § 7429(f) – a provision that, unlike the MCA, explicitly bars "review[] by any other

16

court." *Wapnick v. United States*, 112 F.3d 74, 74 (2d Cir. 1997) ("Following other circuits, we hold that this limitation applies only to decisions on the merits regarding the jeopardy assessment in question.") (citing *Hiley* and *Schuster*).

As noted previously, several post-*Welch* decisions have held that the "final and conclusive" language of § 2735 clearly and unmistakably bars *all* judicial review. Those holdings seem open to some question, however, in light of the fact that so many courts have allowed at least some judicial review even when confronted with review-precluding language that is far more explicit than that of § 2735.

**The MCA's Structure.** The structure of a statute as a whole can aid in the interpretation of particular statutory language. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."); *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003) ("The text's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute."); *Auburn Housing Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir. 2002) ("The meaning of a particular section in a statute can be understood in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another. In other words, the preferred meaning of a statutory provision is one that is consonant with the rest of the statute.").

The MCA broadly provides that the relevant Secretaries "may settle, and pay" claims "under such regulations as the Secretary concerned may prescribe." 10 U.S.C. § 2735(a). Because of sovereign immunity, the Government ordinarily cannot be sued unless it explicitly

authorizes such a suit. "It is well established that in any suit in which the United States is a defendant, a waiver of sovereign immunity with respect to the claim asserted is a prerequisite to subject matter jurisdiction." *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 374 (2d Cir. 1999). The MCA does not waive the Government's sovereign immunity, but instead merely authorizes the Secretary to settle claims (including disallowing claims) at his or her discretion and under such regulations as the Secretary may prescribe. As the Federal Circuit has noted: "We note that section 2733(a) is permissive and not mandatory. It provides that the Secretary 'may' settle and pay claims. Action by him in settling and paying claims is entirely discretionary and not mandatory." *Collins*, 67 F.3d at 286. Judicial review of a Secretary's decision to pay or not pay some or all of a claim would seem inconsistent with the broad discretion that Congress sought to confer on the Secretaries of the Armed Forces in the MCA.

The broad scope of that discretion is further confirmed by Congress's choice of the word "settle" to describe the Secretaries' resolution of claims and the fact that Congress imposed few strictures in the statute itself. Ordinarily, the word "settle" connotes voluntary action, not a mandatory dictate. And while § 2733(b) states that claims may be allowed "only if" certain criteria are met, 10 U.S.C. § 2733 (b), no provision of the MCA *requires* the payment of any particular claim. Thus, the structure of the MCA suggests that if any judicial review is permissible in the face of the language of § 2735, the scope of that review should be quite narrow.

**The MCA's Legislative History.** The Court understands all too well that using legislative history to construe a statute is often akin to chasing a mirage. That said, authoritative legislative history on occasion can confirm an interpretation that is otherwise grounded in the text and structure of the act itself. *See, e.g., Chemical Mfrs. Ass'n v. Natural Resources Defense*

18

*Council, Inc.*, 470 U.S. 116, 140 (1985) (interpreting the plain meaning of statutory text, then stating that the statute's legislative history "demonstrates that Congress meant what it said, and it evidences a clear congressional intent."); *Gayle*, 342 F.3d at 93-94 ("Resort to authoritative legislative history may be justified where there is an open question as to the meaning of a word or phrase in a statute, or where a statute is silent on an issue of fundamental importance to its correct application. As a general matter, we may consider reliable legislative history where . . . the statute is susceptible to divergent understandings and, equally important, where there exists authoritative legislative history that assists in discerning what Congress actually meant."). Moreover, the Supreme Court has expressly instructed courts to look to "specific legislative history that is a reliable indicator of congressional intent" in deciding whether Congress has sought to restrict access to judicial review. *Bowen*, 476 U.S. at 673; *accord Traynor*, 485 U.S. at 542. Therefore, it is appropriate to canvass the legislative history of the MCA.

Though changed and reenacted often over the years, the MCA finds its source in the Act of March 3, 1885, which allowed "for the settlement of the claims of officers and enlisted men of the Army for loss of private property destroyed in the military service of the United States" (hereinafter "Act of March 3, 1885"). Act of March 3, 1885, ch. 335, 23 Stat. 350, 350 (1885). The Act of March 3, 1885 provided as follows:

> That the proper accounting officers of the Treasury be, and they are hereby, authorized and directed to examine into, ascertain, and determine the value of the private property belonging to officers and enlisted men in the military service of the United States which has been, or may hereafter be, lost or destroyed in the military service, under the following circumstances: . . . And the amount of such loss so ascertained and determined shall be paid out of any money in the Treasury not otherwise appropriated, and shall be in full for all such loss or damage.

*Id.*

19

In language that is relevant to the inquiry before this Court, the Act of March 3, 1885 further provided "that any claim which shall be presented and acted on under authority of this act shall be held as finally determined, and shall never thereafter be reopened or considered." *Id.* In 1919, the Supreme Court had occasion to construe this language and held that it barred judicial review of determinations made under the Act. *United States v. Babcock*, 250 U.S. 328, 330-31 (1919). Writing for a unanimous Court, Justice Brandeis concluded that "[t]hese words express clearly the intention to confer upon the Treasury Department exclusive jurisdiction and to make its decision final." *Id.* The Court further held that "the United States, when it creates rights in individuals against itself, is under no obligation to provide a remedy through the courts," and that "where a statute creates a right and provides a special remedy, that remedy is exclusive." *Id.*

In drafting later iterations of the MCA, Congress is presumed to have been aware of *Babcock*'s holding. As the Supreme Court explained in *Lindahl*:

> Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change. So too, where, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute.

*Lindahl*, 470 U.S. at 783 n.15 (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n. 8 (1975); *NLRB v. Gullett Gin Co.*, 340 U.S. 361, 366 (1951); *National Lead Co. v. United States*, 252 U.S. 140, 147 (1920); 2A C. Sands, *Sutherland on Statutory Construction* § 49.09 (4th ed. 1973)). Nothing in the language of the MCA or its legislative history suggests that when Congress enacted the modern successors to the Act of March 3, 1885, Congress sought to override or otherwise depart from the Supreme Court's decision in *Babcock*.

20