The version of the MCA we have today was enacted in 1945 as the Military Personnel Claims Act. *See* Military Personnel Claims Act of 1945, 59 Stat. 225, 225-26 (May 29, 1945). The 1945 version of the statute stated that: "Any such settlement made by the Secretary of War, or his designee, under the authority of this Act and such regulations as he may prescribe hereunder, shall be final and conclusive for all purposes, notwithstanding any other provision of law to the contrary." 59 Stat. at 225. The House Report on the statute states that the

> purpose of the proposed legislation is to provide a single, clear, definite, and workable statute for the settlement of claims of military personnel and civilian employees of the War Department or of the Army for the loss of their personal property incurred while in the service and to repeal certain statutes which have been found to be obsolete or unworkable and not appropriate to present conditions.

H.R. Rep. No. 79-237, at 1 (1945). The House Report also incorporates a report by the War Department, which includes a letter from Acting Secretary of War Robert P. Patterson describing the above-noted preclusion clause. The House Report quotes Secretary Patterson's letter as follows:

> Attention is invited to the provision that any settlement made by the Secretary of War, or his designee, under the authority of the proposed legislation and such regulations as he may prescribe thereunder, will be final and conclusive for all purposes, notwithstanding any other provision of law to the contrary. *In the absence of fraud or mistake in mathematical calculations, the findings of fact, conclusions of law, and the decision of the Secretary of War, or his designee, upon the merits of any claim, would not be subject to review by any other administrative or accounting officer, employee, or agent of the United States.*

*Id.* at 4 (emphasis added). The House Report repeats this same language verbatim in a portion of the incorporated report by the War Department entitled "The Purpose of the Proposed Legislation." *Id.* at 6.

The House Report describing the origin of the language ultimately found in § 2735 thus suggests that review would be permitted in cases of "fraud or mistake in mathematical

21

calculation."[7] More importantly, the stated purpose of § 2735 is said to be to prevent further administrative review, with no mention of judicial review.

In 1956, the statute was amended to include the form of § 2735 we have today. The phrase "final and conclusive for all purposes" became "final and conclusive." 10 U.S.C. § 2735. The Statutory Notes in the United States Code state that the words "for all purposes" were omitted as surplusage. A House Report also states that the new language should be read no differently from how it had been read before the change. House of Representatives Comm. on the Judiciary, 84th Cong., Report to accompany H.R. 7049, *reprinted in* 1956 U.S.C.C.A.N. 4613, 4620 (cited in *Rodrigue*, 968 F.2d at 1433).

The MCA was amended again in 1964, extending "to other agencies of the Government the authority now possessed by the military departments, . . . with respect to the settlement of claims." S. Rep. No. 1423, at 3408 (1964). The Senate Report on the 1964 amendments

---

[7] The Government asserts that this statement from the House Report only shows that Congress contemplated an internal administrative review for fraud or mathematical error (not judicial review), and the Government points out that such review is available under Air Force regulations, which provide:
> (a) A claimant may appeal the final denial of the claim. The claimant sends the request, in writing, to the settlement authority within a reasonable time following the final denial. Sixty days is considered a reasonable time, but the settlement authority may waive the time limit for good cause.
>
> (b) Upon receipt of the appeal, the original settlement authority reviews the appeal.
>
> (c) Where the settlement authority does not reach a final agreement on an appealed claim, he or she sends the entire claim file to the next higher settlement authority, who is the appellate authority for that claim.
>
> (d) The decision of the appellate authority is the final administrative action on the claim.

32 C.F.R. § 842.52. As noted *supra*, Plaintiffs availed themselves of this internal review, process, which resulted in the denial letter from Colonel Wilcox quoted earlier.

22

includes a letter from the Assistant Secretary of the Interior to the Judiciary Committee recommending passage of the bill and noting that "[n]o provision is made for appeal to the courts. On the contrary, the bill provides that the administrative settlement of a claim is final and conclusive." *Id.* at 3414-15.

The statute was further amended in 1972, adding to § 2735 references to §§ 2734a, 2734b, and 2737. *See* S. Rep. No. 92-1056, at 1 (Aug. 16, 1972). The Senate Report for the 1972 amendments states in the section entitled "Purpose of the Legislation" that "the proposed legislation would be consistent with the cited general policy of preventing other agencies of the Government from reviewing and reversing actions on claim settlements of agencies specifically authorized to settle and pay certain claims." *Id.* at 4. Again, Congress's emphasis appears to be on precluding other administrative agencies from reviewing MCA settlements.

**The Scope of Judicial Review Available Under the MCA.** In summary, then, the statutory language, judicial precedent under the MCA and other similar statutes, the structure of the MCA, and its legislative history provide some mixed directions. The language "final and conclusive" and "notwithstanding any other provision of law" seem clear enough, and on their face would suggest that all judicial review is foreclosed. Yet, many courts have construed statutes (like FECA) that have far more explicit door-closing language than the MCA to allow for at least some, albeit limited, judicial review. The structure of the MCA suggests that Congress granted the Secretaries broad discretion in determining how to settle claims and, as Justice Brandeis noted long ago in *Babcock*, judicial review of such settlements would seem inconsistent with that broad discretion. Yet, the legislative history of the modern-day versions of § 2735 suggests that its drafters may well have been principally concerned about precluding

23

review by other executive branch officials and agencies, and that, at the very least, this provision was not drafted with the primary intent of precluding *all* judicial review.

Faced with the foregoing evidence of Congress's intent and without definitive guidance from the Second Circuit, the Court concludes that the best approach is to construe the MCA in the same way that a majority of courts have construed FECA -- that is, to hold that the MCA precludes all judicial review except for constitutional claims and claims involving violations of a clear statutory mandate contained in the MCA itself. In this regard, the Court notes that § 2735, the MCA's preclusion of review section, was enacted by the same Congress that enacted FECA's review precluding provision. *Compare* Federal Employee Compensation Act, ch. 328, 59 Stat. 503, 504 (July 28, 1945) *with* Military Personnel Claims Act of 1945, ch. 135, 59 Stat. 225, 225-26 (May 29, 1945). In those circumstances, it would be odd indeed to construe the MCA's less clear language as barring more judicial review than FECA's explicit ban on judicial review.

Construing the MCA to allow judicial review of claimed constitutional violations should not be controversial. As noted earlier, a number of courts have stated in *dicta* that § 2735 permits review of constitutional claims, and courts have unanimously held that judicial review of constitutional claims is available under FECA in the teeth of rather explicit statutory language barring judicial review. As the Seventh Circuit has observed, "[t]he circuits are in agreement: door-closing statutes do not, unless Congress expressly provides, close the door to constitutional claims, provided that the claim is colorable and the claimant is seeking only a new hearing or other process rather than a direct award of money by the district court." *Czerkies v. United States Dep't of Labor*, 73 F.3d 1435, 1439 (7th Cir. 1996) (en banc). The Supreme Court made this same point in the context of a review precluding provision in the National Security Act:

24

> We do not think § 102(c) may be read to exclude review of constitutional claims. We emphasized in *Johnson v. Robison*, 415 U.S. 361 (1974), that where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear. *Id.* at 373-74. In *Weinberger v. Salfi*, 422 U.S. 749 (1975), we reaffirmed that view. We require this heightened showing in part to avoid the "serious constitutional question" that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.

*Webster v. Doe*, 486 U.S. 592, 603 (1988); *see also Czerkies*, 73 F.3d at 1441 ("Each statute must stand on its own two feet, but each is informed by the presumption already mentioned against slamming the judicial door in the face of constitutional claims."). This much is clear from the language of § 2735: it certainly does not explicitly bar judicial review of constitutional claims. The Court thus concludes that § 2735 does not bar review constitutional claims and accordingly, that the Court has subject matter jurisdiction to consider Plaintiffs' constitutional claims.

Construing § 2735 to permit judicial review of claimed violations of a clear statutory mandate is a more controversial proposition. Except for *Welch*, none of the courts to consider the MCA has so held, and as noted earlier, courts construing FECA have somewhat split on this question, though the majority of circuits considering the issue has found such review to be available under FECA.

The rationale for allowing judicial review in the context of a violation of a clear statutory mandate stems in part from the Supreme Court's decision in *Oestereich v. Selective Serv. Sys. Local Bd. No. 11*, 393 U.S. 233 (1968), in which the Court construed § 10(b)(3) of the Military Selective Service Act of 1967. Section 10(b)(3) provided as follows:

> No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form:

25

> Provided, That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant.

81 Stat. 100, 104 (1967) (cited in *Oestereich*, 393 U.S. at 235). Reviewing that language in *Oestereich*, the Supreme Court held as follows:

> The case we decide today involves a clear departure by the Board from its statutory mandate. To hold that a person deprived of his statutory exemption in such a blatantly lawless manner must either be inducted and raise his protest through habeas corpus or defy induction and defend his refusal in a criminal prosecution is to construe the Act with unnecessary harshness. . . . Our construction leaves § 10 (b)(3) unimpaired in the normal operations of the Act.

*Id.* at 237-38. Therefore, contrary to the language of §10(b)(3), the Court concluded that "judicial review is not precluded in cases of this type." *Id.* at 239.

The Supreme Court took a similar approach in *Leedom v. Kyne*, 358 U.S. 184 (1958), in which the National Labor Relations Board certified a collective bargaining unit, but the certification was improper under the National Labor Relations Act. *Id.* at 185-86. The Supreme Court stated that even though an appeal from such a certification determination would ordinary not be subject to judicial review, the case presented "an attempted exercise of power that had been specifically withheld. It deprived the professional employees of a 'right' assured to them by Congress. Surely, in these circumstances, a Federal District Court has jurisdiction of an original suit to prevent deprivation of a right so given." *Id.* at 189. The Court thus found jurisdiction "to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act." *Id.* at 188.

More recently, the Supreme Court distinguished *Kyne* in reaching a contrary conclusion in *Board of Governors v. MCorp Financial, Inc.*, 502 U.S. 32 (1991). In that case, the Supreme

26

Court was called upon to construe a provision of the Financial Institutions Supervisory Act of 1966 ("FISA"), which provided as follows:

> Except as otherwise provided in this section no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order.

12 U.S.C. § 1818(I)(1). The Court reversed a Fifth Circuit ruling that allowed for judicial review in a case alleging a violation of clear statutory authority. *MCorp*, 502 U.S. at 44-45. The Supreme Court distinguished *MCorp* from *Kyne* in two ways. First, in *Kyne*, the plaintiff would have had no opportunity to vindicate its statutory rights without recourse to the courts, whereas in *MCorp*, FISA "expressly provide[d] MCorp with a meaningful and adequate opportunity for judicial review of the validity of the source of strength regulation." *Id.* at 43. Second, FISA is considerably more explicit in precluding judicial review than the statute involved in *Kyne*, which only implied preclusion of review by silence. *Id.* at 44. Accordingly, the Supreme Court held that FISA "provides us with clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the Board's ongoing administrative proceedings." *Id.*

As noted earlier, in *Hanauer v. Reich, supra*, the Fourth Circuit held that "an implicit and narrow exception to the bar on judicial review exists for claims that the agency exceeded the scope of its delegated authority or violated a clear statutory mandate." *Hanauer*, 82 F.3d at 1307. In commenting on *MCorp*'s impact on this "implicit and narrow exception," the Fourth Circuit observed as follows:

> Like the statutory scheme at issue in *MCorp*, § 8128(b) contains an unambiguous preclusion of judicial review. But unlike the statutory scheme at issue in *MCorp*, the statutory scheme at issue here does not provide for judicial review of a final order of the Secretary. We consider this distinction to be critical. Acceptance of

27

> the Secretary's argument that § 8128(b) precludes district courts from considering claims that the Secretary violated a clear statutory mandate would, in the words of the Supreme Court, "wholly deprive claimants of a meaningful and adequate means of vindicating [their] statutory rights." *See MCorp*, 502 U.S. at 43. Mindful that we "cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers," *Kyne*, 358 U.S. at 190, we conclude that *MCorp* does not compel us to hold that § 8128(b) precludes district courts from considering claims that the Secretary violated a clear statutory mandate.

*Id.* at 1308-09; *see also Brumley*, 28 F.3d at 747; *Staacke*, 841 F.2d at 281. The Court finds the Fourth Circuit's analysis of FECA directly applicable to the MCA. In fact, at oral argument the Government appeared to concede that §2735 does not preclude review of a violation of a clear statutory mandate. Transcript [doc. #28], at 14 ("I think it's a fair reading of the judicial precedent that it could be reviewed as a separate violation of the statutory authority, apart from a constitutional claim. I think that's a fair reading of the case law.").

To construe § 2735 as precluding review of claims founded on a violation of a clear statutory mandate contained in the MCA would, in the words of the Supreme Court in *MCorp*, "wholly deprive claimants of a meaningful and adequate means of vindicating [their] statutory rights." 502 U.S. at 42. Moreover, the review precluding language of the MCA is far less explicit than that involved in *MCorp*. Indeed, in *Lindahl*, the Supreme Court stated that "when Congress intends to bar judicial review altogether, it typically employs language far more unambiguous and comprehensive than that set forth in § 8347," a statute which provided that "the decisions of the Office concerning these matters are final and conclusive and are not subject to review." 5 U.S.C. § 8347(c); *Lindahl*, 470 U.S. at 779-80. The "final and conclusive" language of § 8347 is nearly identical to that of § 2735, except that § 8347 – unlike § 2735 – also contains the injunction that the Office's decisions "are not subject to review." Finally, as is evident from the discussion of Plaintiffs' claims that follows, permitting court review of claimed

28

violations of a clear statutory mandate will not be unduly disruptive or intrusive since the MCA itself contains few clear statutory mandates.

Plaintiffs argue that, in addition to review for constitutional claims and violations of a clear statutory mandate, § 2735 should also be construed to allow for "some like error 'going to the heart of the administrative determination,' " a form of judicial review that has come to be known as "*Scroggins* review." *See Lindahl*, 470 U.S. at 791 (quoting *Scroggins v. United States*, 397 F.2d 295, 297 (Ct. Cl. 1968)); *see* Pls' Supp. Mem. in Opp'n to Defs' Mot. to Dismiss [doc. #34], at 10-12. *Scroggins* and *Lindahl* both involved challenges to disability classification decisions by the Federal Office of Personnel Management. The statute in question – 5 U.S.C. § 8347 – was amended in 1980, twelve years after the *Scroggins* decision. The Supreme Court concluded in *Lindahl* that

> the fact that Congress amended § 8347 in 1980 without explicitly repealing the established *Scroggins* doctrine itself gives rise to a presumption that Congress intended to embody *Scroggins* in the amended version of § 8347. We need not rely on the bare force of this presumption here, however, because the legislative history of the 1980 amendment demonstrates that Congress was indeed well aware of the *Scroggins* standard, amended § 8347 on its understanding that *Scroggins* applied to judicial review of disability retirement decisions generally, and intended that *Scroggins* review continue except to the extent augmented by the more exacting standards of § 8347(d)(2).

*Lindahl*, 470 U.S. at 782-83.

Given the specificity of the basis for *Lindahl*'s finding that *Scroggins* review was available in the context of § 8347(d)(2), the absence of any similar legislative history under the MCA, the absence of any other similar context in which courts have found *Scroggins* review to be available, and the broad discretion accorded the Secretaries of the Armed Forces in the MCA,

29

the Court declines Plaintiffs' invitation to extend judicial review under the MCA to errors "going to the heart of the administrative determination."[8]

Accordingly, the Court holds that under 10 U.S.C. § 2735, the Court lacks subject matter jurisdiction to review the Secretary's decision to deny Plaintiffs' MCA claims, except for Plaintiffs' claims that Defendants violated Plaintiffs' constitutional rights or violated a clear statutory mandate contained in the MCA itself.

## IV.

Plaintiffs argue that two separate constitutional violations justify overturning the Secretary's decision. First, Plaintiffs assert that the Secretary's misinterpretation of FECA's exclusivity provision violates separation of powers principles. Pls' Supp. Mem. in Opp'n to Defs' Mot. to Dismiss [doc. #34], at 1-7. Second, Plaintiffs allege that the payment of MCA benefits to others killed in the crash gives Plaintiffs a property interest in MCA benefits and that the Secretary's denial of those benefits constitutes a denial of due process. *Id.* at 8-10. The Court rejects both arguments. The Secretary did not violate the Constitution as Plaintiffs allege.

**Separation of Powers.** As noted earlier, an Air Force Regulation, 32 C.F.R. § 842.50(r),[9] provides that claims for personal injury or death of a government employee for whom

---

[8] Plaintiffs are correct that *Broadnax* did raise the possibility of *Scroggins* review in the MCA context, but the language in *Broadnax* is equivocal and is *dicta*, and no subsequent court has adopted it. *See Broadnax,* 710 F.2d at 867 ("Although § 2735 may well permit some limited review, for example where there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination, such review is not implicated under the circumstances of this case.") (internal citations and quotations omitted). Nor will this Court do so.

[9] The regulation provides, in pertinent part, as follows:

Exclusions listed in § 842.50 (a) through (l) of this part, are based on the wording of 28 U.S.C. 2680. The remainder are based either on statute or court decisions. The interpretation of these exclusions is a Federal question decided under Federal

30

benefits are provided by FECA are not payable under the MCA. Plaintiffs assert that this regulation rests on a misinterpretation of FECA's exclusivity provision, 5 U.S.C. § 8116(c). Section 8116(c) makes liability under FECA exclusive and instead of all other liability of the United States under "a worker's compensation statute or Federal tort liability act."[10]  Pls' Supp. Mem. in Opp'n to Defs' Mot. to Dismiss [doc. #34], at 2. Plaintiffs further argue that this error in construing FECA's exclusivity provision is of constitutional dimensions and violates separation of powers principles because by supposedly exceeding the executive branch's authority under FECA, Defendants have usurped the role of Congress. *Id.* at 6. In support of this argument, Plaintiffs cite *Wolke v. Dreadnought Marine*, 954 F. Supp. 1133 (E.D.Va. 1997) and *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984).

The Court need not decide at this time whether the Secretary's construction of FECA's exclusivity provision is correct or not because it is clear to the Court that even if the Secretary's interpretation was in error, such an error would not be sufficient to violate separation of powers

---

      law. Where State law differs with Federal law, Federal law prevails. A claim is not payable under this subpart if it: . . . (r) Is for the personal injury or death of a government employee for who benefits are provided by the FECA.

32 C.F.R. 842.50.

[10] Section 8116(c) states as follows:

The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute. However, this subsection does not apply to a master or a member of a crew of a vessel.

5 U.S.C. § 8116(c).

31

principles. For "an incorrect application of the law [] by an agency does not violate the Constitution. . . . To hold otherwise would place all administrative decisions in the constitutional law classification. There is a substantial difference between a mistake and [a violation of the Constitution]." *Rodrigue*, 968 F.2d at 1435.

*Wolke* involved a situation where the agency's regulation was "manifestly contrary" to the statute, and was thus impermissible under a *Chevron* analysis. *Wolke*, 954 F. Supp. at 1137 & n.6. This case is nothing like the situation presented in *Wolke*. Plaintiffs have made no argument that the Secretary violated any provision of the MCA in barring those eligible for FECA benefits from collecting under the MCA. And indeed Plaintiffs could not make such an argument, as the MCA accords the Secretary extraordinary discretion in determining eligibility for MCA benefits and permits the Secretary to settle claims "under such regulations as the Secretary concerned may prescribe." *See* 10 U.S.C. § 2733(a). *Wolke* stated that "[d]eference to regulations protects the separation of powers in most cases. But in this case, the executive branch has exceeded its authority and usurped Congress's role." *Id.* By contrast to *Wolke*, this Court finds that the Air Force did not exceed the wide authority accorded it in the MCA and did not usurp Congress's role.

The Court's conclusion in that respect is supported, not undermined, by *Chevron*. In *Chevron*, the Supreme Court held that

> [w]hen a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail. In such a case, federal judges – who have no constituency – have a duty to respect legitimate policy choices made by those who do.

*Chevron*, 467 U.S. at 866. Here, the MCA itself places essentially no limits on the Secretary's authority to deny a claim and very few limits on his authority to allow a claim. A challenge to

the Secretary's decisions under the MCA could thus only be a challenge to the "wisdom of the agency's policies," a challenge that, in the words of *Chevron*, "must fail." *Id.*

Relatedly, Plaintiffs also claim that "if Congress truly intended that the Secretary of the Air Force have complete discretion to grant claims of certain claimants but deny those of similarly situated claimants, or otherwise engage in arbitrary and capricious behavior in the granting of awards, then such delegation of Congress's tort claim settlement authority to the executive would be invalid" under the non-delegation doctrine. Pls' Supp. Mem. in Opp'n to Defs' Mot. to Dismiss [doc. #34], at 23. Plaintiffs' argument is essentially that if the Secretary's discretion under the MCA is as unfettered as Defendants assert, the MCA represents a delegation of legislative power to the Secretary without an "intelligible principle" in violation of *A. L. A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), and *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935).

As an initial matter, the Court notes that the extent to which the non-delegation doctrine remains governing law is in question, insofar as no law has been found unconstitutional under its provisions in 70 years. *Cf. Indus. Union Dep't v. Am. Petroleum Inst.* (the *Benzene* case), 448 U.S. 607, 686-87 (1980) (Rehnquist, J., concurring) ("We ought not to shy away from our judicial duty to invalidate unconstitutional delegations of legislative authority solely out of concern that we should thereby reinvigorate discredited constitutional doctrines of the pre-New Deal era."). In any event, the Court does not believe that Congress's grant of power to the Secretaries of the Armed Forces to reach individual settlements with claimants constitutes an improper delegation of the legislative power.

33

Accordingly, the Court rejects Plaintiffs' argument that in disallowing Plaintiffs' MCA claims, Defendants violated either separation of powers principles or the non-delegation doctrine.

**Due Process.**   Plaintiffs also argue that "the Air Force is required to pay Plaintiffs because it has paid others who were killed in the crash." Pls' Supp. Mem. in Opp'n to Defs' Mot. to Dismiss [doc. #34], at 8. This argument is ostensibly founded on the assertion that the payment to other claimants gave Plaintiffs property interests in their MCA claims, and that it would thus be arbitrary and capricious and a violation of due process to deny Plaintiffs' MCA claims when Defendants have allowed compensation to other victims of the same crash. *Id.* Plaintiffs cite *Tarpeh-Doe v. United States,* 904 F.2d 719 (D.C. Cir. 1990), in support of this argument, and specifically rely on *Tarpeh-Doe*'s language that a property interest could arise "based upon the consistent practice of a decisional body" even in the absence of a specific policy. *Id.* at 724. Plaintiffs argue that the Air Force's "consistent practice" is revealed through its payment of the claims of the other victims of the Bosnia crash.

This argument is also without merit. *Tarpeh-Doe* held that "one claiming the right to certain procedures under the Constitution must have been deprived of an interest grounded in a legitimate expectation" and that "[i]t is possible, of course, for a legitimate expectation to arise based upon the consistent practice of a decisional body – even in the absence of express regulatory language or in the face of ostensibly contradictory agency policy statements." *Id.* at 723-24. Along these lines, the Second Circuit has stated that

> [a] cognizable property interest is more than just a "unilateral expectation"; it is a "legitimate claim of entitlement." Although the Constitution protects property interests, it does not create them. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent

34

source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

*Furlong v. Shalala*, 156 F.3d 384, 393 (2d Cir. 1998) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

It is undisputed that the MCA itself creates no property interest in, or entitlement to, the payment of claims because of the broad discretion the statute gives the Secretary to allow or disallow claims and to make payments as the Secretary sees fit under such regulations as the Secretary may adopt. Therefore, for a property interest to arise in such circumstances, it must come about, in the language of the cases quoted above, through "consistent practice" in the words of the D.C. Circuit or an "understanding that secures certain benefits," in the words of the Second Circuit. Yet, the Secretary's payment of the claims of other victims of the Bosnia crash in no way reflects a consistent practice of allowing such claims or creates an understanding securing benefits to victims of that crash. For the Secretary determined that the other victims of the crash were not similarly situated to Plaintiffs because Plaintiffs were covered by FECA and the other victims were not.[11]

Indeed, if there is a consistent practice at all, it is -- as revealed by the long-standing Air Force Regulation § 842.50(r), and Air Force Instruction 51-501 – to *deny* MCA benefits to claimants who were eligible for FECA benefits. Therefore, even taking the *Tarpeh-Doe* language that Plaintiffs rely on at face value, Plaintiffs fail to make a claim that they have a

---

[11] This point was acknowledged at oral argument by Plaintiffs' counsel. Transcript [doc. #28], at 35 (answering "I believe that's correct," to the Court's question, "I take it they found against the other people because the other people were not similarly situated in the sense that . . . the other people were found not to be covered or to have potentially eligible claims under FECA and therefore, they had no other recourse and therefore, MCA was their only recourse and they didn't fall within the exception for people who had FECA claims. Am I wrong on that?").

35

property interest in MCA benefits. As a consequence, Plaintiffs' due process claim is without merit.

Having considered Plaintiffs' claimed constitutional violations, the Court concludes that there is no basis to overturn the Secretary's decision denying MCA benefits to Plaintiffs.

## V.

Whether the Secretary violated a clear statutory mandate in denying MCA benefits to claimants who are eligible for FECA benefits presents a question similar to Plaintiffs' first constitutional argument, discussed above. Plaintiffs make no claim that the Air Force violated any provision of the MCA; rather, their argument is that Air Force Regulation § 842.50(r) and Air Force Instruction 51-501 are contrary to FECA (not the MCA), since FECA exclusivity is limited to claims "under a workmen's compensation statute or under a Federal tort liability statute," 5 U.S.C. § 8116(c), and the MCA is neither. As noted above, however, even assuming the Secretary's interpretation of FECA is wrong, the Secretary's interpretation of FECA would not constitute a violation of any clear statutory mandate in the MCA itself.

The MCA is an unusual statute. It provides almost no limit to the Secretary's discretion in granting or denying claims:

> Under such regulations as the Secretary concerned may prescribe, he, or, subject to appeal to him, the Judge Advocate General of an armed force under his jurisdiction, or the Chief Counsel of the Coast Guard, as appropriate, if designated by him, may settle, and pay in an amount not more than $100,000, a claim against the United States.

10 U.S.C. § 2733(a). The Secretary may prescribe regulations, and he or she may settle claims. *See also* 10 U.S.C. § 2733(d) ("If the Secretary concerned considers that a claim in excess of $100,000 is meritorious, and the claim otherwise is payable under this section, the Secretary may

36

pay the claimant $100,000 and report any meritorious amount in excess of $100,000 to the Secretary of the Treasury for payment under section 1304 of title 31.").

No provision of the MCA requires that any claim be accepted; the statute merely authorizes the Secretary to settle claims that the Secretary finds are meritorious. *See, e.g., Newman v. Soballe*, 871 F.2d 969, 973 (11th Cir. 1989) ("The Military Claims Act is merely an authorization statute. It confers no 'cause of action' to the plaintiff."), *overruled on other grounds by United States v. Smith*, 499 U.S. 160 (1991). As the Federal Circuit has noted, the MCA "is permissive and not mandatory. It provides that the Secretary 'may' settle and pay claims. Action by him in settling and paying claims is entirely discretionary and not mandatory." *Collins*, 67 F.3d at 286. In view of the broad language of the MCA and the expansive discretion it provides the Secretary, the Court cannot conclude that the policy choice made by the Air Force – that claimants who are eligible to receive FECA benefits should not receive payments under the MCA – violates any clear mandate of the MCA, regardless whether the Air Force has properly construed FECA or not.

The Court's conclusion in this regard is regrettable, because the Court agrees with Plaintiffs that the Air Force's construction of FECA's exclusivity provision is questionable. Though courts often defer to agency construction of statutes under *Chevron*, that decision's rule of deference does not apply when an agency interprets another agency's statute. *Citicorp v. Bd. of Governors of Fed. Reserve Sys.*, 936 F.2d 66, 75 (2d Cir. 1991) ("We recognize that courts are not obliged to defer to interpretations of a statute made by agencies not responsible for its administration."). This Court thus need not defer to the Air Force in its interpretation of FECA.[12]

---

[12] The regulations promulgated by the Air Force in this case have the status of interpretive, rather than legislative, rules under the Administrative Procedure Act, in that they

37

Furthermore, the Court notes that there is no evidence that the Department of Labor – which would receive deference from this Court in interpreting FECA and which has expertise in construing that statute – has ever interpreted § 8116(c) to bar MCA claims. Worse yet, there is no evidence that the Air Force has ever asked the Department of Labor for its views on the subject or for an advisory ruling on the proper interpretation of the FECA exclusivity provision.

The FECA exclusivity provision states that relief under FECA is exclusive of relief under "a workmen's compensation statute or under a Federal tort liability statute." *Id.* As Plaintiffs correctly point out, however, the MCA is unquestionably not a worker's compensation statute, since claimants need not be federal or military employees to receive a recovery under the MCA. Pls' Supp. Mem. in Opp'n to Defs' Mot. to Dismiss [doc. #34], at 2. The payments to other victims of the Bosnia crash confirms this. Additionally, the Supreme Court has stated that FECA's exclusivity provision "was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity." *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193-94 (1983). Yet the MCA does not waive the government's sovereign immunity, and the Air Force does not contend otherwise. *See, e.g., Schneider*, 27 F.3d at 1333 (finding that "the government has not waived sovereign immunity for tort claims against the government that arise in a foreign country" and

---

were not promulgated pursuant to notice-and-comment rulemaking procedures. *See Sweet v. Sheahan*, 235 F.3d 80, 90 (2d Cir. 2000). Under the Supreme Court's decision in *United States v. Mead Corp.*, 533 U.S. 218, 234-35 (2001), interpretive rules such as these do not qualify for *Chevron* deference, but instead receive a lesser deference under the test set forth in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Under *Skidmore*, "[t]he weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." (quoted in *Mead*, 533 U.S. at 228). Applying *Skidmore* review, the Court finds the Air Force's interpretation of FECA unpersuasive.

38

that Plaintiffs "have no cause of action against the government, and as a result, preclusion of judicial review by the Military Claims Act does not deprive them of a cause of action," thus indicating that the MCA itself does not waive sovereign immunity).

There appears to be no reason in the language of FECA why eligibility for FECA benefits should disqualify an otherwise qualified claimant for payment of benefits under the MCA. Therefore, to the extent that the Air Force believes that it is *required* by FECA exclusivity to deny Plaintiffs' claims, the Court respectfully suggests that the Air Force is wrong. Nevertheless, despite the Court's misgivings about the Air Force's interpretation of FECA's exclusivity provision, there is nothing in the MCA that prohibits the Air Force from making the policy choice to deny MCA benefits to claimants who are also eligible for FECA benefits.

Because the Air Force's decision to deny MCA benefits to any claimant who is eligible for FECA benefits does not contravene any clear statutory mandate in the MCA, there is no basis for this Court to set aside either the regulation or Defendants' decision to deny Plaintiffs' claims. Perhaps the Air Force will be willing in light of this decision to revisit this issue and even formally seek the guidance of the Department of Labor regarding its view on whether the FECA exclusivity provision bars recovery under the MCA. Absent reconsideration by the Air Force, Plaintiffs' only recourse is to Congress itself.

In view of the suffering of the families in this case, the Court's conclusion that it cannot come to their aid (even when the Air Force may be mistaken) will undoubtedly strike some as insensitive or downright unfair. But however sympathetic Plaintiffs' plight may be, the Judiciary remains a branch of limited powers. And when, as here, a court is faced with statutory language that limits its jurisdiction and grants broad discretion to an executive agency, the court is duty-bound to defer to, and respect, Congress's choice.

**VI.**

Defendants' Motion to Dismiss [doc. #10] is GRANTED. The case is dismissed and the Clerk is directed to close the file.

IT IS SO ORDERED.

Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: September 24, 2004.

40